**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL W. HILL, | ) Docket No. 03-323E |
| | ) (Judge Susan Paradise Baxter) |
| Plaintiff, | ) |
| | ) ELECTRONICALLY FILED PLEADING |
| vs. | ) |
| | ) PLAINTIFF'S BRIEF IN OPPOSITION TO |
| UNITED STATES OF AMERICA, | ) DEFENDANTS' MOTION TO DISMISS, OR |
| JOHN J. LAMANNA, | ) IN THE ALTERNATIVE, FOR SUMMARY |
| WILLIAM K. COLLINS, | ) JUDGMENT |
| MARTY SAPKO, | ) |
| STEPHEN HOUSLER, | ) Filed on behalf of:  Plaintiff Michael W. Hill |
| ROBERT KLARK, | ) |
| ROBERT REOME, | ) Counsel of record for this party: |
| BETH FANTASKEY, and | ) Richard A. Lanzillo, Esq. |
| DEBORAH FORSYTH, | ) Knox McLaughlin Gornall |
| | ) & Sennett, P.C. |
| Defendants | ) 120 West 10th Street |
| | ) Erie, PA 16501 |
| | ) Telephone (814) 459-2800 |
| | ) Facsimile (814) 453-4530 |
| | ) Email rlanzillo@kmgslaw.com |
| | ) PA53811 |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

   Plaintiff, Michael W. Hill, through his counsel, Knox, McLaughlin, Gornall &

Sennett, P.C., files the following as his Brief in Opposition to Defendants' Motion to Dismiss, or,

in the Alternative, for Summary Judgment.

## I.  INTRODUCTION

   Plaintiff commenced this action against Defendants asserting claims arising out of

hazardous working conditions to which he was exposed during his incarceration at the Federal

Correctional Institution in McKean, Pennsylvania ("FCI McKean"), and defendants' actions in

deliberate indifference to his dental needs while he was incarcerated at that facility.  Defendants

have moved to dismiss Plaintiffs Amended Complaint or, in the alternative, for summary judgment. Defendants' motion should be denied. Plaintiff has asserted valid constitutional claims as authorized under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and a viable claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Hazardous Working Conditions at FCI McKean

Plaintiff is a Federal inmate currently incarcerated in the Federal Correctional Institution ("FCI") in Gilmer, West Virginia. Plaintiff's claims in this case arise out of his prior incarceration at FCI McKean in Bradford, Pennsylvania, which incarceration commenced on October 18, 2001. Between approximately August 1, 2002 and April 21, 2003, plaintiff was assigned to the Federal Prison Industries, Inc. ("FPI", or trade name "UNICOR") factory at FCI McKean. Amended Complaint ¶28. FPI is a wholly-owned government corporation, created by Congress in 1934. FPI operates factories in several locations across the country and manufactures a variety of products, including office furniture and industrial products. <u>See</u> Defendants' Exhibit 213.

At all times relevant to this case, the FCI McKean UNICOR factory manufactured office furniture. <u>See</u> Defendant's Exhibit 214. Throughout his employment at UNICOR, Plaintiff was instructed to work in and around areas where Micore mineral fiber boards were being cut, sawed, sanded, machined and otherwise handled by Plaintiff and others. These processes produced silica dust as a byproduct. Defendants instructed Plaintiff and other inmates to clean and clear dust from the floor and machines within the facility both by sweeping the dust with brooms and by mechanically blowing the dust with air hoses. These processes

caused the dust to become airborne and ultimately to settle all over Plaintiff's person and

clothing.  At the time of plaintiff's assignment to the UNICOR facility, the Defendants knew or

were on notice that the materials and processes in use at the facility exposed plaintiff and other

workers to serious risks and hazards, including exposure to silica dust from the use and alteration

of Micore boards.  Silica dust is a known carcinogen and a cause of serious respiratory ailments

and conditions and other health problems.  The exhaust and ventilation systems at FCI McKean's

UNICOR facility were insufficient to prevent exposure of Plaintiff and other workers to

dangerous levels of silica dust and other dangerous byproducts of the manufacturing process.

Amended Complaint, ¶¶28-42.

