## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL HILL | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-323 Erie |
| | ) | District Judge McLaughlin |
| JOHN LAMANNA, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss, or in the

alternative, for summary judgment [Document # 82] be granted in part and denied in part, as

follows:

a)      Plaintiff's FTCA claim regarding silica dust exposure should be dismissed for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust his administrative remedies;

b)      Plaintiff's FTCA claim regarding negligent dental care should be allowed to proceed.

c)      Plaintiff's *Bivens* claim regarding silica dust exposure should be allowed to proceed.

d)      Plaintiff's *Bivens* claim regarding dental care should be allowed to proceed as to the deliberate indifference stemming from the lengthy delay in medical treatment, but summary judgment should be granted as to the actual tooth extraction as Defendants were not deliberately indifferent to Plaintiff's medical needs.

## II.      REPORT

### A.      Relevant Procedural History

On October 7, 2003, Plaintiff Michael Hill, an inmate formerly incarcerated at the

Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* action, raising

civil rights claims pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388

(1971), as well as negligence claims.  Originally, named as Defendants were: former Warden

John Lamanna; William Collins, Chief Dental Officer; Marty Sapko, UNICOR/Industry Factory

Manager; Stephen Housler, Safety Manager; Robert Klark, Camp Administrator and Legal

Liaison; Robert Reome, Unit Manager; Beth Fantaskey, Education Department Chief; and

Deborah Forsyth, Chairperson of the Safety and Health Committee.  Document # 5.

   In his original Complaint, Plaintiff claimed that:

> Defendants Collins and Lamanna were deliberately indifferent to his serious
> medical/dental needs which ultimately resulted in the extraction of a tooth.
>
> Defendants Lamanna, Forsyth, Sapko, and Housler exposed him to hazardous
> substances at his UNICOR job assignment without providing adequate protective
> equipment.
>
> Defendants Lamanna, Forsyth, Sapko and Housler altered a Material Safety Data
> Sheet in his work area at the UNICOR factory.
>
> Defendants Lamanna, Forsyth, Sapko, Housler, Reome, Klark, and Fantaskey
> retaliated against him by removing him from his UNICOR job in response to his
> filing of a grievance regarding conditions in the UNICOR factory.
>
> Plaintiff asserts a negligence claim against Defendants Lamanna, Forsyth, Sapko
> and Housler, contending that Defendants negligently managed FCI-McKean by
> failing to enforce Bureau of Prisons policies and regulations, failing to enforce
> OSHA workplace safety standards, failing to protect Plaintiff from known risks
> of harm and failing to protect Plaintiff from retaliation.

Id.[1]

   In response to the original and first amended complaints, Defendants filed motions to

dismiss, or in the alternative, for summary judgment.  Documents # 29 and 43.

   On February 15, 2005, this Court issued a Report and Recommendation recommending

dismissal of several of Plaintiff's claims. However, this Court also recommended that both of

Plaintiff's Eighth Amendment claims, his Fifth Amendment substantive due process claim, and

his retaliation claim be allowed to proceed.  Plaintiff was directed to file an amended complaint

to more fully allege his Equal Protection claim and to name the United States of America as a

Defendant with regard to the claims under the Federal Tort Claims Act.  Document # 50. On

March 17, 2005, Defendants filed Objections to the Report and Recommendation. Document #

---

[1] While acting *pro se*, Plaintiff has filed several amendments to the original complaint.
See Documents # 39, 53 and 66.

55.  By Order dated March 31, 2005, District Judge Sean J. McLaughlin adopted this Court's Report and Recommendation. Document # 57.

On April 22, 2005, Plaintiff filed a motion for appointment of counsel, which was granted by this Court on December 2, 2005.  Plaintiff's newly-appointed counsel then filed the Fifth Amended Complaint on January 20, 2006.  Document # 81.  In his Fifth Amended Complaint, Plaintiff restates his Eighth Amendment claims (involving inadequate dental treatment and exposure to silica dust in his UNICOR job) against the individual Defendants, and reasserts both of his negligence claims against the United States under the FTCA.[2]

In response to the Fifth Amended Complaint, Defendants have filed another motion to dismiss, or in the alternative motion for summary judgment.  As to the *Bivens* claims, Defendants argue:

> (i) Plaintiff's allegations of inadequate dental care do not rise to the level of a constitutional violation;
>
> (ii) Plaintiff's allegations of hazardous exposure to silica dust at UNICOR do not establish a constitutional violation;
>
> (iii) Plaintiff's claims against Defendants Lamanna, Fantaskey, Reome, and Klark should be dismissed due to Plaintiff's failure to allege personal involvement;
>
> (iv) Plaintiff's claims against the individual Defendants are barred by the doctrine of qualified immunity.

