John R. Bush, D.M.D.
650 Smithfield Street
Suite 1550
Pittsburgh, PA 15222

Mr. Michael C. Colville
Assistant U.S. Attorney
U.S. Post Office and Courthouse
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

RE: Kenny Hill v. United States, C.A. No. 05-160e
    Michael Hill v. United States, C.A. No. 03-323e
    Leslie Kelly V. United States, C.A. No. 03-368e
    Kevin Siggers v. United States, C.A. No. 03-335e
    Myron Ward v. United States, C.A. No. 04-11e

Dear Mr. Colville:

I have reviewed the transcript and deposition of Dr. William Collins. Please let this letter serve as my opinion of the transcript and deposition.

It is my understanding that Dr. William Collins was a general dentist, up until his retirement in November 2005, working for the Federal Bureau of Prisons, and providing dental care for inmates in correctional facilities. He was responsible for the overall maintenance of the dental clinic and its' staff. It appears as though the clinic was accessible daily from 6:30am to midnight, and at one point provided 24 hour coverage. After midnight, medical staff could be summoned for an emergency examination.

In order to schedule an appointment with the dentist, the Federal Bureau of Prisons requires the inmate or patient fill out a form (cop-out) requesting he be put on a list for routine care. These lists can become quite lengthy, so those in need of emergency care take priority over those for routine care. This list is reviewed daily by the dental/medical staff.

My understanding of Mr. Michael Hill's treatment of tooth #13 (a maxillary left second premolar) is as follows: In January of 2001, Mr. Hill presented with a large distal carious lesion in tooth 13. He was examined and treated at The United States Penitentiary in Lompoc, CA. The lesion was removed and the opening created was restored with a medicated "filling". These restorations typically are a two-part mixture containing filling materials and cements. They may also contain eugenol, which is a sedative dressing, meant to soothe a tooth pulp (nerve center) that is inflamed. This condition of nerve inflammation is referred to as a pulpitis, which can be reversible or irreversible. These types of restorations, although not as permanent as some harder materials, may last in serviceable condition for many years. It does not appear that this tooth was treated again while Mr. Hill was at Lompoc.

Mr. Hill was then transferred to FCI McKean on October 18, 2001. Upon arrival, it is my understanding that all inmates are required to participate in an orientation seminar. Part of this seminar is the review of policies regarding how to seek routine and emergency medical/dental care. Specifically, inmates are told that emergency dental appointments are assigned during regular morning sick call sign-ups.

There appears to be no record of Mr. Hill reporting any dental discomfort upon his arrival to FCI McKean. He first sought dental care on December 3, 2001. His request indicated he needed two "cavities" restored, one of which had a medicated filling in it. He also requesting a prophylaxis(teeth cleaning) at this time. Mr. Hill did this by filling out a "cop-out" form which is a request for routine care, not emergency care. Had he submitted for emergency care, he would have been evaluated immediately and treated expeditiously.

On December 4, 2001, Mr. Hill was placed on a waiting list for routine care. No further requests were placed by Mr. Hill, until April 8, 2002. I would conclude from this, that Mr. Hill was asymptomatic for these four months and was experiencing no severe dental discomfort. At that point, Mr. Hill was notified that he was 184th on the dental care waiting list. He was apparently instructed to notify medical personnel if he felt he needed to be seen sooner because of dental pain.

Two and one half months later, an informal resolution was filed with Mr. Hill's counselor complaining of tooth pain associated with his teeth. He was instructed to contact the dentist, but there is no record that he contacted any health services staff about tooth pain. This action of his verbal complaints, without filing the sick call request or contacting the appropriate health care staff, repeated itself. If this tooth was truly that painful, my experience with patients in pain, leads me to believe he would have sought out emergency care.

The first time Mr. Hill attempted to be seen for emergency dental care, was on November 27, 2002. At that time, Mr. Hill reported the pain being a "4" on a scale of 1 to 10; 10 being the worst. In my opinion, a pain level of 4 would be mild to moderate discomfort, not a situation for emergency care. In my experience, patients that are in significant pain

will respond to that scale with a number above ten to indicate their severe pain. The symptoms were tenderness and pain upon percussion and palpation. The diagnosis was irreversible pulpitis as a result of the original carious lesion. How does a tooth deteriorate to this condition? The inflammatory process or pulpitis is initiated as the bacteria from the tooth decay invades the pulpal tissue deep into the tooth. If this inflammatory response is present for too long, the pulpitis becomes irreversible. If the decay is eliminated at an earlier stage, so the pulpal inflammation has not lingered, the condition is sometimes reversible. The pre-operative radiographs given to me seem to indicate that the pulp in tooth 13 had been violated for possible many years due to the gross levels of decay. Decay is typically the result of the combination of poor diet and poor oral hygiene.

