Page 1

```
1    IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2
3    MICHAEL W. HILL, et al.,   : C.A. No. 05-160 Erie
         Plaintiff              : C.A. No. 03-323 Erie
4                               : C.A. No. 03-355 Erie
         v.                     : C.A. No. 03-368 Erie
5                               : C.A. No. 04-011 Erie
     JOHN J. LAMANNA, et al.,   :
6        Defendants             :
7
8
9        Video Conference Deposition of TINA PETRUZZI,
     taken before and by Janis L. Ferguson, Notary
10   Public in and for the Commonwealth of Pennsylvania,
     on Wednesday, December 6, 2006, commencing at
11   9:04 a.m., at the offices of the United States
     Attorney, 17 South Park Avenue, Suite A3330, Erie,
12   Pennsylvania 16501.
13
14
15   For the Plaintiffs:
         Neal R. Devlin, Esquire
16       Knox McLaughlin Gornall & Sennett, PC
         120 West 10th Street
17       Erie, PA 16501
18   For the Defendants:
         Michael C. Colville, Esquire, AUSA
19       Office of the United States Attorney
         700 Grant Street, Suite 4000
20       Pittsburgh, PA 15219
21       Douglas Goldring, Esquire
         Federal Prison Industries (UNICOR)
22       400 First Street NW
         Washington, DC 20534
23
24
             Reported by Janis L. Ferguson, RPR
25           Ferguson & Holdnack Reporting, Inc.
```

Page 2

```
1                    I N D E X
2
3    TESTIMONY OF TINA PETRUZZI
4        Direct examination by Mr. Devlin . . . . . . . 3
5        Cross-examination by Mr. Colville . . . . . . 17
6        Redirect examination by Mr. Devlin . . . . . . 17
7
...
25
```

Page 3

```
1         MR. DEVLIN:  Tina, my name is Neal Devlin.  In the
2    office that we're at here is also my paralegal,
3    Lorie Watson, and the court reporter, Janis
4    Ferguson.  And at this time, Tina, can I just get
5    you to say your name, and then Janis will swear
6    you in.
7         THE WITNESS:  My name is Tina Petruzzi.
8
9         T I N A  P E T R U Z Z I, first having
10   been duly sworn, testified as follows:
11
12                   DIRECT EXAMINATION
13   BY MR. DEVLIN:
14
15        Q.  Tina, again, my name is Neal Devlin, and I
16   represent Michael Hill and a number of other former inmates
17   or current inmates at FCI McKean in a series of lawsuits.
18   And those lawsuits generally involve allegations regarding
19   the UNICOR facility.  And with respect to Michael Hill's
20   lawsuit, also allegations regarding some dental care he
21   received while at FCI McKean.
22            As is obvious, we're conducting this deposition
23   via video, and because of that, you'll find that the one --
24   really, the only part of it that's a little awkward at times
25   is there's a delay between me saying something and you
```

Page 4

```
1    hearing it.  And that can lead, although we have been doing
2    pretty well thus far, to people talking over one another.
3            So what I'm going to do is I'm going to do my
4    best, when I finish a question, to pause, to then allow you
5    to answer the question.  And when you're done answering, I
6    would just ask that you do the same thing and pause, and I
7    will -- and then I'll ask the next question.
8            If we get to the point where we start talking over
9    each other in sort of that uncomfortable way, I will put my
10   hand up so that you can see me, much like this (indicating),
11   and that will let you know that we should both stop talking,
12   and then I'll get back into the question.
13           Tina --
14        A.  I can't see you.
15        Q.  You can or cannot see me?
16        A.  I cannot.
17        Q.  Oh, okay.  Well, then we'll just try not to talk
18   over one other, and if we do, we'll work it out.
19        A.  Okay.
20        Q.  Have you ever been deposed before, Tina?
21        A.  No.
22        Q.  Okay.  Just a couple ground rules.  I'm just going
23   to ask you some questions.  This is going to be really very
24   quick, I think.  And I'd just ask you to answer the
25   questions audibly and fully.  If you don't know the answer
```

Page 5

1 to the question, that's a fair answer. And if you don't
2 understand the question, just let me know that, and I will
3 rephrase it and try to make it more understandable.
4     Again, everything we say is being taken down by
5 Janis here, and there will be a transcript produced after
6 this of all of my questions and all of your answers.
7     If at any time Michael Colville or Doug Goldring
8 have an objection, they will raise that, and we'll address
9 it, and they will let you know whether or not you can answer
10 the question or not. Okay?
11    A. Okay.
12    Q. All right. Tina, where are you currently
13 employed?
14    A. FCI McKean.
15    Q. And what is your current position?
16    A. Health information technician.
17    Q. And how long have you been employed at FCI McKean?
18    A. 14 and a half years.
19    Q. And how long have you held the position of health
20 information technician?
21    A. 14 and a half years.
22    Q. Okay. Makes it easy. What are your general
23 duties as a health information technician?
24    A. Some computer work, filing. (Inaudible.) I do
25 checking in inmates and whatever else I need to do.

