# Occupational Health Consultants, Inc.

660 Edward Drive
Carnegie, Pennsylvania, 15106-1806
Telephone: 412-279-3632
Fax: 412-279-8975

January 23, 2007

Michael C. Colville, Esq.
Assistant U.S. Attorney
U.S. Post Office and Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA, 15219

Re: Kenny Hill v. United States, C.A. No.: 05-160E
    Michael Hill v. United States, C.A. No.: 03-323E
    Leslie Kelly v. United States, C.A. No.: 03-368E
    Kevin Siggers v. United States, C.A. No.: 03-355E
    Myron Ward v. United States, C.A. No.: 04-11E

Dear Attorney Colville:

Thank you for submitting various documents and materials for my review in the above captioned cases. You have asked me to render an opinion whether the plaintiffs were working in a safe and hazard free working environment while working at the UNICOR Facility at F.C.I. in McKean, PA. In order to arrive at an opinion, I have reviewed the following documents:

    Report from Microbac Laboratories, Inc., Bradford Division
    Investigation files from Occupational Safety and Health Administration (OSHA)
    Material Safety Data Sheets (MSDS)
    Bureau of Prisons (BOP) records
    Videos, recorded by OSHA, of the F.C.I. Facility

Briefly, plaintiffs manufactured furniture at the F.C.I. facility. They worked at various stations in the facility between about 2000 and 2004. Typical woodworking machines were used to cut the parts which make up the finished furniture. They include routers, table saws, drills and hand tools. The machines were equipped with local exhaust hoods which in turn were connected to industrial ventilation systems which collected dust at the source.

An inspection of the facility was performed on July 31, 2001 by the Microbac Laboratory, Inc. Six air samples were obtained near operators of the router, panel saw, CNC

machine, radial arm saw, Weeke Point and edge bander machines. The dust levels of all samples were below 0.4 mg/m$^3$.

On June 17, 2003 OSHA performed an inspection which was triggered by a Notice of Alleged Safety or Health Hazards. Personal air samples were obtained on three workers and two area samples were also obtained. The dust levels were 0.54 mg/m$^3$ (milligrams of dust per cubic meter of air) for the saw operator, 1.1 mg/m$^3$ for the feeder operator and 1.5 mg/m$^3$ for the saw operator. No respirable silica was detected in any of the samples. No fibers were detected in the area samples. Two additional air samples were obtained on June 18, 2003; the router operator level was 0.22 mg/m$^3$ and another machine operator had a level of 1.54 mg/m$^3$; again, no silica or fibrous glass dust were detected. These levels were well below the OSHA Standard of 15 mg/m$^3$.

These very low dust levels which were reported in both studies indicate that the ventilation systems at the F.C.I. facility worked properly in 2001 and 2003. These airborne dust levels can also be compared to the OSHA Standard of 15 mg/m$^3$. As can be seen, the dust levels in the breathing zone of the machine operators were at most one tenth of the allowable OSHA level and in some cases two orders of magnitude lower. If OSHA representatives, who traditionally are very conservative, would have suspected that a health hazard existed, they would have insisted that steps had to be taken to eliminate such hazards. I reviewed the maintenance records of the ventilation systems and they indicated that the systems were working properly. OSHA closed the case after an exhaustive investigation which lasted several months. No citations were issued pertaining to air quality standards and no serious violations were noted. Some recommendations were made, but only a letter of consultation, addressing personal hygiene, housekeeping and dress was issued.

I reviewed the existing exposure data; I do not expect that airborne dust levels would change over time. There is no evidence that the ventilation systems malfunctioned or were not used at all. I viewed the videos and I did not see significant dust generation or dust accumulation. I cannot rule out that minimal amounts of dust were in the air, which is expected in a wood working factory, but that would not constitute a health hazard. If there would have been significant dust exposures, which the plaintiffs claim, I would have seen dust generation in the videos. I did not see any dust clouds, on the contrary, the videos show that any dust was efficiently captured at the source by the ventilation system.

There was a practice to throw scrap material some 20 feet into an open dumpster; admittedly this is not a preferred practice, as OSHA noted in their report. Some dust may be generated at the dumpster, however, this dust consists of large particles, which settles out quickly and it is generated away from the workers; distance will further dilute any exposures. When Microbac and OSHA were in the factory and obtained their air samples the workers must have thrown the scrap pieces into the dumpster and any dust from this source was integrated into their air samples and yet the measured exposures were well below the OSHA standards.

It is my understanding that there may be testimony that on the days of air sampling only one sheet of wood was cut on the saw table; the saw would be the only machine on which up to three sheets could be cut at one time. Even if I assume hypothetically that a maximum of three sheets were cut at the same time and airborne dust levels would be three times higher, they would still be well below the applicable OSHA standard. Regardless, I would not expect that levels in the factory to go up three fold. The suction at the hood does not change with the amount of wood being cut, and the saw dust generation would not be three time that of a single sheet; the cutting speed, the feed to the blade would be slower for three sheets than for one sheet and the suction of the ventilation system would handle the dust for three sheets as well as for one sheet.

The plaintiffs also alleged exposure to solvents from the spray adhesive Lokweld 860/861, manufactured by the Wilsonart International company. This spray adhesive contains common solvents and is typically used in a ventilated spray booth. OSHA did not see a need to sample for these solvents when they were in the facility for several months. As mentioned before, OSHA inspectors are very conservative and would have collected air samples if they would have suspected unsafe conditions. They have the equipment and analytical laboratory at their disposal to analyze air samples from suspected, unsafe conditions.

In summary, it is my opinion, with a reasonable degree of scientific certainty, that the F.C.I. facility was a safe working environment. During the relevant time period the staff took necessary and appropriate measures to insure a safe and hazard free working environment. The air quality was, at the relevant times, well within the applicable OSHA standards. Two independent studies and other documentation show that the UNICOR factory was a safe and clean work place. The ventilation systems were regularly inspected and well maintained. There certainly were no unreasonable health hazards in the working environment.

I hope, that this report is sufficient for your needs at this time; should you have any questions, or if I can be of assistance in the future, please do not hesitate to contact me.

I reserve the right to supplement this report upon receipt of new information.

Sincerely,

Dietrich A. Weyel, ScD, CIH