The only protection provided by Defendants to Plaintiff and others was a

disposable "Do it Best" or "Breathe Easy" dust mask, which was distributed in a package that

contained the following warning:

> This mask is not suitable for use against toxic or hazardous
> air contaminants, such as, but not limited to paint spray
> mists, asbestos, **silica**, cotton or other toxic dusts, fumes,
> gases and vapors.

See Document #38, Exhibit 14; Amended Complaint ¶40.

Moreover, the record contains evidence that the Material Safety Data Sheet

("MSDS") maintained by the Defendants with regard to the Micore fiber board was altered by

hand, such that, under the section devoted to personal protection, the word "respirator" was

marked out and replaced with the word "mask" or "dust" in order to falsely indicate to UNICOR

workers that dust masks provided sufficient protection against inhalation of the airborne silica

dust and other dangerous manufacturing byproducts that were present at in the UNICOR facility.

Additionally, plaintiff worked in and around areas where the adhesive commonly

known has Locweld 860/861 was being used.  Amended Complaint ¶30.  Defendants were also

on notice that the use of Locweld 860/861, a contact adhesive, in the UNICOR facility exposed

plaintiff and other workers to serious risks and hazards including the risk of fire and health risks

associated with the presence of fumes from Locweld 860/861.  Amended Complaint ¶31.

        Defendants' actions and omissions relative to the dangers and hazards associated

with Micore board and Locweld 860/861 were part of an overall pattern of deliberate indifference

by defendants to the safety and health of workers at the UNICOR facility, which pattern included

*inter alia* (1) allowing the accumulation of flammable vapors in the work area in violation of 29

C.F.R. §1910.106(e)(6)(i); (2) failure to provide appropriate instructions and training regarding

chemicals in use at the workplace in violation of 29 C.F.R. §1910.1200(h)(2)(ii) and 29 C.F.R.

§1910.1200(h); (3) allowing obstruction of proper airflow and air filtration within certain work

areas in violation 29 C.F.R. §1910.107(b)(1); (4) permitting installation of combustible materials

within the spray booth of the UNICOR facility in violation of 29 C.F.R. §1910.107(b)(1);

(5) failing to include appropriate sprinkler equipment in certain areas of the facility in violation

of 29 C.F.R. §1910.107(b)(5)(iv); (6) allowing improper storage and obstructions around the

paint booth of the facility in violation of 29 C.F.R. §1910.107(b)(9); (7) allowing combustible

residue from manufacturing to accumulate in work areas in violation of 29 C.F.R.

§1910.107(g)(2); (8) failing to provide and/or require use of protective equipment where

reasonably necessary for the protection and safety of workers in violation of 29 C.F.R.

§1910.132(a); (9) failure to observe required "lock-out/tag-out" procedures for the protection and

safety of workers in violation of 29 C.F.R. §1910.147(d)(4)(i); (10) allowing storage of materials

in a manner and location that created an unreasonable risk of fire or combustion within the

facility in violation of 29 C.F.R. §1910.176(b), 29 C.F.R. §1910.252(a)(2)(vii), and 29 C.F.R.

§1910.303 (g)(1)(i); (11) requiring operation of machines and other equipment within the facility

that lacked proper guarding or other safety devises reasonably necessary for the protection and

safety of workers in violation of 29 C.F.R. §1910.212(a)(1), 29 C.F.R. §1910.212(a)(3)(ii), 29

C.F.R. §1910.213(r)(4), and 29 C.F.R. §1910.119(c)(2)(i); (12) allowing the existence of

conditions that unreasonably exposed workers to cave-in hazards while conducting work

operations in violation of 29 C.F.R. §1926.651(j)(2); (13) failure to install or place guarding

necessary to protect workers from the hazard of impalement in violation of 29 C.F.R.

§1926.701(b); (14) failure to install railings necessary to protect workers from fall hazards in

violation of 29 C.F.R. §1910.23(c)(1); and (15) failure to provide instruction and training

regarding the proper use of respirators in the workplace in violation of 29 C.F.R.

§1910.134(k)(6).  Amended Complaint ¶42.