As to the FTCA claims, Defendants argue:

> (i) Plaintiff's FTCA claim involving silica dust exposure should be dismissed for lack of subject matter jurisdiction due to Plaintiff's failure to timely exhaust his administrative remedies; or, alternatively,
>
> (ii) Plaintiff's FTCA claim involving silica dust exposure is barred by the Prison Industries Fund, 18 U.S.C. § 4126(c)(4); and

---

[2] It is significant to note that, although Plaintiff makes a single reference to the Fifth Amendment in paragraph 52 of his Fifth Amended Complaint, there are no other allegations that may be construed to state a substantive due process claim.  As a result, this Court considers any such claim to have been dropped by Plaintiff's counsel.  Additionally, there is no mention of a retaliation claim or an Equal Protection claim in the Fifth Amended Complaint.

3

(iii) Bureau of Prisons staff did not act negligently toward Plaintiff in regard to his dental treatment.

Document # 83. Plaintiff has filed a brief in opposition to Defendants' motion, and Defendants' have filed a reply brief.  This matter is now ripe for consideration.

### B.    Relevant Factual History

#### 1.    Dental Treatment

According to the Fifth Amended Complaint, Plaintiff Hill transferred into FCI McKean on October 18, 2001 at which time he already had a medicated temporary filling[3] in tooth # 13. Document # 81, at  ¶¶ 13, 15.

On December 3, 2001, Plaintiff submitted a request to staff requesting dental care:

> I came here from USP Lompoc where earlier this year during a dental examination two cavities where (sic) found and one of those were (sic) subsequently temporarily filled.  Before I could come up on there (sic) list to get both of these permanently filled I was transferred here therefore I would like to have this taken care of - the temporary filling is coming loose.  Also if I could be placed on your list for cleaning I would gladly appreciate it.

Document # 83, Exhibit 3, Attachment C.  The response to the request indicated that Plaintiff's name would be put on a list and he would wait until called.  Id.

On April 8, 2002, Plaintiff submitted another request:

> I have two cavities, one was temporarily filled and the other was left as is, this was approximately 14 months ago that had the temporary filling put in and the cavity diagnosed, both are degenerating "getting worse".  I would like to be placed on schedule so as to have both cavities permanently and correctly filled in hope of saving both teeth.  This is my forth (sic) request, please check records, I came from another federal facility over seven months ago.

---

[3]  According to Defendant Collins, a dentist, "medicated fillings are not used to repair ordinary decay of tooth enamel.  They are only used when the decay is so extensive, it has already compromised the pulp of the tooth, exposing the nerves, and resulting in damage which may not be repairable with an ordinary permanent filling.  The purpose of a medicated filling, therefore, is generally to test the tooth and determine whether the tooth is salvageable." Document # 83, Declaration of Defendant Collins, Exhibit 3, ¶ 5.

4

Id. at Attachment F.  The response indicated that Plaintiff was # 184 on the list to have permanent fillings.  Id.

On June 30, 2002, Plaintiff submitted an informal resolution to his counselor again requesting dental care:

> I have informed various medical staff members on various occasions that I have a temporary filling that has been in well over it's expected longevity and is slowly come out of my tooth on the daily basis - very soon I'll have a toothache that would be facilitated by lack of preventive medical/dental treatment.  I have done everything necessary to obtain treatment so as to prevent the pain that is sure to come, I've even talked with the Warden about this and he advised Dr. Olson at Mainline two weeks ago to take care of this before the filling is completely out of the tooth.  I would like to be treated as soon as possible.

Id. at Attachment G.  The response indicated that Plaintiff should contact the dentist "to see whether you are on the priority list.  I assume you are on the waiting list with [illegible] other inmates."  Id.

In July of 2002, Plaintiff alleges that he verbally informed Defendants Collins and Lamanna that his temporary filling was dissolving, causing him pain and discomfort and Defendants Collins and Lamanna informed him that he would have to wait his turn for dental treatment.  Document # 81, at ¶¶ 16-18.

On July 3, 2002, Plaintiff submitted an administrative remedy request to Defendant Lamanna requesting dental treatment due to the pain and discomfort from his temporary filling. In response, Defendant Lamanna informed Plaintiff that he would have to wait his turn on the dental appointment list.  Id. at ¶¶ 19 - 20.  The text of the request reads:

> I informed various medical staff and the Warden on various occasions that I have a temporary filing which was put in well over 15 months ago at USP Lompoc, the permanent filling should have been done by now, despite this knowledge I am being told to wait until my name comes up for appointment even though there is [illegible] one-hundred people in front of me with less serious dental needs.  As a result of waiting thus far, the temporary filling is eroded badly and is nearly out of the tooth, therefore I am about to suffer great pain which at this point can be prevented.  I requested that I be seen by the dentist before this filling comes completely out.