In private dental practice, irreversible pulpitis is treated in one of three ways. The one least chosen is to do nothing and tolerate the condition. Few patients chose this, as a tooth with irreversible pulpitis is extremely uncomfortable. Another option is endodontic (root canal) therapy which removes the pulpal tissue which is inflamed and/or diseased. The pulp is later replaced with a biocompatible, rubber-like filling material called gutta percha. Following adequate healing, a metal or fiber post and core restorative material is bonded into place to secure the inner foundation of the tooth. This, in turn, is then often protected with a full coverage crown made of full cast gold metal, ceramic porcelain or a combination of the two. A tooth that has been treated endodontically, often becomes brittle in a short period of time, which necessitates this protective crown. The final option is extraction, which obviously eliminates the tooth and the enclosed pulpal tissue.

From the information I was given, it is my understanding that current community standards in the Federal Prison system do not recommend performing a root canal on a posterior tooth unless a crown is planned to protect the tooth from further damage. The community standard recognizes two equally acceptable treatments for irreversible pulpitis: endodontic therapy and extraction. Endodontic therapy could only have been considered if this were an anterior tooth. Anterior teeth are not typically under the same occlusal stresses as posterior teeth and do not always need to be crowned. Because endodontic therapy was not an option for Dr. Collins to perform or Mr. Hill to receive, I conclude that Dr. Collins had only one option to relieve Mr. Hill of his dental pain. Extracting tooth 13 was the only treatment option, based on the record.

Mr. Hill was apparently given a consent form advising him of the Doctor's assessment, the extraction procedure and any complications. After given the opportunity to ask questions, Mr. Hill then signed the consent form. Tooth 13 was then successfully extracted and one assumes that Mr. Hill was relieved of his discomfort in this area.

In my professional dental opinion, I conclude that tooth 13 was treated appropriately by Dr. Rose, who placed the medicated restoration, and Dr. Collins who extracted the tooth. The medicated restoration was obviously placed, because Dr. Rose was near or into the pulpal tissue when the restoration was placed. This medicated restoration was placed to assess the level of pulpitis and to provide Mr. Hill the opportunity to save his tooth.

Although these types of fillings are sometimes deemed temporary, Dr. Rose did a remarkable job of placing this restoration. Dentists often leave these restorations in place for years as the tooth's symptoms remain tolerable and the restoration remains intact. As long as the majority of the medicated restoration stays intact, there is no reason to replace it. I feel the best course of action was to leave the medicated restoration in place for as long as possible. Removal of the restoration unnecessarily, may have caused further irritation and inflammation to tooth 13. This, then, would have necessitated an earlier extraction.

Mr. Hill contends that earlier treatment would have saved this tooth. I disagree with his contention. Irreversible pulpitis results in two treatments typically: endodontic therapy or extraction. The symptoms of tooth 13 would not have improved, in my opinion, if the medicated restoration had been changed to an amalgam or composite filling. Amalgam restorations are predominantly metal-based. Metal-based restorations conduct thermal changes (hot/cold). This, more than likely, would have exacerbated the discomfort. Composite restorations are placed by first treating the tooth with a phosphoric acid. The acidity so near the pulp would likely have caused a spike in symptoms as well. Leaving the medicated restoration in place was a sound dental decision.

In conclusion, it also appears to me that any and all prison officials, advisors, and counselors acted in an appropriate manner. From the Warden to Dr. Collins, it appears Mr. Hill was given ample opportunities to respond if he was experiencing a dental crisis. He neglected to do so, which leads me to believe tooth 13 was not that painful. If it was, it was Mr. Hill's ultimate responsibility to report his pain and express his desperate desire to seek prompt dental care. It was certainly available to him. He failed to do so, therefore I don't believe anyone affiliated with the Federal Prison system should be held accountable for his indecisiveness.

Respectfully submitted,

*John R. Bush DMD*

John R. Bush, D.M.D.