Page 6

1    Q. Okay. Tina, can you just give me the first couple
2 ones again. You spoke a little quickly, and the court
3 reporter wasn't able to get it down.
4    A. Computer work; Century. SMD's and a lot of
5 filing.
6    Q. Okay. Where are you physically located, your
7 office physically located within FCI McKean?
8    A. In the health services unit.
9    Q. Okay. And am I correct that where you primarily
10 work is in a -- I've heard it referred to as a records room
11 that has a window looking out on a waiting room in the
12 health services unit?
13    A. Correct. That's correct.
14    Q. One of your job duties -- and this may be within
15 the stuff you told us already -- checking inmates in, if
16 they come in either for sick call medical appointments or
17 routine medical care appointments?
18    A. Correct.
19    Q. Can you describe for me just in general terms what
20 happens if an inmate comes in during sick call and has a
21 dental complaint.
22    A. We pull their -- they have -- they fill out a form
23 stating their complaint -- their name and number, their
24 complaint. We pull their I.D. and their medical chart and
25 take it over to the dental clinic, and they take it from

Page 7

1 there.
2    Q. Okay. Back in late 2001 and through 2002 --
3 that's the time period I'd like to focus on -- and it's my
4 understanding that there have been some staff changes within
5 the dental side since that period of time. But back in that
6 period of time, if an inmate came in with a problem, and
7 they told you that problem, you would pull their chart. And
8 who would you bring the chart to?
9    A. To the dentist.
10    Q. Okay. And would that have been Dr. Collins during
11 that period of time?
12    A. I believe so.
13    Q. At that point in time, then, what would the
14 dentist -- what would the dentist do? What decisions would
15 he make?
16    A. I don't know. I never worked in the dental
17 clinic.
18    Q. Okay.
19    A. I'm unfamiliar with dental treatment totally.
20    Q. Okay. Who would notify the -- presumably the
21 inmate is then waiting in the waiting room while he
22 determines whether or not he is going to be seen during sick
23 call. Is that right?
24    A. Correct.
25    Q. Okay. So who would let him know whether he was

Page 8

1 going to be seen then or at a later time?
2    A. Someone from the dental department.
3    Q. Okay. So once you handed the chart off to someone
4 in the dental department, then you would go back and sort of
5 do your other things, and it would then be the
6 responsibility of the dental department to inform that
7 inmate either they were going to be seen then during sick
8 call or something else was going to happen. Is that right?
9    A. Correct.
10    Q. Okay.
11    A. Yes.
12    Q. All right. Does the same hold true on the medical
13 side?
14    A. Yes.
15    Q. How about for routine care? What was the
16 procedure if someone came in for routine care?
17    A. Routine dental care?
18    Q. Yes, let's start with dental.
19    A. The dental staff puts these inmates on call-out,
20 and we check them off, and they wait in the waiting room
21 until the dental department calls them in.
22    Q. Okay. Am I correct that in that period, the
23 2001/2002 time frame, there was a list for routine dental
24 care?
25    A. I don't know that.

Page 9

1  Q. Okay. So you didn't have any involvement in the
2  scheduling of dental appointments or in the placement of
3  inmates on lists for routine care?
4  A. No.
5  Q. All right. How about inmates who are in the
6  special housing unit? Did you have any involvement in
7  providing -- I know you don't provide any medical or dental
8  care. But in arranging for inmates in the special housing
9  unit to obtain dental care?
10  A. No.
11  Q. What would normally happen if an inmate in the
12  special housing unit had a dental problem and needed care?
13  How would that work?
14  A. The dental staff would make arrangements with
15  custody, with the officers, and try and get them over.
16  Q. Okay.
17  A. To be seen.
18  Q. All right. Did you ever have a problem in your
19  capacity as a health information technician, and
20  specifically in your capacity in dealing with inmates in the
21  waiting room, with inmates abusing sick -- the ability to
22  show up for sick call?
23  A. Occasionally.
24  Q. Okay. Tell me about that. Did it happen -- is it
25  something that happened fairly often, or would you say

Page 10

1  occasionally? Do you have a specific recollection of that
2  happening at times?
3  A. Not specifically, no.
4  Q. Okay. Well, just tell me what you know about it.
5  A. I'm not sure I understand your question. There --
6  what do you mean by "abusing"?
7  Q. Anything. Anything that an inmate might do coming
8  into sick call that would be deemed to be either abusive or
9  inappropriate. I mean, I don't know, but some examples that
10  I could think of would be they are there every day, and they
11  are there trying to -- trying to get medical care when they
12  clearly don't need medical care or in the dentist's or the
13  doctor's opinion they don't need medical care, or they are
14  acting up in the waiting room. Those types of things.
15  A. That happens on occasion. Occasionally they
16  become impatient if they don't get seen in a timely manner.
17  You know, I can't say that it happens every day, but on
18  occasion it does.
19  Q. Okay. Is that true that it happens -- I mean,
20  since you've been there, has that been something that has
21  happened on occasion? In other words, it's not something
22  that's only recent, but if we're talking back in the
23  2001/2002 time frame, did those types of abuses happen
24  occasionally then as well?
25  A. Yeah.