       During his employment at the UNICOR facility, Plaintiff was repeatedly and

consistently exposed to silica dust, vitreous fiber, perlite, slag wool, mineral wool, acetone,

Toluene, Hexane isomers, N-hexane and other dangerous materials through aspiration, inhalation

and direct contact with Plaintiff's skin, lungs, sinuses and eyes.  As a result of the dangerous

conditions that were permitted to exist at the UNICOR facility, Plaintiff sustained personal

injuries, many of which are believed to be permanent in nature, including chronic respiratory

problems, sinusitis, irritation and damage to his lungs, sinuses, eyes and skin and sensitization to

materials.  In addition, Plaintiff has been placed at an increased risk of developing future diseases

and health problems, including, but not limited to, cancer, Silicosis, Pneumoconiosis,

emphysema, asthma, mycobacterium tuberculosis, nervous system disturbances and peripheral

neuropathy.  Amended Complaint ¶¶43-45.

    **B.**    **Plaintiff's Dental Treatment at FCI McKean**

       In February 2001, while housed at the United States Penitentiary in Lompoc,

California ("USP-Lompoc"), Plaintiff was diagnosed with three oral cavities. He received

treatment at USP-Lompoc which included the placement of a temporary filling on one of the

three oral cavities. In July, 2002, while at FCI-McKean, Plaintiff verbally informed defendants

Collins and Lamanna that the temporary filling that he received at USP-Lompoc was dissolving

and nearly out of the tooth. The dissolving of the temporary filling caused plaintiff discomfort

and pain, especially when the filling was exposed to air and cold drink. Plaintiff informed

defendants Collins and Lamanna of this discomfort and pain. Amended Complaint ¶¶15-17.

Defendants Collins and Lamanna refused to treat Plaintiff's dental condition and,

instead, informed Plaintiff that he was required to wait for his turn pursuant to FCI-McKean's

dental appointment list. On July 3, 2002, Plaintiff submitted a written request for administrative

remedy to defendant Lamanna, again asking to be seen for the pain and discomfort associated

with his dissolving temporary filling. In response to this written request, defendant Lamanna

again informed Plaintiff that he would not be seen until his turn pursuant to the dental

appointment list. Amended Complaint ¶¶18-20.

Between July and November 2002, Plaintiff was not seen by any dentist and

continued to experience pain and discomfort. On or about November 22, 2002, Plaintiff's

temporary filling became completely dislodged from Plaintiff's tooth. After the failure of his

temporary filling, Plaintiff's pain increased dramatically and to such an extent that he was unable

to eat or drink. Although Plaintiff immediately reported the loss of his temporary filling and his

increased pain to the Health Service Administrator at FCI-McKean's Medical Unit, no medical

attention other than a prescription for Motrin was provided to him until November 27, 2002,

when Plaintiff was taken to the dental department at FCI-McKean. Amended Complaint ¶¶21-

24.

On November 27, 2002, Plaintiff was seen by Defendant William Collins who advised Plaintiff that his only options for treatment were the immediate extraction of the tooth or continuing to wait until his name came up on the list for routine care. Defendant Collins advised Plaintiff that he was number 44 on the list for routine care. Recognizing that he could not continue to endure the pain awaiting his turn for routine dental care, which was estimated to be two to three additional months, Plaintiff consented to the extraction of his tooth. Plaintiff continues to suffer complications from the extraction of his tooth and will require additional dental treatment and a probable bridge or other dental prosthesis. Amended Complaint ¶¶25-27.

In their Brief in Support of their Motion to Dismiss, Defendants do not dispute much of the sequence of treatment as alleged by Plaintiff. Instead, they deny many of Plaintiff's allegations concerning the substance of communications between Plaintiff and the Defendants and attempt to portray the deterioration and dissolution of Plaintiff's tooth as a minor inconvenience to Plaintiff that caused him no serious discomfort and that did not prompt any significant complaints or requests for treatment. In support of their position, Defendants relying solely upon their own self-serving, internally-generated records.

## III.   ARGUMENT

### A.   Supreme Court and Third Circuit precedent precludes the entry of summary judgment where, as here, there has been no discovery and the Amended Complaint states viable causes of action.