Document # 83, Exhibit 3, Attachment H.  The Warden's response indicates that "the placement of a permanent dental filling is considered as routine dental care and you are on the waiting list for treatment.  When your turn comes, you will be examined for a permanent dental filling.  If

the temporary dental filling comes out or you are in pain, please complete a sick call request."
Id.

According to Plaintiff, he continued to experience pain and discomfort, until on November 22, 2002, the temporary filling became completely dislodged from the tooth causing a dramatic increase in the level of his pain. Document # 81, at ¶¶ 22-23. Plaintiff immediately reported the situation to the Health Services Administrator and he was prescribed Motrin. Id. at ¶ 24. Five days later, on November 27, 2002, Plaintiff was seen by Defendant Collins who advised Plaintiff that he had irreversible pulpitis secondary to a former deep cavity in the tooth that had been temporarily filled and that his treatment options were either the immediate extraction of the tooth or continuing to wait until his name came up on the list for routine dental care. Defendant Collins advised Plaintiff that he was number 44 on the list. Id. at ¶ 25. Plaintiff avers that he chose to have the tooth extracted rather than endure the pain for possibly several more months. Plaintiff alleges that he continues to suffer complications from the extraction of the tooth and will require additional dental treatment and a possible dental prosthesis. Id. at ¶¶ 25-27.

### 2.    Silica Dust Exposure

Beginning in August of 2002 and ending on April 21, 2003, Plaintiff was assigned to work in FCI-McKean's UNICOR factory. Document # 81, Fifth Amended Complaint, ¶ 28. During this time, Plaintiff "regularly handled and worked with materials commonly known as Micore board, particleboard or tac-board and worked in and around areas where such boards were being cut, sanded and routered." Document # 81, at ¶ 29. Each Micore Board bears a label, which indicates that the board may contain crystalline silica and contains the following warning:

> Dust hazard. Cut and trim with knife, razor, or hand saw. Do not cut with power equipment unless a dust collector is used on the equipment or local exhaust is used and a NIOSH/MSHA-approved respirator is worn. Failure to follow these instructions may result in overexposure to airborne man-made mineral fiber. Airborne man-made mineral fiber and crystalline silica are thought to increase the risk of lung cancer. Overexposure to dust can cause eye, skin, nose, throat or respiratory

irritation.  Wear eye and skin protection.

Document # 83, Defendants' Brief, Exhibit J.

Nevertheless, the Material Safety Data Sheet maintained by the Defendants with regard to the Micore Board was altered, such that the word "respirator" was marked out and replaced with the word "mask."  Document # 81, at ¶ 38.  Moreover, Plaintiff asserts that the factory's exhaust and ventilation systems were insufficient, and the only protection provided by Defendants were disposable breathe-easy dust masks, which did not comply with the express requirements of the MSDS.  Id. at ¶ 40.  Plaintiff claims further that he and other workers were "regularly instructed to clean machinery and work areas using pneumatic or other compressed air equipment, as well as brooms," thereby exacerbating the exposure to airborne silica dust.  Id. at ¶ 34.

Plaintiff also claims that, during his UNICOR work assignment, he "worked in and around areas where the adhesive commonly known as Lockweld 860/861 was being used," which exposed him "to serious risks and hazards including the risk of fire and health risks associated with the presence of fumes from Locweld 860/861."  Id. at ¶¶ 32-33, 35-36.

**C.     Standards of Review**

**1.     Motion to Dismiss - Fed.R.Civ.P. 12(b)(1)**

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction which attacks the  as deficient on its face, the Court must take all allegations in the complaints as true.  Mortensen v. First Federal Sav. and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).  However, when the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact.  Id. at 891. See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J. 2000).

### 2.    Motion to Dismiss - Fed.R.Civ.P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief.  The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim.  Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974).  However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997).  Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.  See Swierkiewicz.

### 3.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

**D.     The FTCA Claims**

**1.     Exhaustion of the Silica Dust Claim**

The FTCA grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment.  See 28 U.S.C. § 2675(a).  The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated.  28 U.S.C. § 2674.  The FTCA specifically requires an initial presentation of the claim to the appropriate federal agency and a final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit. See Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995).  This requirement is set forth in 28 U.S.C. § 2675(a)[4]:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Thus, presentation of an administrative claim in accordance with 28 U.S.C. § 2675(a) is "a jurisdictional requirement and an absolute prerequisite to maintaining a civil action against the government under the FTCA."  Valenzuela v. Thrifty Rent-A-Car, 1995 WL 708109, at *3 (E.D.Pa. Nov. 20, 1995).  See also McNeil v. United States, 508 U.S. 106 (1993)(FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative

---

[4] Prior to 1996, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency.  Because the vast majority of these claims were ultimately settled before trial, however, the Department of Justice proposed that Congress amend the FTCA to "requir[e] all claims to be presented to the appropriate agency for consideration and possible settlement before a court action could be instituted.  This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage....  Since it is the one directly concerned, it can be expected that claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess., 3 (1966), U.S. Code Cong. & Administrative. News 1966, pp. 2515, 2517.

remedies); Livera v. First Nat. State Bank, 879 F.2d 1186, 1194 (3d Cir. 1989)(Exhaustion of administrative remedies is a jurisdictional requirement that cannot be waived and must be strictly construed).  An administrative claim is deemed "presented" when the federal agency receives written notification of the alleged injuries accompanied by a claim for money damages set forth in a sum certain.  28 U.S.C. § 14.2; see also Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971).

Defendants argue that Plaintiff's FTCA claim involving silica dust exposure should be dismissed for lack of subject matter jurisdiction, because Plaintiff did not fully exhaust his administrative remedies prior to the filing of the original complaint in this matter.  This Court agrees.  It is beyond dispute that Plaintiff failed to exhaust his administrative remedies with regard to his FTCA claim involving silica dust exposure.  Plaintiff filed his original complaint on October 7, 2003.   Plaintiff has not filed an administrative tort claim.  See Document # 82, Exhibit 6, Declaration of Joyce Horikawa, ¶¶ 3-5 and Exhibit 7, Declaration of Debbie Stevens, ¶¶ 3-4.  Thus, Plaintiff's FTCA claim involving silica dust exposure against the United States should be dismissed for lack of subject matter jurisdiction.[5]

## 2.      Negligence as to the Dental Issue [6]

The FTCA does not create a substantive cause of action against the United States, but provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court.  Hence, in a FTCA action, the district court applies the law of the state in which the act occurred.  See 28 U.S.C. § 1346(b); Castillo v. U.S., 2002 WL 1752235, at *3 (7th Cir. 2002).

---

[5] Since this Court is recommending dismissal of Plaintiff's FTCA claim involving silica dust exposure at UNICOR for lack of subject matter jurisdiction, there is no need to address Defendants' argument that the FTCA claim is barred by the Prison Industries Fund, 18 U.S.C. § 4126(c)(4).

[6] Defendants acknowledge that Plaintiff has exhausted his administrative tort claim as to the dental treatment issue.  See Document # 83, page 47 and Exhibit 6 at ¶ 4 and Attachment A.

In the Commonwealth of Pennsylvania in order to establish a cause of action in negligence, plaintiffs bear the burden of demonstrating that there was (1) a duty or obligation recognized by law, (2) breach of that duty by the defendants, (3) a causal connection between the defendants' breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant.   Corrigan v. Methodist Hosp., 2002 WL 31492261, at *7 (E.D.Pa. Nov 07, 2002).  All of the elements must be met in order for a plaintiff to recover in tort.

As an initial matter, "where there is no duty of care, there can be no negligence." Maxwell v. Keas, 639 A.2d 1215, 1217 (Pa. Super. 1994).  "Whether a defendant owes a duty of care to a plaintiff is a question of law"( Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir.1993)) and revolves around the relationship between the two parties.   In this case, Congress has established a statutory duty[7] of care to be applied when federal prisoners sue the United States for negligence.  Title 18 U.S.C. § 4042 requires "the exercise of ordinary diligence" to keep inmates safe from harm.  Id.  Defendants acknowledge that the federal courts have construed this statute to include the duty to provide adequate medical care to all federal inmates.

The government argues that Bureau of Prisons staff did not breach their duty to Plaintiff because a medical professional should not be responsible for failing to adequately treat a medical condition which was not reported.  Document # 83, page 50.  Specifically, Defendants argue that prison staff did not know Plaintiff was experiencing pain until November 27, 2002, the day the tooth was extracted.  Id.  Defendants argue "if Plaintiff, at any time prior to November 27, 2002, had indicated that the tooth was in pain or distress, or that he was

---

[7]  In the absence of a federal statutory duty, courts normally look to the state law to establish duty of care.  The Commonwealth of Pennsylvania has adopted the Restatement view: "the fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."   Restatement (Second) of Torts § 314, "Duty to Act for Protection of Others" (1965).  The Restatement enumerates certain special relationships that give rise to a duty to protect: those relationships include common carriers, innkeepers, possessors of land, and those who take custody of another. Restatement (Second) of Torts § 314A, "Special Relations Giving Rise to Duty to Aid or Protect."

otherwise in need of emergency treatment, he would have been examined by the dentist." Id.