Page 11

1  MR. COLVILLE: Object to the form.
2  Q. With respect to coming often for medical or dental
3  care, showing up to sick call all the time, with that
4  specifically in mind, does that ever happen?
5  A. Yes, occasionally.
6  Q. Okay. And what are -- well, have you ever done
7  anything in response to that?
8  A. I don't know what you mean.
9  Q. Okay. If -- let's take a hypothetical. Let's say
10  an inmate comes in and is in the waiting room and gets
11  impatient, and the inmate starts doing things in the waiting
12  room that you feel are inappropriate. What are your options
13  there as to how to deal with that? Or is it something that
14  you don't deal with and someone else deals with?
15  A. It's not just my place to deal with them. Anybody
16  can talk to these inmates, ask them to stop whatever it is
17  they may be doing. We can call a correctional officer or a
18  lieutenant to come down. Whatever we feel -- every
19  situation is different. It all depends.
20  Q. Okay. Well, tell me, then -- tell me then about
21  some of the things that you have done.
22  A. I have called my supervisors out to talk to an
23  inmate, I have called -- if the inmate is on call-out for a
24  certain practitioner, I call that practitioner to explain
25  what the delay is. I have called a lieutenant down, I have

Page 12

1  called compound officers down. Every situation is
2  different. It all depends.
3  Q. Okay. Who, back in 2001/2002, who were your
4  supervisors?
5  A. I don't remember.
6  Q. Okay.
7  A. Probably Mr. Todd Montgomery was one of them, and
8  I'm not sure who the HSA was at that time.
9  Q. Okay.
10  A. That's a long time ago.
11  Q. That is right, and that is an entirely fair
12  answer. How about -- and, now, specifically here, have you
13  ever run into a situation where an inmate sought repetitive
14  care, either medical or dental, that required you to take
15  any action to try to prevent that?
16  A. No. It wouldn't be my place to take action.
17  Q. Well, by "take action", I don't mean that you
18  necessarily do anything to the inmate directly, but where
19  you would notify someone that you felt that that inmate was
20  seeking care for inappropriate reasons or in an excessive
21  way.
22  A. The -- the practitioners, the clinical director,
23  the administrators could be notified that, you know, this
24  inmate is here such and such a day, every other day, and let
25  them deal with it.

3 (Pages 9 to 12)

Page 13

1  Q. And that's what I'm getting at. You had indicated
2  there that they would be notified. Is that -- would you
3  notify them, or have you ever notified them?
4  A. Yes.
5  Q. Okay. Understanding that you may not be able to
6  give me an exact number, about how often do you think that's
7  happened over your 14 and a half years?
8  A. Very seldom. 10, 12 times, maybe.
9  Q. Okay.
10 A. Very seldom.
11 Q. Do you have any specific recollection of any of
12 those occurrences?
13 A. No.
14 Q. Understanding that you don't have a specific
15 recollection of any of the individual occurrences, when --
16 let me ask one more general question before I get to that.
17 When the inmates are in the waiting room, how much contact
18 do you have with them -- and by "contact", I mean how much
19 back and forth can go on as far as talking, them asking you
20 questions, you responding?
21 A. Little. Once they go to take a seat, they wait
22 for whomever they are going to see, and right now we go out
23 and open up the door every hour.
24 Q. Do you ever recall a situation in which an inmate
25 was doing anything in the waiting room that you deemed to be

Page 14

1  inappropriate, whether it was acting up in the waiting room
2  or whether it was seeking medical care in an excessive way
3  in which you confronted the inmate about that?
4  A. Yes.
5  Q. Okay. Can you describe what you recall about that
6  for me.
7  A. The inmate was very loud, obnoxious, called me
8  names, and I called some custody people down, and they took
9  care of him.
10 Q. Do you remember the name of that inmate?
11 A. I don't -- what does that have to do with this
12 case?
13 Q. Well, I'd just like to know the name of the
14 inmate.
15 A. Well, do I have to give you that? Because I don't
16 want any problems with --
17    MR. COLVILLE: Yes, you do, Miss Petruzzi.
18 A. His name is Jerry Matthews.
19 Q. Okay. Do you remember Michael Hill at all?
20 A. No, I don't.
21 Q. If an inmate did act up in the waiting room or if
22 an inmate did do something that you deemed -- or not that
23 you deemed, but that was determined to be inappropriate,
24 what would be the consequences for the inmate, if you know.
25 A. Depending on the situation, it could be escorted