Defendants have styled their motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, as a motion for summary judgment under Fed.R.Civ.P. 56 (c). "In deciding a motion to dismiss, [the Court] must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156,159 (3rd Cir. 2004). The Court "may grant such a motion only

where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

In contrast to a motion to dismiss, which tests the legal sufficiency of the complaint, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. Id. at 324. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmoving party. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.1992), cert. denied, 507 U.S. 912 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. Id. Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir.1992). The Court, however, may deny summary judgment if the motion is premature. Anderson, 477 U.S. at 250 n. 5. Because a plaintiff should not be "'railroaded' by a premature motion for summary judgment," the United States Supreme Court has held that a

district court must apply Federal Rule of Civil Procedure Rule 56(f) if the opposing party has not

made full discovery.  <u>Celotex</u>, 477 U.S. at 326.  Rule 56(f) provides:

> Should it appear from the affidavits of a party
> opposing the motion that he cannot for reasons
> stated present by affidavit facts essential to
> justify his opposition, the court may refuse the
> application for judgment or may order a
> continuance to permit affidavits to be obtained
> or depositions to be taken or discovery to be had
> or may make such other order as is just.

Fed.R.Civ.P. 56(f) (emphasis added).  Thus, the district court is empowered with discretion to

decide whether the movant's motion is ripe and thus determine whether to delay action on a

motion for summary judgment.  <u>St. Surin v. Virgin Islands Daily News, Inc.</u>, 21 F.3d 1309, 1313

(3d Cir.1994); <u>Sames v. Gable</u>, 732 F.2d 49, 51 (3d Cir.1984).  However, the non-moving party

must be given the opportunity to conduct adequate discovery before the court properly may grant

a motion for summary judgment.  <u>Dowling vs. City of Philadelphia</u>, 855 F.2d 136, 139 (3rd Cir.

1989).  In the present case, plaintiff has had no opportunity to engage in any discovery to

challenge the self-serving factual recitation offered by the defendants in support of their motion

for summary judgment.  Indeed, under Fed.R.Civ.P. 26(d), no discovery is permissible prior to

the closure of the pleadings and the parties' Rule 26(f) conference.[1]

---

[1]    Under Rule 26(a)(1)(E)(iii), initial disclosure requirements and other Rule 26 procedures are generally
inapplicable in an "action brought without counsel by a person in custody of the United States…"
However, this exclusion would no longer apply to this case now that counsel has been appointed for the
plaintiff.  Moreover, plaintiff was hardly in a position to initiate meaningful discovery when he was acting
pro se.  In fact, Defendants aggressively opposed plaintiff's prior motion to permit discovery.  (<u>See</u>
Document #75 (Defendants' Response in Opposition to Plaintiff's Motion to Permit Discovery)).

**B.** **Plaintiffs' Allegations Support a Finding of Deliberate Indifference to Plaintiff's Serious Medical Needs, and, therefore, Plaintiff's Amended Complaint States a Viable Claim for Violation of His Eighth Amendment Rights.**

Plaintiff has adequately stated a claim under the Eighth Amendment relating to the dental care he received at FCI McKean. In order to state a claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate that the defendants exhibited "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A plaintiff satisfies this standard where he demonstrates that: (1) he had a serious medical need, and (2) the defendant was aware of this need and was deliberately indifferent to it. See Farmer v. Brennan, 511 U.S. 825 (1994); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). The Third Circuit has recognized that deliberate indifference can be manifested by a variety of actions, including: (i) the denial of reasonable requests for medical treatment which expose an inmate to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons. See Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir.1987); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993). With respect to what qualifies as a serious medical need, the Third Circuit has held that "a medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." ' Lanzaro, 834 F.2d at 347 (citations omitted). In Farmer v. Brennan, the Supreme Court explained that the term "deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." 511 U.S. at 836.

Plaintiff's allegations easily sustain the elements of his Eighth Amendment claim. As a result of defendant's neglect and indifference, the temporary filling in Plaintiff's tooth was allowed to deteriorate to such an extent that it caused Plaintiff's tooth essentially to dissolve in Plaintiff's mouth, leaving no option except extraction. This condition was known to defendants Collins and Lamanna as requiring treatment and, additionally, was so obvious that a lay person would easily recognize the necessity for a doctor's attention. Therefore, the "serious medical need" of Plaintiff's claim is demonstrated by the facts of this case. Despite the serious and obvious nature of Plaintiff's dental need, Defendants did not provide him with any meaningful care over an extended period of time. This knowing neglect constitutes deliberate indifference under well-established law.