_____Defendants argument in this regard is disingenuous.  The record before this Court, as submitted by Defendants, reveals that as early as December 3, 2001, Plaintiff complained in writing that his temporary filling was coming loose, and in July of 2002, Plaintiff complained that his temporary filling was "badly eroded."[8]  Additionally, even when the temporary filling became dislodged on November 22nd,  Plaintiff was not seen by a dental professional until five days later.  The record presently before this Court indicates that Plaintiff repeatedly informed prison staff about the dental problems and Plaintiff was repeatedly informed that he must wait for treatment.

Defendants make much of the fact that Plaintiff did not request emergency (as opposed to routine) dental care.  In other words, Defendants contend that Plaintiff could have sought emergency dental treatment by following a different procedure to notify staff of his pain and discomfort.  This argument is of no moment to this Court.  The bottom line is Plaintiff repeatedly notified staff that he needed dental treatment and he was repeatedly refused access to treatment.

Next, Defendants argue that prison staff did not breach their duty to Plaintiff because the extraction of the tooth was medically appropriate and consistent with the applicable community standard.  Defendant Collins explains that he did not comply with Plaintiff's preference for a root canal in an effort to save the tooth because

> current community standards do not recommended performing a root canal on a tooth in the back of the mouth unless a crown is used to protect the tooth from further damage.  At the present time the Bureau of Prisons does not typically authorize the use of dental crowns.

Document # 83, Exhibit 4, at ¶¶ 22-24, and Attachments D and I.

Plaintiff has not refuted this community standard argument.  Typically, Defendants'

---

[8]  In his Fifth Amended Complaint, Plaintiff alleges that in early July of 2002, he spoke directly to both Collins and Lamanna about the temporary filling which was causing him pain and discomfort.  Document # 81, ¶ 16-17.

evidence demonstrating compliance with appropriate community standards of medical care, accompanied by a lack of contrary evidence by Plaintiff, would result in the award of summary judgment in favor of Defendants. See Fed.R.Civ.P. 56(e) (when a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations).  However, this Court will not award summary judgment in favor of Defendants at this stage of the proceedings because Plaintiff has not had the opportunity to conduct discovery and has made the appropriate affidavit requesting further discovery pursuant to Fed.R.Civ.P. 56(f).[9]

        **E.**     **The *Bivens* Claims**

              **1.**     **Eighth Amendment Claims**

                        **a.**     **Silica dust exposure**

In his Fifth Amended Complaint, Plaintiff asserts that Defendants were deliberately indifferent to his safety by forcing him to be exposed to hazardous working conditions in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  In particular, Plaintiff claims that Defendants required him to work in and around areas where Micore fiber boards were being cut, sanded, and routered, and otherwise handled by himself and other inmates without proper ventilation and protective gear.  As a result, Plaintiff claims that he was exposed to potential carcinogens contained in the dust from these fiber boards, which was

---

[9] Where a party opposing a motion for summary judgment provides an affidavit establishing that the party cannot "present by affidavit facts essential to justify the party's opposition," Rule 56(f) authorizes the Court to "refuse the application for judgment" or "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."  <u>Gooden v. Township of Monroe</u>, 2006 WL 561916, at *1 (D.N.J.) <u>quoting</u> Fed.R.Civ.P. 56(f).  The 56(f) affidavit should specify 1) "what particular information is sought"; 2) "how, if uncovered, it would preclude summary judgment"; and, 3) "why it has not previously been obtained."  <u>Pastore v. Bell Telephone</u>, 24 F.3d 508, 511 (3d Cir. 1994).  Although not as detailed as preferred by the Circuit (<u>see</u> <u>Gooden</u>; <u>Ferreiras v. York County, Pennsylvania</u>, 2006 WL 1967365 (M.D.Pa)), this Court finds that Plaintiff's affidavit is sufficient, particularly when taken in conjunction with counsel's relatively late entry into this case with little opportunity for discovery.

further exacerbated by the required blowing and sweeping of the dust from machinery within the UNICOR facility.  In addition, Plaintiff claims that he was  exposed to harmful fumes from Locweld 860/861 without proper ventilation or protective gear, and that the presence and use of the contact adhesive constituted a fire hazard.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," and (ii) "that prison officials inflicted the injury with deliberate indifference."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).   The first prong of the Farmer test is an objective one.  Plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834.  In this context, the Eighth Amendment protects against prison conditions that threaten to cause health problems in the future, not just conditions that cause immediate medical problems.  Helling v. McKinney, 509 U.S. 25, 33-34 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health).  See also Hutto v. Finney, 437 U.S. 678, 682 (1978) (Where inmates were crowded into cells with other inmates having infectious hepatitis and venereal disease, the court held that the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all those exposed).