Page 15

1  out of the health services unit, take him back to his
2  housing unit, take him to special housing, depending on the
3  circumstances.
4  Q. In those rare situations in which there had been a
5  problem with an inmate seeking excessive medical or dental
6  care, did you ever personally inform the inmate that they
7  needed to -- they needed to stop coming all the time or
8  there were going to be consequences?
9  A. No, I did not.
10 Q. Do you know, did you ever hear anyone tell an
11 inmate that?
12 A. No, I did not.
13 Q. Okay. Do you know if anyone ever told an inmate
14 that?
15 A. No.
16 Q. Well, let me ask you this: On those occasions in
17 which an inmate was seeking excessive medical care, wouldn't
18 the natural -- and I'm asking this as an open-ended
19 question, so tell me if you disagree. But it strikes me
20 that whether I'm in your position or if I'm a correctional
21 officer coming in to deal with it, one thing I'm going to
22 tell them is you need to stop coming here all the time;
23 that's the problem, and you need to fix that. I'm asking if
24 anything along those lines ever occurred.
25 A. Not that I've been aware of. I've never heard it.

Page 16

1  Q. Okay. On those occasions when an inmate had been
2  seeking excessive medical care, what happened?
3  A. I don't remember. That would have been up to the
4  discretion of the practitioner or the doctor to talk to
5  these people about their problems.
6  Q. Did you ever recall a situation in which an inmate
7  was seeking excessive medical or dental care and rather than
8  a practitioner or a doctor addressing it, a nonmedical
9  person addressed it; be it a correction officer, one of
10 your --
11 A. I don't.
12 Q. -- one of your supervisors or anyone else?
13 A. I don't remember.
14 Q. Ma'am, while you were -- you know, during your
15 job, were there ever any recurring medical complaints by the
16 inmates that seemed more prevalent than other ones?
17 A. Excuse me? Can you repeat?
18 Q. Certainly. I'm trying to get at to -- I'm trying
19 to understand whether -- it's my understanding that you, in
20 sick call, would receive sort of the inmates' medical
21 problems and then pull their chart and pass that on to the
22 appropriate practitioner. So in that capacity, were there
23 ever any medical problems that seemed to occur more
24 frequently than other ones?
25 A. I don't really look at those slips. I just give

Page 17

1  them to the practitioners and let them make those decisions.
2      MR. DEVLIN: All right, ma'am, those are all the
3      questions I have. Thank you very much.
4      THE WITNESS: Okay.
5      MR. COLVILLE: Just two questions, Miss Petruzzi.
6
7              CROSS-EXAMINATION
8  BY MR. COLVILLE:
9
10     Q. In 2001/2002, was it just you and Miss Tanner who
11 were the only ladies employed in the records department?
12     A. Correct.
13     Q. During 2001/2002, or, for that matter, anytime,
14 has there ever been an incident where an inmate has come to
15 sick call and complained about something, and you turned
16 them away?
17     A. No.
18     MR. COLVILLE: Okay. That's all I have. Thank
19     you.
20     THE WITNESS: Okay.
21     MR. DEVLIN: I have one follow-up on that, just so
22     I make sure I'm clear.
23
24             REDIRECT EXAMINATION
25 BY MR. DEVLIN:

Page 18

1      Q. If an inmate came to sick call and complained
2  about something and then acted in a manner -- whatever
3  manner -- that was -- that you felt was improper or abusive
4  and that you felt required the intervention of either a
5  practitioner or a correctional officer, were any of those
6  inmates ever taken out of the waiting room without being
7  seen by the practitioner?
8      A. I don't recall that.
9      Q. Okay. Well, if you had an inmate in the waiting
10 room -- go ahead. I'm sorry. Finish your answer.
11     A. I suppose that's possible.
12     Q. Okay. Well, I'm just asking if you ever recall it
13 happening. I mean, for instance, if you had an inmate in
14 the waiting room who was acting obnoxiously -- well, let's
15 take the example you gave me. When that inmate was in the
16 waiting room acting in a loud and obnoxious manner and
17 calling you names, and you called the correctional officer
18 or the -- I forget if you said the correctional officer or
19 the custody officer -- was that inmate escorted out of the
20 waiting room?
21     A. Yes, he was.
22     Q. Okay.
23     MR. DEVLIN: All right. Those are all the
24     questions I have.
25     MR. COLVILLE: That's all. Thank you. We'll

Page 19

1      waive.
2
3      (Deposition concluded at 9:29 a.m.)