### C. Plaintiffs' Amended Complaint Fully Supports a Finding that Defendants were Deliberately Indifferent to Substantial Risks of Serious Harm to Plaintiff in Connection with His Working Conditions at the UNICOR Facility.

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). Further, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling, 509 U.S. at 31. This includes environmental hazards that pose an unreasonable risk of serious damage to future health. Id. at 33-35.

In the present case, plaintiff was exposed to hazardous silica dust and other toxic materials in connection with his employment in the UNICOR facility. In many ways, this case is analogous to Helling v. McKinney, wherein the Supreme Court held that a cause of action exists under the Eighth Amendment when a prisoner alleges that prison officials have exposed him, with deliberate indifference, to levels of environmental tobacco smoke ("ETS"). 509 U.S. at 35.

In this case, the known hazardous substances were silica dust and other toxic byproducts of working with Micore board and Locweld. To appreciate the dangerous nature of these substances and the need for safety and health precautions, one would need note only the content and warnings of the MSDS for the products at issue.

To prevail on an Eighth Amendment claim a plaintiff must satisfy both an objective component and a subjective component. See Wilson, 501 U.S. at 298-300. First, objectively, the deprivation alleged must be "sufficiently serious" to be considered cruel and unusual. See Farmer v. Brennan, 511 U.S. at 834 (1994) (citing Wilson, 501 U.S. at 298); McNeil v. Lane, 16 F.3d 123, 125 (7th Cir. 1993). For a claim based on a failure to prevent harm, an inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. As for the subjective component, a plaintiff must show that defendants had a sufficiently culpable state of mind; that is that they knew of the risk and operated with "deliberate indifference" to the inmate's health or safety. Id. See Drake v. Velasco, 207 F.Supp.2d 809 (N.D. Ill 2002)(holding that the inmate's allegations regarding failure of correctional institution to provide "sanitary" meals supported a claim of deliberate indifference).

In this case, Plaintiff alleges that he was exposed to Micore Board fibers, sawdust and Locweld adhesive without appropriate ventilation and/or protective gear. These allegations are fully supported by the facts of this case. Throughout his employment at UNICOR, Plaintiff was instructed to work in and around areas where Micore mineral fiber boards were being cut, sawed, sanded, machined and otherwise handled by Plaintiff and others. These processes produced silica dust as a byproduct. Defendants instructed Plaintiff and other inmates to clean and clear dust from the floor and machines within the facility both by sweeping the dust with

brooms and by mechanically blowing the dust with air hoses.  These processes caused the dust to become airborne and ultimately to settle all over Plaintiff's person and clothing.  At the time of plaintiff's assignment to the UNICOR facility, the Defendants knew or were on notice that the materials and processes in use at the facility exposed plaintiff and other workers to serious risks and hazards, including exposure to silica dust from the use and alteration of Micore boards.  Silica dust is a known carcinogen and a cause of serious respiratory ailments and conditions and other health problems.  The exhaust and ventilation systems at FCI McKean's UNICOR facility were insufficient to prevent exposure of Plaintiff and other workers to dangerous levels of silica dust and other dangerous byproducts of the manufacturing process.  Amended Complaint, ¶¶28-42.

In their brief in support of Motion for Summary Judgment, Defendants deny that Plaintiff and others were exposed to dangerous levels of silica dust.  As "evidence" of their position, Defendants assert that, on July 31, 2001, in response to a letter from OSHA, FCI McKean had Microbac Laboratories conduct an indoor air quality survey of the UNICOR factory.  Defendants further contend that, on that date, and the date of an OSHA inspection, air quality was found to be within OSHA standards.  This "evidence" is woefully insufficient to establish Defendants' entitlement to summary judgment.  First, there is no evidence or reason to believe that the conditions that existed on July 1, 2001, or any other date selected by defendants, were representative of the working conditions to which Plaintiff and others were exposed during their employment at UNICOR.  The Microbac air quality survey and OSHA visit were far from surprise inspections such that these dates could reasonably be expected to represent typical working conditions at the facility.  Rather, the Microbac survey was prearranged by Defendants such that they had ample opportunity to take steps to "clean-up" operations and the facility in

preparation for the survey.  There simply is no basis in the record to support a finding that

conditions on July 31, 2001 or the date of the OSHA inspection were representative of general or

typical working conditions at the facility.  Thus, Defendants have failed in their threshold burden

of establishing the absence of a material issue of fact regarding the safety of conditions at the

UNICOR facility.  Moreover, as noted, Plaintiff has had no opportunity to develop a record

regarding the actual working conditions at the facility because he has been unable to take any

discovery regarding this and the other factual issues of this case.