The second prong of the Farmer test is a subjective one, requiring Plaintiff to demonstrate that Defendants acted with deliberate indifference.  To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference.  Farmer, 511 U.S. at 837.

In response to Plaintiff's Fifth Amended Complaint, Defendants have moved to dismiss Plaintiff's Eighth Amendment claim based on essentially the same arguments and evidence that were previously found by this Court to be insufficient for the entry of summary judgment.  See

15

Document # 50, Report and Recommendation.  In particular, Defendants place a great deal of reliance on test results obtained from Microbac Laboratories, Inc. ("Microbac") in 2001 and OSHA inspectors in August 2003 to support their argument that Plaintiff cannot demonstrate that he was subjected to "unreasonably high" levels of air pollutants in the UNICOR factory and, thus, cannot establish the objective component of the <u>Farmer</u> test.  As this Court previously found, however, these test results are not dispositive and do nothing more than raise a genuine issue of material fact that cannot be decided on summary judgment.

Specifically, Plaintiff worked in the UNICOR factory beginning in August of 2002.  The Microbac testing was performed on July 31, 2001, more than one year prior to the date Plaintiff began working at the facility. Document # 83, Attachment C to Declaration of Stephen Housler. Consequently, the results of such testing cannot be held to conclusively establish the presence or absence of harmful airborne substances during the time Plaintiff worked in the UNICOR facility.

The OSHA inspection was conducted between April 16, 2003, and August 2003 with the air sampling being conducted by OSHA on June 17 and 18, 2003.  Document # 83, Attachment F to Declaration of Stephen Housler.  The results of the OSHA inspection and air testing cannot be held to conclusively reflect the air quality within the UNICOR facility during the entire period of time Plaintiff was working in the factory.  In fact, the final letter report issued on August 20, 2003, by OSHA's Area Director, John H. Stranahan, acknowledged that its test results established only that "no exposure limit was exceeded on the day of sampling." Document # 83, Attachment E to Declaration of Stephen Housler.  The report went on to recommend that a number of steps be taken "to eliminate or further reduce your employees' exposure to the hazards described above."  These hazards were identified during the inspection and were disclosed earlier in the letter report as follows:

> [p]ersonnel were potentially exposed to mechanical irritation of the skin and respiratory tract from the chemical components of micoreboard. These chemical components included but were not limited to man-made vitreous fiber and perlite.... Both the man-made vitreous fiber and the perlite are forms of glass like materials.  Specifically, perlite is a form of volcanic glass.  The glass like nature of these chemical ingredients make them very irritating to the skin, lungs, throat, nose, sinuses, and eyes.

16

Id.

Some of the recommendations listed in the August 20, 2003, letter report were: (i) "[e]liminate all blowing and sweeping of the micoreboard dust;" (ii) "[p]ersonnel should be provided long sleeved work coveralls that can be closed at the neck and wrist to minimize skin contact;" (iii) "[e]quip personnel with an approved NIOSH respirator.... [p]ersonnel must be trained in the proper use of the respirator;" and (iv) "[t]rain personnel on the information contained in the micoreboard's MSDS." Id. Each of these recommendations, raise a genuine issue of material fact as to whether the absence of such procedures prior to OSHA's inspection caused Plaintiff to be exposed to unreasonably high levels of harmful substances without appropriate protective gear and/or instruction during the time he worked in the UNICOR factory.[10]

The only additional evidence Defendants have offered that differs from their previous summary judgment motion is a more detailed description of the dust collection system attached to the UNICOR machinery. See Document # 83, Declarations of Martin Sapko and Stephen Housler. This evidence is presented in an effort to prove that NIOSH-approved respirators were not required to be worn by employees in the UNICOR factory. In particular, Defendants cite the Micore Board warning label, which contains the warning: "[d]o not cut with power equipment unless a dust collector is used on the equipment **or** a local exhaust is used and a NIOSH/MSHA-approved respirator is worn." Document # 83, Declaration of Stephen Housler at ¶ 38 and Attachment J. According to Defendants, since a dust collection system was in place, no local

---

[10] Moreover, this Court is aware of affidavits submitted in similar cases that, at least, raise questions as to the reliability of OSHA's air quality tests during this period of time. See Civil Actions 03-355 Siggers v. Lamanna, 03-368 Kelly v. Sapko, and 04-11 Ward v. Lamanna, Affidavits of William Freeman, Kevin Siggers, Michael Hill, Kevin Hill, Carlos Hicks and Leslie Kelly. In particular, the affidavit of Kevin Siggers, dated June 24, 2003, states that, on June 17, 2003, during the time OSHA was conducting its air sample tests, he and another inmate were instructed to cut only one sheet of Micore Board at a time, which significantly reduced the amount of dust that was customarily produced during a normal work day. Thus, the results of the OSHA inspection do not constitute "conclusive evidence establishing that the UNICOR factory certainly did not expose Plaintiff to" unreasonably high levels of air contaminants, as Defendants contend.

exhaust or respirator was required.