**A**
ability 9:21
able 6:3 13:5
about 8:15 9:5,24 10:4
    11:20 12:12 13:6
    14:3,5 16:5 17:15
    18:2
abuses 10:23
abusing 9:21 10:6
abusive 10:8 18:3
act 14:21
acted 18:2
acting 10:14 14:1 18:14
    18:16
action 12:15,16,17
address 5:8
addressed 16:9
addressing 16:8
administrators 12:23
after 5:5
again 3:15 5:4 6:2
ago 12:10
ahead 18:10
al 1:3,5
allegations 3:18,20
allow 4:4
along 15:24
already 6:15
although 4:1
another 4:2
answer 4:5,24,25 5:1,9
    12:12 18:10
answering 4:5
answers 5:6
Anybody 11:15
anyone 15:10,13 16:12
anything 10:7,7 11:7
    12:18 13:25 15:24
anytime 17:13
appointments 6:16,17
    9:2
appropriate 16:22
arrangements 9:14
arranging 9:8
asking 13:19 15:18,23
    18:12
Attorney 1:11,19
audibly 4:25
AUSA 1:18
Avenue 1:11
aware 15:25
away 17:16
awkward 3:24
a.m 1:11 19:3
A3330 1:11

**B**
back 4:12 7:2,5 8:4
    10:22 12:3 13:19

15:1
become 10:16
before 1:9 4:20 13:16
being 5:4 18:6
believe 7:12
best 4:4
between 3:25
both 4:11
bring 7:8

**C**
C 1:18
call 6:16,20 7:23 8:8
    9:22 10:8 11:3,17,24
    16:20 17:15 18:1
called 11:22,23,25 12:1
    14:7,8 18:17
calling 18:17
calls 8:21
call-out 8:19 11:23
came 7:6 8:16 18:1
capacity 9:19,20 16:22
care 3:20 6:17 8:15,16
    8:17,24 9:3,8,9,12
    10:11,12,13 11:3
    12:14,20 14:2,9 15:6
    15:17 16:2,7
case 14:12
Century 6:4
certain 11:24
Certainly 16:18
changes 7:4
chart 6:24 7:7,8 8:3
    16:21
check 8:20
checking 5:25 6:15
circumstances 15:3
clear 17:22
clearly 10:12
clinic 6:25 7:17
clinical 12:22
Collins 7:10
Colville 1:18 2:5 5:7
    11:1 14:17 17:5,8,18
    18:25
come 6:16 11:18 17:14
comes 6:20 11:10
coming 10:7 11:2 15:7
    15:21,22
commencing 1:10
Commonwealth 1:10
complained 17:15 18:1
complaint 6:21,23,24
complaints 16:15
compound 12:1
computer 5:24 6:4
concluded 19:3
conducting 3:22
Conference 1:9
confronted 14:3

consequences 14:24
    15:8
contact 13:17,18
correct 6:9,13,13,18
    7:24 8:9,22 17:12
correction 16:9
correctional 11:17
    15:20 18:5,17,18
couple 4:22 6:1
court 1:1 3:3 6:2
Cross-examination 2:5
    17:7
current 3:17 5:15
currently 5:12
custody 9:15 14:8
    18:19
C.A 1:3,3,4,4,5

**D**
D 2:1
day 10:10,17 12:24,24
DC 1:22
deal 11:13,14,15 12:25
    15:21
dealing 9:20
deals 11:14
December 1:10
decisions 7:14 17:1
deemed 10:8 13:25
    14:22,23
Defendants 1:6,18
delay 3:25 11:25
dental 3:20 6:21,25 7:5
    7:16,19 8:2,4,6,17,18
    8:19,21,23 9:2,7,9,12
    9:14 11:2 12:14 15:5
    16:7
dentist 7:9,14,14
dentist's 10:12
department 8:2,4,6,21
    17:11
depending 14:25 15:2
depends 11:19 12:2
deposed 4:20
deposition 1:9 3:22
    19:3
describe 6:19 14:5
determined 14:23
determines 7:22
Devlin 1:15 2:4,6 3:1,1
    3:13,15 17:2,21,25
    18:23
different 11:19 12:2
Direct 2:4 3:12
directly 12:18
director 12:22
disagree 15:19
discretion 16:4
DISTRICT 1:1,1
doctor 16:4,8

doctor's 10:13
doing 4:1 11:11,17
    13:25
done 4:5 11:6,21
door 13:23
Doug 5:7
Douglas 1:21
down 5:4 6:3 11:18,25
    12:1 14:8
Dr 7:10
duly 3:10
during 6:20 7:10,22 8:7
    16:14 17:13
duties 5:23 6:14