Moreover, the only protection provided by Defendants to Plaintiff and others was

a disposable "Do it Best" or "Breathe Easy" dust mask, which was distributed in a package that

contained the following warning:

> This mask is not suitable for use against toxic or hazardous
> air contaminants, such as, but not limited to paint spray
> mists, asbestos, **silica**, cotton or other toxic dusts, fumes,
> gases and vapors.

See Document #38, Exhibit 14; Amended Complaint ¶40.

As further evidence of deliberate indifference, the record contains evidence that

the Material Safety Data Sheet ("MSDS") maintained by the Defendants with regard to the

Micore fiber board was altered by hand, such that, under the section devoted to personal

protection, the word "respirator" was marked out and replaced with the word "mask" or "dust" in

order to falsely indicate to UNICOR workers that dust masks provided sufficient protection

against inhalation of the airborne silica dust and other dangerous manufacturing byproducts that

were present at in the UNICOR facility.

Additionally, plaintiff worked in and around areas where the adhesive commonly

knows has Locweld 860/861 was being used.  Amended Complaint ¶30.  Defendants were also

on notice that the use of Locweld 860/861, a contact adhesive, in the UNICOR facility exposed

plaintiff and other workers to serious risks and hazards including the risk of fire and health risks associated with the presence of fumes from Locweld 860/861.  Amended Complaint ¶31.

Defendants' actions and omissions relative to the dangers and hazards associated with Micore board and Locweld 860/861 were part of an overall pattern of deliberate indifference by defendants to the safety and health of workers at the UNICOR facility, which pattern included *inter alia* (1) allowing the accumulation of flammable vapors in the work area in violation of 29 C.F.R. §1910.106(e)(6)(i); (2) failure to provide appropriate instructions and training regarding chemicals in use at the workplace in violation of 29 C.F.R. §1910.1200(h)(2)(ii) and 29 C.F.R. §1910.1200(h); (3) allowing obstruction of proper airflow and air filtration within certain work areas in violation 29 C.F.R. §1910.107(b)(1); (4) permitting installation of combustible materials within the spray booth of the UNICOR facility in violation of 29 C.F.R. §1910.107(b)(1); (5) failing to include appropriate sprinkler equipment in certain areas of the facility in violation of 29 C.F.R. §1910.107(b)(5)(iv); (6) allowing improper storage and obstructions around the paint booth of the facility in violation of 29 C.F.R. §1910.107(b)(9); (7) allowing combustible residue from manufacturing to accumulate in work areas in violation of 29 C.F.R. §1910.107(g)(2); (8) failing to provide and/or require use of protective equipment where reasonably necessary for the protection and safety of workers in violation of 29 C.F.R. §1910.132(a); (9) failure to observe required "lock-out/tag-out" procedures for the protection and safety of workers in violation of 29 C.F.R. §1910.147(d)(4)(i); (10) allowing storage of materials in a manner and location that created an unreasonable risk of fire or combustion within the facility in violation of 29 C.F.R. §1910.176(b), 29 C.F.R. §1910.252(a)(2)(vii), and 29 C.F.R. §1910.303 (g)(1)(i); (11) requiring operation of machines and other equipment within the facility that lacked proper guarding or other safety devises reasonably necessary for the protection and

safety of workers in violation of 29 C.F.R. §1910.212(a)(1), 29 C.F.R. §1910.212(a)(3)(ii), 29

C.F.R. §1910.213(r)(4), and 29 C.F.R. §1910.119(c)(2)(i); (12) allowing the existence of

conditions that unreasonably exposed workers to cave-in hazards while conducting work

operations in violation of 29 C.F.R. §1926.651(j)(2); (13) failure to install or place guarding

necessary to protect workers from the hazard of impalement in violation of 29 C.F.R.