Even if the foregoing premise is accepted as true, however, it fails to address Plaintiff's claim that he was also exposed to airborne silica dust from the blowing and sweeping of the machinery in the UNICOR factory. The OSHA report further reflects that airborne silica dust was created by scrap pieces of Micore board being thrown into a dumpster within the facility. Id. Thus, according to Plaintiff's allegations and the OSHA report itself, Plaintiff as exposed to potentially harmful silica dust within the UNICOR facility fro various factors beyond the use of power equipment to cut the Micore board. Despite this fact, Plaintiff claims that Defendants provided him with a dust mask that "did not protect against silica, toxic or hazardous air contaminants." Document # 81, at ¶ 40. FCI-McKean's Institution Supplement regarding the use of respiratory protection in UNICOR operations expressly states that the disposable dust mask that was provided to Plaintiff: (i) is "not to be used as a respirator;" (ii) is only to be used "in low level dust situations," such as hand sanding operations, lawn mowing and floor sweeping; and (iii) "should never be used in operations or circumstances where harmful levels of dust or vapors may exist." Document # 35, Exhibit 15, page 5. Moreover, this Court is aware that the packaging for the dust mask specifically states that it is "not suitable for use against toxic or hazardous air contaminants, such as, but not limited to, paint spray mists, asbestos, **silica**, cotton or other toxic dusts, fumes, gases and vapors."

Based on the foregoing, this Court concludes that Plaintiff has sufficiently set forth a claim that he has "suffered an objectively, sufficiently serious injury" to satisfy the first prong of the <u>Farmer</u> test.

With regard to the subjective prong of the <u>Farmer</u> test, Defendants have failed to provide any new evidence that would persuade this Court to change its prior determination that Defendants knew or should have known of the potential risks associated with exposure to silica dust, and that they were put on notice of the recommended procedures and protective gear to be provided to inmates working with mineral fiber boards. Defendants' argument that their "compliance with OSHA standards clearly insulates them from liability" is limited by the distant relation between the dates on which such test results were obtained and the period of time

18

Plaintiff worked in the UNICOR factory.  Moreover, Defendants' argument that the protective equipment they provided to UNICOR employees complied with the relevant MSDS sheets, which, according to Defendants, did not require the use of a NIOSH-approved respirator, fails to address the issue of whether they acted with deliberate indifference in providing UNICOR factory employees with dust masks that were not suitable for protection from silica and other toxic dusts, fumes, gases and vapors.

In light of the foregoing, there remain genuine issues of material fact that preclude summary disposition of Plaintiff's Eighth Amendment claim.  Accordingly, Defendants' motion to dismiss and/or for the entry of summary judgment with regard to Plaintiff's Eighth Amendment claim should be denied.

------

### 2.     Dental Claim

Plaintiff's Eighth Amendment claim regarding his dental treatment is comprised on two separate periods of time.  First Plaintiff alleges that Defendants did not provide adequate dental care leading up to the extraction, and second, Plaintiff alleges that Defendants were deliberately indifferent because the tooth was extracted rather than attempting to salvage it.  Defendants argue that summary judgment should be granted in their favor as they provided Plaintiff with medical/dental treatment.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Deliberate indifference to a serious medical need involves the "unnecessary

and wanton infliction of pain." <u>Estelle</u>, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted).  "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1081 (3d Cir. 1976).

Initially, Defendants argue that summary judgment should be granted in their favor because Plaintiff did not have a serious medical need.  However, this Court has already determined in its first Report and Recommendation that "Plaintiff's decaying tooth constituted a 'serious medical need' requiring prompt medical attention, as the need for a permanent filling was 'so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Document # 50, page 23.  As such, there is no need to belabor this point.

Next, Defendants argue that they were not deliberately indifferent to Plaintiff's dental needs in the months leading up to the November 27, 2002 tooth extraction.  Again, this issue was thoroughly analyzed in this Court's first Report and Recommendation and this Court concluded:

> Furthermore, Plaintiff's medical and dental records indicate that Plaintiff's tooth was not examined or treated by a medical or dental professional at FCI-McKean until nearly one year after his initial Inmate Request, dated December 3, 2001. (See Document # 44, Exhibit 2, at ¶ 3, and Exhibit 3, at ¶ 3). This extended lack of medical attention, at the very least, raises a genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. See <u>Durmer</u>, 991 F.2d at 68.  As a result, Defendants' motion to dismiss or for summary judgment regarding Plaintiff's First Claim should be denied.

Document # 50, Report and Recommendation, page 24.