**E**
E 2:1 3:9
each 4:9
easy 5:22
either 6:16 8:7 10:8
    12:14 18:4
employed 5:13,17
    17:11
entirely 12:11
Erie 1:3,3,4,4,5,11,17
escorted 14:25 18:19
Esquire 1:15,18,21
et 1:3,5
ever 4:20 9:18 11:4,6
    12:13 13:3,24 15:6
    15:10,13,24 16:6,15
    16:23 17:14 18:6,12
every 10:10,17 11:18
    12:1,24 13:23
everything 5:4
exact 13:6
examination 2:4,6 3:12
    17:24
example 18:15
examples 10:9
excessive 12:20 14:2
    15:5,17 16:2,7
Excuse 16:17
explain 11:24

**F**
facility 3:19
fair 5:1 12:11
fairly 9:25
far 4:2 13:19
FCI 3:17,21 5:14,17
    6:7
Federal 1:21
feel 11:12,18
felt 12:19 18:3,4
Ferguson 1:9,24,25 3:4
filing 5:24 6:5
fill 6:22
find 3:23
finish 4:4 18:10

first 1:22 3:9 6:1
fix 15:23
focus 7:3
follows 3:10
follow-up 17:21
forget 18:18
form 6:22 11:1
former 3:16
forth 13:19
frame 8:23 10:23
frequently 16:24
from 6:25 8:2
fully 4:25

**G**
gave 18:15
general 5:22 6:19
    13:16
generally 3:18
gets 11:10
getting 13:1
give 6:1 13:6 14:15
    16:25
go 8:4 13:19,21,22
    18:10
going 4:3,3,22,23 7:22
    8:1,7,8 13:22 15:8,21
Goldring 1:21 5:7
Gornall 1:16
Grant 1:19
ground 4:22

**H**
half 5:18,21 13:7
hand 4:10
handed 8:3
happen 8:8 9:11,24
    10:23 11:4
happened 9:25 10:21
    13:7 16:2
happening 10:2 18:13
happens 6:20 10:15,17
    10:19
having 3:9
health 5:16,19,23 6:8
    6:12 9:19 15:1
hear 15:10
heard 6:10 15:25
hearing 4:1
held 5:19
Hill 1:3 3:16 14:19
Hill's 3:19
him 7:25 14:9 15:1,2
hold 8:12
Holdnack 1:25
hour 13:23
housing 9:6,8,12 15:2,2
HSA 12:8
hypothetical 11:9

**I**
impatient 10:16 11:11
improper 18:3
inappropriate 10:9
   11:12 12:20 14:1,23
Inaudible 5:24
Inc 1:25
incident 17:14
indicated 13:1
indicating 4:10
individual 13:15
Industries 1:21
inform 8:6 15:6
information 5:16,20,23
   9:19
inmate 6:20 7:6,21 8:7
   9:11 10:7 11:10,11
   11:23,23 12:13,18,19
   12:24 13:24 14:3,7
   14:10,14,21,22,24
   15:5,6,11,13,17 16:1
   16:6 17:14 18:1,9,13
   18:15,19
inmates 3:16,17 5:25
   6:15 8:19 9:3,5,8,20
   9:21 11:16 13:17
   16:16,20 18:6
instance 18:13
intervention 18:4
involve 3:18
involvement 9:1,6
I.D 6:24

**J**
J 1:5
Janis 1:9,24 3:3,5 5:5
Jerry 14:18
job 6:14 16:15
JOHN 1:5
just 3:4 4:6,17,22,22,24
   5:2 6:1,19 10:4 11:15
   14:13 16:25 17:5,10
   17:21 18:12

**K**
know 4:11,25 5:2,9
   7:16,25 8:25 9:7 10:4
   10:9,17 11:8 12:23
   14:13,24 15:10,13
   16:14
Knox 1:16

**L**
L 1:9,24
ladies 17:11
LAMANNA 1:5
late 7:2
later 8:1
lawsuit 3:20

lawsuits 3:17,18
lead 4:1
let 4:11 5:2,9 7:25
   12:24 13:16 15:16
   17:1
let's 8:18 11:9,9 18:14
lieutenant 11:18,25
like 4:10 7:3 14:13
lines 15:24
list 8:23
lists 9:3
little 3:24 6:2 13:21
located 6:6,7
long 5:17,19 12:10
look 16:25
looking 6:11
Lorie 3:3
lot 6:4
loud 14:7 18:16