§1926.701(b); (14) failure to install railings necessary to protect workers from fall hazards in

violation of 29 C.F.R. §1910.23(c)(1); and (15) failure to provide instruction and training

regarding the proper use of respirators in the workplace in violation of 29 C.F.R.

§1910.134(k)(6).  Amended Complaint ¶42.

       During his employment at the UNICOR facility, Plaintiff was repeatedly and

consistently exposed to silica dust, vitreous fiber, perlite, slag wool, mineral wool, acetone,

Toluene, Hexane isomers, N-hexane and other dangerous materials through aspiration, inhalation

and direct contact with Plaintiff's skin, lungs, sinuses and eyes.  As a result of the dangerous

conditions that were permitted to exist at the UNICOR facility, Plaintiff sustained personal

injuries, many of which are believed to be permanent in nature, including chronic respiratory

problems, sinusitis, irritation and damage to his lungs, sinuses, eyes and skin and sensitization to

materials.  In addition, Plaintiff has been placed at an increased risk of developing future diseases

and health problems, including, but not limited to, cancer, Silicosis, Pneumoconiosis,

emphysema, asthma, mycobacterium tuberculosis, nervous system disturbances and peripheral

neuropathy.  Amended Complaint ¶¶43-45.

       Thus, the facts of this case are not only analogous to the facts that the Supreme

Court found to be actionable in Helling, the facts of this case present an even more compelling

basis for finding both a serious health risk to Plaintiff and deliberate indifference on the part of

the Defendants.

     **D.**     **The Amended Complaint states Valid Claims against All Individual Defendants, Including Defendants LaManna, Fantaskey, Reome, and Klark.**

     A plaintiff, in order to state a viable civil rights claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of law; and 2) that said conduct deprived the Plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). To find a supervisory official personally liable for the unconstitutional acts of his subordinates, it must be shown that the supervisor had a duty to instruct the subordinate to prevent constitutional harm, and that "as a result of the official's failure to instruct, the Plaintiff was harmed in the manner threatened." Haynesworth v. Miller, 820 F.2d 1245, 1262 (D.C. Cir. 1987); MacKinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995); Redman, 942 F.2d at 1446-1447; Hansen, 885 F.2d at 646; See also Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others.); Hunt v. Dental Dept, 865 F.2d 198, 200 (9th Cir. 1989) (inmate fails to allege any facts showing role head of state department of corrections played in denial of dental care); Outz v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam) (warden's responsibility for generally supervising the operations of the prison not sufficient to establish personal involvement). Therefore, personal involvement or some affirmative action on the part of a defendant is necessary before he may be found liable for a civil rights violation. See Rode v. Dellarciprete, 845 F.2d 1195 (3d

Cir. 1988); <u>Stoneking v. Bradford Area School District</u>, 882 F.2d 720, 729-30 (3d Cir.), <u>cert</u>, <u>denied</u>, 493 U.S. 1044 (1990).

   A sufficient causal connection may be established by showing that the supervisor set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the injury. <u>Larez</u>, 946 F.2d at 645; <u>Redman</u>, 942 F.2d at 1447. A supervisor may also be liable for constitutional violations by his subordinates if the supervisor knew of the violations and failed to prevent them. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675, 680-81 (9th Cir. 1984). Further, supervisors may be liable if the alleged deprivation resulted from a failure to properly train or supervise personnel, or from an official policy or custom for which the defendants were responsible. <u>Ybarra</u>, 723 F.2d at 680.

   In the present case, the Amended Complaint alleges an adequate basis for liability against each of the individual Defendants. As to each such Defendant, the Amended Complaint alleges either or both the individual personal involvement in the actionable conduct that resulted in constitutional injury to Plaintiff or his or her responsibility for adoption or implementation of the policy or policies that led to Plaintiff's constitutional injury. At the pleading stage of this action, Plaintiff's claims against each of the individual Defendants are sufficient under applicable case law.

  **E. The Rights of Plaintiff Violated by Defendants were "Clearly Established," and No Defendants is Entitled to Qualified Immunity.**

   Qualified immunity shields government officials performing discretionary functions only if their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800,

18

818 (1982).  In <u>Anderson v.  Creighton</u>, 483 U.S. 635 (1987), the Supreme Court further clarified the standard for qualified immunity, stating: "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action,...  assessed in light of the legal rules that were "clearly established" at the time it was taken."  <u>Id.</u> at 639 (citation omitted).