20

Defendants have introduced no new information or evidence in this regard which would lead this Court to reconsider its prior determinations.

Finally, Defendants argue that the extraction of the tooth did not constitute deliberate indifference. Here, this Court agrees. On November 27, 2002, Plaintiff received dental treatment in that he was examined by Defendant Collins and his tooth was extracted. It is of no moment to this Court's Eighth Amendment analysis that Plaintiff wished to have the tooth salvaged instead of extracted. "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises some professional judgment, his behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Therefore, summary judgment should be granted in favor of Defendants as to the extraction of Plaintiff's tooth.

### 3.      Defendants Lamanna, Fantaskey, Reome, and Klark

Defendants argue that Defendants Lamanna, Fantaskey, Reome and Klark should be dismissed from this action because Plaintiff has not alleged their personal involvement.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held

21

liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Here, Plaintiff has alleged that "the individual defendants were employees and policymakers at FCI-McKean" and that they, "individually and in conjunction with one another, set policy with respect to working conditions at the UNICOR facility." Document # 81, at ¶ 48. Plaintiff alleges further that, "[a]s a direct result of the individual defendants' actions and the safety and work policies they established, plaintiff has been exposed to hazardous materials and dangerous working conditions that have resulted in serious health problems and conditions..." <u>Id</u>. at ¶ 51.[11]  These allegations sufficiently implicate Defendants in the alleged misconduct.  As a result, Defendants' motion to dismiss these Defendants from this action should be denied. This Court notes, however, that while Plaintiff's allegations against Defendants Fantaskey, Reome and Klark appear tenuous at this time, further discovery is needed to disclose whether these Defendants took affirmative action that would tend to prove they was personally involved in the alleged misconduct.


### 3.    Qualified Immunity

Next, the individual Defendants claim that they are entitled to qualified immunity.  The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>see</u> <u>also</u> <u>Williams v. Bitner</u>, ___ F.3d ___, 2006 WL 2052179 (July 25, 2006).  An

---

[11]  As discussed in the first Report and Recommendation, Plaintiff Hill specifically alleges that he personally discussed these health concerns with Defendant Lamanna on more than one occasion.

officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002).  "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739  (2002).

       The Supreme Court has repeatedly emphasized the importance of resolving the immunity questions at the earliest possible stages of a case. Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987); Harlow, 457 U.S. at 818.  However, "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley, 298 F.3d at 277.

The analytical framework that district courts should employ in determining whether qualified immunity applies is clearly established:

> The Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156.  If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary.  If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id.  In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277.  See also Hope, 530 U.S. 730; Doe v. Delie, 257 F.3d 309 (3d Cir. 2001).

This Court has already addressed the threshold question in this Report and Recommendation, finding that, for the purposes of this motion, Plaintiff has sufficiently alleged that his Eighth Amendment rights have been violated both in the context of exposure to silica dust during his employment and in the lengthy delay in dental treatment.  The next step in the analysis is to determine whether the constitutional rights were clearly established at the time of the violation. Hope, 530 U.S. at 739.  "The relevant, dispositive inquiry in determining whether

a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).  The Supreme Court has observed:

> for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent.

Hope, 530 U.S. at 739.

In this case, the legal precedent regarding the Eighth Amendment's protections was clearly established at the time of the alleged occurrence. See Farmer v. Brennan, 511 U.S. 825 (1994) (holding that under Eighth Amendment, prison officials are required to provide humane conditions of confinement, and must take reasonable measures to guarantee safety of inmates) and Helling v. McKinney, 509 U.S. 25 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health) and Estelle v. Gamble, 429 U.S. 97 (1976) (holding that the Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs).  Thus, a reasonable government officer would be on notice that the conduct alleged here was unlawful.

Accordingly, Defendants are not entitled to qualified immunity and the motion to dismiss or for summary judgment should be denied in this regard.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss, or in the alternative, for summary judgment [Document # 82] be granted in part and denied in part, as follows:

a)    Plaintiff's FTCA claim regarding silica dust exposure should be dismissed for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust his administrative remedies;

b)    Plaintiff's FTCA claim regarding negligent dental care should be allowed

24

to proceed.

    c)      Plaintiff's *Bivens* claim regarding silica dust exposure should be allowed to proceed.

    d)      Plaintiff's *Bivens* claim regarding dental care should be allowed to proceed as to the deliberate indifference stemming from the lengthy delay in medical treatment, but summary judgment should be granted as to the actual tooth extraction as Defendants were not deliberately indifferent to Plaintiff's medical needs.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                       S/ Susan Paradise Baxter
                                       SUSAN PARADISE BAXTER
                                       Chief U.S. Magistrate Judge

Dated:  July 31, 2006