**M**
make 5:3 7:15 9:14
   17:1,22
Makes 5:22
manner 10:16 18:2,3
   18:16
matter 17:13
Matthews 14:18
may 6:14 11:17 13:5
maybe 13:8
ma'am 16:14 17:2
McKean 3:17,21 5:14
   5:17 6:7
McLaughlin 1:16
mean 10:6,9,19 11:8
   12:17 13:18 18:13
medical 6:16,17,24
   8:12 9:7 10:11,12,13
   11:2 12:14 14:2 15:5
   15:17 16:2,7,15,20
   16:23
Michael 1:3,18 3:16,19
   5:7 14:19
might 10:7
mind 11:4
Miss 14:17 17:5,10
Montgomery 12:7
more 5:3 13:16 16:16
   16:23
much 4:10 13:17,18
   17:3

**N**
N 2:1 3:9
name 3:1,5,7,15 6:23
   14:10,13,18
names 14:8 18:17
natural 15:18
Neal 1:15 3:1,15
necessarily 12:18

need 5:25 10:12,13
   15:22,23
needed 9:12 15:7,7
never 7:16 15:25
next 4:7
nonmedical 16:8
normally 9:11
Notary 1:9
notified 12:23 13:2,3
notify 7:20 12:19 13:3
number 3:16 6:23 13:6
NW 1:22

**O**
Object 11:1
objection 5:8
obnoxious 14:7 18:16
obnoxiously 18:14
obtain 9:9
obvious 3:22
occasion 10:15,18,21
occasionally 9:23 10:1
   10:15,24 11:5
occasions 15:16 16:1
occur 16:23
occurred 15:24
occurrences 13:12,15
off 8:3,20
office 1:19 3:2 6:7
officer 11:17 15:21
   16:9 18:5,17,18,19
officers 9:15 12:1
offices 1:11
often 9:25 11:2 13:6
Oh 4:17
okay 4:17,19,22 5:10
   5:11,22 6:1,6,9 7:2
   7:10,18,20,25 8:3,10
   8:22 9:1,16,24 10:4
   10:19 11:6,9,20 12:3
   12:6,9 13:5,9 14:5,19
   15:13 16:1 17:4,18
   17:20 18:9,12,22
once 8:3 13:21
one 3:23 4:2,18 6:14
   12:7 13:16 15:21
   16:9,12 17:21
ones 6:2 16:16,24
only 3:24 10:22 17:11
open 13:23
open-ended 15:18
opinion 10:13
options 11:12
other 3:16 4:9,18 8:5
   10:21 12:24 16:16,24
out 4:18 6:11,22 11:22
   13:22 15:1 18:6,19
over 4:2,8,18 6:25 9:15
   13:7

**P**
P 3:9
PA 1:17,20
paralegal 3:2
Park 1:11
part 3:24
pass 16:21
pause 4:4,6
PC 1:16
Pennsylvania 1:1,10,12
people 4:2 14:8 16:5
period 7:3,5,6,11 8:22
person 16:9
personally 15:6
Petruzzi 1:9 2:3 3:7
   14:17 17:5
physically 6:6,7
Pittsburgh 1:20
place 11:15 12:16
placement 9:2
Plaintiff 1:3
Plaintiffs 1:15
point 4:8 7:13
position 5:15,19 15:20
possible 18:11
practitioner 11:24,24
   16:4,8,22 18:5,7
practitioners 12:22
   17:1
presumably 7:20
pretty 4:2
prevalent 16:16
prevent 12:15
primarily 6:9
Prison 1:21
Probably 12:7
problem 7:6,7 9:12,18
   15:5,23
problems 14:16 16:5
   16:21,23
procedure 8:16
produced 5:5
provide 9:7
providing 9:7
Public 1:10
pull 6:22,24 7:7 16:21
put 4:9
puts 8:19

**Q**
question 4:4,5,7,12 5:1
   5:2,10 10:5 13:16
   15:19
questions 4:23,25 5:6
   13:20 17:3,5 18:24
quick 4:24
quickly 6:2

**R**

R 1:15 3:9
raise 5:8
rare 15:4
rather 16:7
really 3:24 4:23 16:25
reasons 12:20
recall 13:24 14:5 16:6
   18:8,12
receive 16:20
received 3:21
recent 10:22
recollection 10:1 13:11
   13:15
records 6:10 17:11
recurring 16:15
Redirect 2:6 17:24
referred 6:10
regarding 3:18,20
remember 12:5 14:10
   14:19 16:3,13
repeat 16:17
repetitive 12:13
rephrase 5:3
Reported 1:24
reporter 3:3 6:3
Reporting 1:25
represent 3:16
required 12:14 18:4
respect 3:19 11:2
responding 13:20
response 11:7
responsibility 8:6
right 5:12 7:23 8:8,12
   9:5,18 12:11 13:22
   17:2 18:23
room 6:10,11 7:21 8:20
   9:21 10:14 11:10,12
   13:17,25 14:1,21
   18:6,10,14,16,20
routine 6:17 8:15,16,17
   8:23 9:3
RPR 1:24
rules 4:22
run 12:13