In the present case, Defendants cannot seriously contend that the constitutional rights of Plaintiff at issue were not clearly established at all times relevant to this action.  The contours of the Eighth Amendment right of inmates to receive care for serious medical conditions were clearly defined since at least 1974, when the Supreme Court decided <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  Similarly, the Eighth Amendment right of inmates regarding freedom from exposure to environmental hazards while incarcerated was clearly established no later than 1993, when the Supreme Court decided <u>Helling v. McKinney</u>, 509 U.S. 25 (1993).  While it is true that government officials are not expected to be legal scholars like law professors, <u>Ward v.  San Diego County</u>, 791 F.2d 1329, 1332 (9th Cir.), <u>cert, denied sub nom.,</u> <u>Duffy v.  Ward,</u> 483 U.S.  1020 (1987), any reasonable official in the position of the Defendants in this case would have recognized the illegality of their deliberate indifference to the foregoing rights.

    **F.**    **Plaintiff has stated a valid claim under the FTCA Claim Relating to Defendants' Negligent Dental Care.**

Defendants assert that Count Four of Plaintiff s Amended Complaint should be dismissed because he has failed to show any negligence on the part of BOP staff at FCI McKean with respect to the extraction of tooth # 13.[2]  Plaintiff brought this claim pursuant to the FTCA,

---

[2]    Defendants acknowledge that Plaintiff properly exhausted his administrative tort claim with respect to his dental care at FCI McKean.  See Exhibit 614, and Attachment A.

which provides a cause of action against the United States for common law torts.  28 U.S.C. § 2674; U.S. v.  Muniz, 374 U.S. 150, 153 (1963).  The FTCA establishes that the United States, except in limited circumstances, can be held liable for negligence to the same extent as a private individual.  Id.

Under the FTCA, the substantive law of the state in which the act or omission occurred normally should be applied.  28 U.S.C.  § 1346(b)(1); Turner v.  Miller, 679 F.  Supp. 441, 443 (M.D.  Pa.  1987); Hossic v.  United States, 682 F.  Supp 23, 24 (M.D.  Pa. 1987).  In Pennsylvania, the standard for negligence is: 1) there must be a legally recognizable duty; 2) the defendant must have failed to conform to this duty; 3) there must be a causal connection between the legally recognized duty and the plaintiffs damages; and 4) there must be actual damages. Dean v. Commonwealth Department of Transportation, 1998 WL 650070, p. 2 (Pa. Cmwlth. Ct. 1998); The Mason & Dixon Lines v.  Mognet, 645 A.2d 1370, 1373, n.3 (Pa.  Cmwlth.  Ct. 1994).

While the FTCA would normally look to state law to establish the government's duty of care, Congress has established a statutory duty of care to be applied when federal prisoners sue the United States for monetary damages.  Title 18 U.S.C. § 4042 requires only "the exercise of ordinary diligence" to keep inmates safe from and free from harm.  This duty requires BOP to provide for the care of all inmates in its custody.  Included in this statutory duty is the duty to provide adequate medical care to all inmates.  Yosuf v. U.S., 642 F. Supp. 415, 427 (M.D. Pa. 1986).  In the medical context, the relationship between BOP and an inmate is not that of jailor-jailee, but of a physician to a patient.  Id.  A doctor within BOP is held to the same standard of care as any doctor practicing at the same time in the same relative location.  Yosuf, 642 F. Supp. at 427.

In the present case, the facts alleged in the Amended Complaint clearly support a finding that the care provided to Plaintiff for his dental condition fell well-below the applicable standard of care. While Defendants now assert that Plaintiff would have lost tooth #13 anyway, this is far from established and, even if true, would go to the amount of Plaintiff's damages, not to his entitlement.

**IV.**    **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative, for Summary Judgment.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

BY: /s/ Richard A. Lanzillo, Esq.
         Richard A. Lanzillo, Esquire
         120 West Tenth Street
         Erie, PA 16501
         Telephone (814) 459-2800
         Facsimile (814) 453-4530
         Email rlanzillo@kmgslaw.com
         PA53811

# 663478

21