**S**
same 4:6 8:12
saying 3:25
scheduling 9:2
seat 13:21
see 4:10,14,15 13:22
seeking 12:20 14:2 15:5
   15:17 16:2,7
seemed 16:16,23
seen 7:22 8:1,7 9:17
   10:16 18:7
seldom 13:8,10
Sennett 1:16
series 3:17
services 6:8,12 15:1

Page 3

show 9:22
showing 11:3
sick 6:16,20 7:22 8:7 9:21,22 10:8 11:3 16:20 17:15 18:1
side 7:5 8:13
since 7:5 10:20
situation 11:19 12:1,13 13:24 14:25 16:6
situations 15:4
slips 16:25
SMD's 6:4
some 3:20 4:23 5:24 7:4 10:9 11:21 14:8
someone 8:2,3,16 11:14 12:19
something 3:25 8:8 9:25 10:20,21 11:13 14:22 17:15 18:2
sorry 18:10
sort 4:9 8:4 16:20
sought 12:13
South 1:11
special 9:6,8,12 15:2
specific 10:1 13:11,14
specifically 9:20 10:3 11:4 12:12
spoke 6:2
staff 7:4 8:19 9:14
start 4:8 8:18
starts 11:11
States 1:1,11,19
stating 6:23
stop 4:11 11:16 15:7,22
Street 1:16,19,22
strikes 15:19
stuff 6:15
Suite 1:11,19
supervisors 11:22 12:4 16:12
suppose 18:11
sure 10:5 12:8 17:22
swear 3:5
sworn 3:10

**T**
T 3:9,9
take 6:25,25 11:9 12:14 12:16,17 13:21 15:1 15:2 18:15
taken 1:9 5:4 18:6
talk 4:17 11:16,22 16:4
talking 4:2,8,11 10:22 13:19
Tanner 17:10
technician 5:16,20,23 9:19
tell 9:24 10:4 11:20,20 15:10,19,22
terms 6:19

testified 3:10
TESTIMONY 2:3
Thank 17:3,18 18:25
their 6:22,23,23,23,24 6:24 7:7 16:5,21
thing 4:6 15:21
things 8:5 10:14 11:11 11:21
think 4:24 10:10 13:6
through 7:2
time 3:4 5:7 7:3,5,6,11 7:13 8:1,23 10:23 11:3 12:8,10 15:7,22
timely 10:16
times 3:24 10:2 13:8
Tina 1:9 2:3 3:1,4,7,15 4:13,20 5:12 6:1
Todd 12:7
told 6:15 7:7 15:13
totally 7:19
transcript 5:5
treatment 7:19
true 8:12 10:19
try 4:17 5:3 9:15 12:15
trying 10:11,11 16:18 16:18
turned 17:15
two 17:5
types 10:14,23

**U**
U 3:9
uncomfortable 4:9
understand 5:2 10:5 16:19
understandable 5:3
understanding 7:4 13:5,14 16:19
unfamiliar 7:19
UNICOR 1:21 3:19
unit 6:8,12 9:6,9,12 15:1,2
United 1:1,11,19
until 8:21

**V**
v 1:4
very 4:23 13:8,10 14:7 17:3
via 3:23
video 1:9 3:23

**W**
W 1:3
wait 8:20 13:21
waiting 6:11 7:21,21 8:20 9:21 10:14 11:10,11 13:17,25 14:1,21 18:6,9,14,16 18:20

waive 19:1
want 14:16
Washington 1:22
wasn't 6:3
Watson 3:3
way 4:9 12:21 14:2
Wednesday 1:10
well 4:2,17 10:4,24 11:6,20 12:17 14:13 14:15 15:16 18:9,12 18:14
were 8:7 12:3 15:8 16:14,15,22 17:11 18:5
West 1:16
WESTERN 1:1
we'll 4:17,18 5:8 18:25
we're 3:2,22 10:22
while 3:21 7:21 16:14
window 6:11
WITNESS 3:7 17:4,20
words 10:21
work 4:18 5:24 6:4,10 9:13
worked 7:16
wouldn't 12:16 15:17

**X**
X 2:1

**Y**
Yeah 10:25
years 5:18,21 13:7

**Z**
Z 3:9,9

**0**
03-323 1:3
03-355 1:4
03-368 1:4
04-011 1:5
05-160 1:3

**1**
10 13:8
10th 1:16
12 13:8
120 1:16
14 5:18,21 13:7
15219 1:20
16501 1:12,17
17 1:11 2:5,6

**2**
2001 7:2
2001/2002 8:23 10:23 12:3 17:10,13
2002 7:2
2006 1:10

20534 1:22

**3**
3 2:4

**4**
400 1:22
4000 1:19

**6**
6 1:10

**7**
700 1:19

**9**
9:04 1:11
9:29 19:3