**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL W. HILL, | ) Docket No. 03-323E |
| | ) (Judge Susan Paradise Baxter) |
| Plaintiff, | ) |
| | ) ELECTRONICALLY FILED PLEADING |
| vs. | ) |
| | ) PLAINTIFF BRIEF IN OPPOSITION TO |
| UNITED STATES OF AMERICA, | ) DEFENDANTS' MOTION TO DISMISS, OR |
| JOHN J. LAMANNA, | ) IN THE ALTERNATIVE, FOR SUMMARY |
| WILLIAM K. COLLINS, | ) JUDGMENT |
| MARTY SAPKO, | ) |
| STEPHEN HOUSLER, | ) Filed on behalf of: Plaintiff Michael W. Hill |
| ROBERT KLARK, | ) |
| ROBERT REOME, | ) Counsel of record for this party: |
| BETH FANTASKEY, and | ) Richard A. Lanzillo, Esq. |
| DEBORAH FORSYTH, | ) Knox McLaughlin Gornall |
| | ) & Sennett, P.C. |
| Defendants | ) 120 West 10th Street |
| | ) Erie, PA 16501 |
| | ) Telephone (814) 459-2800 |
| | ) Facsimile (814) 453-4530 |
| | ) Email rlanzillo@kmgslaw.com |
| | ) PA53811 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| LESLIE R. KELLY, | ) Civil Action No. 03-368E |
| | ) |
| Plaintiff, | ) Judge McLaughlin |
| | ) Magistrate Judge Baxter |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| JOHN J. LAMANNA, MARTY SAPKO, | ) |
| DEBORAH FORSYTH, and STEPHEN | ) |
| HOUSLER | ) |
| | ) |
| Defendants | ) |

| | | |
|---|---|---|
| KEVIN SIGGERS, | ) | Civil Action No. 03-355 E |
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| JOHN LAMANNA, DEBORAH | ) | |
| FORSYTH, MARTY SAPKO, and | ) | |
| STEPHEN HOUSLER, | ) | |
| | ) | |
| Defendants | ) | |

-----------------------------------------------------------------

| | | |
|---|---|---|
| MYRON WARD, | ) | Docket No. 04-11 |
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| JOHN LAMANNA, DEBORAH | ) | |
| FORSYTH, MARTY SAPKO, | ) | |
| STEPHEN HOUSLER, and NED | ) | |
| WATSON, | ) | |
| | ) | |
| Defendants | | |

-----------------------------------------------------------------

| | | |
|---|---|---|
| KENNY HILL, | ) | Docket No. 05-160E |
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| JOHN J. LAMANNA, DEBORAH | ) | |
| FORSYTH, MARTY SAPKO, and | ) | |
| STEPHEN HOUSLER | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR,
IN THE ALTERNATIVE, FOR DISMISSAL**

I.   **INTRODUCTION**

The defendants have, once again, filed a motion for summary judgment or, in the alternative, to dismiss (the "Dental Motion") Plaintiff Michael Hill's ("Hill's") claims arising out of the patently inadequate and deliberately indifferent dental care he received while he was an inmate at F.C.I.-McKean. Like Defendants' previous motions, this Dental Motion simply ignores the facts in support of Hill's claim. Applying the appropriate standard of review to the defendants' motion, there are several material issues of fact that preclude the entry of judgment in favor of the defendants.

II.  **RELEVANT UNDISPUTED FACTS**

   A.   **Hill's Dental Treatment at FCI McKean**

In February 2001, while housed at the United States Penitentiary in Lompoc, California ("USP-Lompoc"), Hill was diagnosed with three oral cavities. He received treatment at USP-Lompoc which included the placement of a temporary filling on one of the three oral cavities. In July, 2002, while at FCI-McKean, Hill verbally informed defendants Collins and Lamanna that the temporary filling that he received at USP-Lompoc was dissolving and nearly out of the tooth. The dissolving of the temporary filling caused Hill discomfort and pain, especially when the filling was exposed to air and cold drink. Hill informed defendants Collins and Lamanna of this discomfort and pain on repeated occasions. (Hill Deposition pp. 43, 48-54).

Defendants Collins and Lamanna refused to treat Hill's dental condition and, instead, informed Hill that he was required to wait for his turn pursuant to FCI-McKean's dental appointment list. Defendant Collins went so far as to threaten Hill with being placed in a

restricted special housing unit if he sought any additional treatment for his decaying tooth. (Hill Deposition p. 54). On July 3, 2002, Hill submitted a written request for administrative remedy to defendant Lamanna, again asking to be seen for the pain and discomfort associated with his dissolving temporary filling. In response to this written request, defendant Lamanna again informed Hill that he would not be seen until his turn pursuant to the dental appointment list.

Between July and November 2002, Hill was not seen by any dentist and continued to experience pain and discomfort. On or about November 22, 2002, Plaintiff's temporary filling became completely dislodged from Hill's tooth. After the failure of his temporary filling, Hill's pain increased to such an extent that he was unable to eat or drink. Although Hill immediately reported the loss of his temporary filling and his increased pain to the Health Service Administrator at FCI-McKean's Medical Unit, no medical attention other than a prescription for Motrin was provided to him until November 27, 2002, when he was taken to the dental department at FCI-McKean.

On November 27, 2002, Hill was seen by Defendant Collins who advised Hill that his only options for treatment were the immediate extraction of the tooth or continuing to wait until his name came up on the list for routine care. Defendant Collins advised Hill that he was number 44 on the list for routine care. Recognizing that he could not continue to endure the pain awaiting his turn for routine dental care, which was estimated to be two to three additional months, Hill consented to the extraction of his tooth. Hill continues to suffer complications from the extraction of his tooth and will require additional dental treatment and a probable bridge or other dental prosthesis.

In their Brief in Support of the Dental Motion, the defendants do not dispute much of the sequence of treatment as alleged by Hill. Instead, they deny many of Hill's

allegations concerning the substance of communications between Hill and the defendants and attempt to portray the deterioration and dissolution of Hill's tooth as a minor inconvenience to Hill that caused him no serious discomfort and that did not prompt any significant complaints or requests for treatment. In support of their position, the defendants relying solely upon their own self-serving, internally-generated records and the self-serving testimony of the defendants and their employees. Hill's testimony, however, is diametrically opposed to the defendant's testimony on these key points and, therefore, creates a material issue of fact that precludes the entry of summary judgment.

## III.   ARGUMENT

### A.   The record supports a finding of deliberate indifference to Hill's serious medical needs.

Hill has adequately stated a claim under the Eighth Amendment relating to the dental care he received at FCI-McKean and material issues of fact exist that preclude the entry of summary judgment on this claim. In order to state a claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate that the defendants exhibited "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A plaintiff satisfies this standard where he demonstrates that: (1) he had a serious medical need, and (2) the defendant was aware of this need and was deliberately indifferent to it. See Farmer v. Brennan, 511 U.S. 825 (1994); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). The Third Circuit has recognized that deliberate indifference can be manifested by a variety of actions, including: (i) the denial of reasonable requests for medical treatment which expose an inmate to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons.

See Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir.1987); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993). With respect to what qualifies as a serious medical need, the Third Circuit has held that "a medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' " Lanzaro, 834 F.2d at 347 (citations omitted). In Farmer v. Brennan, the Supreme Court explained that the term "deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." 511 U.S. at 836.

   The treatment, or lack there of, that Hill received in response to his dental complaints easily sustains the elements of his Eighth Amendment claim. As a result of defendants' neglect and indifference, the temporary filling in Hill's tooth was allowed to deteriorate to such an extent that it caused Hill's tooth essentially to dissolve in Plaintiff's mouth, leaving no option except extraction. This condition was known to defendants Collins and Lamanna as requiring treatment and, additionally, was so obvious that a lay person would easily recognize the necessity for a doctor's attention. Hill himself recognized his need for medical attention and repeatedly informed the defendant of that need. Hill has testified, in both affidavit form and under questioning from defendants' counsel, that he repeatedly informed defendant Collins of the significant pain he experienced as a result of his tooth decay. Hill also testified that, on at least one occasion, he brought this complaint, and defendant Collins's failure to respond to it, to the attention of defendant Lamanna. While the defendants simply ignore these facts, they are well established and, at a minimum, create material issues of fact that a jury must resolve.

Accepting Hill's testimony as true, which is required in this procedural posture, he had a serious medical need to which the defendants were deliberately indifferent. Hill was experiencing significant pain from a decaying tooth. (Hill Deposition pgs. 47-49, 52). The seriousness of this need is illustrated by the options defendant Collins presented to him when he finally examined his decaying tooth – extraction or live with the pain. It is relevant that prior to Hill's several complaints regarding this tooth, the dentist he saw at USP-Lompoc indicated that the tooth was "salvageable." Thus, the serious medical need of which Hill was repeatedly informing the defendants was the significant decay of his tooth to the point that a once salvageable tooth was creating extreme pain.

Because the defendants' failed to provide Hill with any care until November 27, 2002, despite his repeated requests, Hill's tooth decayed to a point where the only treatment option offered to Hill was extraction. It is undisputed that while at USP-Lompoc, Hill's tooth was salvageable. Hill has testified that as soon as he began to feel pain in his tooth, he began making repeated requests for treatment. All of these requests fell on either deaf ears, or were responded to with threats of punishment if he continued to request treatment. This knowing neglect constitutes deliberate indifference to Hill's repeated requests for care and resulted in Hill's tooth decaying to the point where defendant Collin's believed Hill's only treatment option was extraction.

**B.      Hill has presented valid and factually supported claims against all the defendants**

A plaintiff, in order to state a viable civil rights claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of law; and 2) that said conduct deprived the Plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628,

7

638 (3d Cir. 1995). To find a supervisory official personally liable for the unconstitutional acts of his subordinates, it must be shown that the supervisor had a duty to instruct the subordinate to prevent constitutional harm, and that "as a result of the official's failure to instruct, the Plaintiff was harmed in the manner threatened." Haynesworth v. Miller, 820 F.2d 1245, 1262 (D.C. Cir. 1987); MacKinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995); Redman, 942 F.2d at 1446-1447; Hansen, 885 F.2d at 646; See also Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others.); Hunt v. Dental Dept, 865 F.2d 198, 200 (9th Cir. 1989) (inmate fails to allege any facts showing role head of state department of corrections played in denial of dental care); Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam) (warden's responsibility for generally supervising the operations of the prison not sufficient to establish personal involvement). Therefore, personal involvement or some affirmative action on the part of a defendant is necessary before he may be found liable for a civil rights violation. See Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988); Stoneking v. Bradford Area School District, 882 F.2d 720, 729-30 (3d Cir. 1989), cert, denied, 493 U.S. 1044 (1990).

        A sufficient causal connection may be established by showing that the supervisor set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the injury. Larez, 946 F.2d at 645; Redman, 942 F.2d at 1447. A supervisor may also be liable for constitutional violations by his subordinates if the supervisor knew of the violations and failed to prevent them. Taylor v. List, 880 F.2d 1040,

1045 (9th Cir. 1989); Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984). Further, supervisors may be liable if the alleged deprivation resulted from a failure to properly train or supervise personnel, or from an official policy or custom for which the defendants were responsible. Ybarra, 723 F.2d at 680.

In the present case, defendant Collin's and Lamanna's personal liability to Hill under his dental related Bivens claim is well supported. Defendant Collins personally treated, or, more accurately, personally refused to treat Hill despite Hill's repeated requests for treatment. Hill also brought his complaints directly to defendant Lamanna in "Mainline."[1] Hill's testimony is clear that notwithstanding Hill's specific complaints about his tooth pain and his complaint that defendant Collins would not treat him, Defendant Lamanna refused to intervene and knowingly allowed defendant Collins to continue the deliberate indifference to Hill's serious medical need. (Hill Deposition p. 58). This knowledge is sufficient to establish Lamanna's liability to Hill on this claim. Taylor, 880 F.2d at 1045.

    **C.**    **Hill has experienced a physical injury sufficient to support his dental claims.**

Defendants correctly cite the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(e) as a legislative limitation upon causes of action filed by prisoners. However, Defendants suggestion that the PLRA is an appropriate basis for dismissal of the plaintiffs' complaints is not supported by judicial interpretation or the plain language of the statute. The PLRA states that "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correction facility, *for mental or emotional injury* suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. 1997e(e) (emphasis added). Citing the PLRA, the Defendants conclude that each of the Plaintiff's cases should be dismissed. This conclusion

---

[1] Mainline was a procedure at FCI-McKean where inmates could bring concerns or questions directly to defendant Lamanna, and other supervisors at the prison, in a informal procedure during certain meal times.

9

is improper for several reasons.

First, Hill does not seek damages exclusively for emotional or mental distress. Rather, in addition to emotional distress, Hill seeks damages for physical injuries, which are clearly sufficient to permit recovery despite the limitations of the PLRA. As set forth below, even to the extent the PLRA applies, the physical injuries suffered by Hill are nevertheless sufficient to preclude application of the PLRA to the instant claims for emotional distress.

In support their position, Defendants cite Mitchell v. Horn, 318 F.3d 523 (3rd Cir. 2003). Mitchell, however, is easily distinguished from the instant case. In fact, when read closely, Mitchell actually lends support for denial of the instant motion. In Mitchell, the plaintiff merely alleged he suffered "emotional trauma, fear and shock…" as a result of the defendants' conduct. Id. at 528. Notably absent in the Mitchell case was any allegation that the he suffered physical injuries. The District Court noted the absence of such an allegation, and dismissed the complaint the day it was filed finding, *inter alia*, under the PLRA the plaintiff could not pursue a claim for emotional trauma absent a prior showing of an injury. Id. The Third Circuit, however, reversed, holding that the plaintiff should be permitted the opportunity to amend his complaint in order to allege the existence of any such prior physical injuries. Id.

Thus, Mitchell does not stand for the proposition that, regardless of the scope of plaintiffs' damages, the PLRA mandates dismissal, as Defendants urge. Rather, Mitchell suggests that a prisoner should be given an opportunity to allege and prove the existence of any such injuries prior to a final disposition of his legal rights. In fact, the standard adopted by a majority of federal circuit courts suggests a much more liberal interpretation of "physical injury" than that proposed by defendants. In Mitchell, the Third Circuit adopted the Siglar test adopted by the Fifth Circuit, which is grounded in 8th Amendment jurisprudence. Id. at 535-536, citing,

Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).

There, the Third Circuit expressly refused to adopt "…a test that would prevent those experiencing real physical injury at the hands of government officials from pursuing their rights." Id. Accordingly, the Third Circuit adopted the approach of the Fifth, Ninth and Eleventh Circuits which requires "…a less-than-significant-but-more-than-*de-minimis* physical injury as a predicate to allegations of emotional injury." Id. Thus, under the PLRA, a prisoner need not even allege a significant injury to appropriately claim damages for emotional or mental distress.

Defendants' argument on this point is nothing more than a mischaracterization of Hill's claim. The defendants claim that "[Hill] has alleged nothing more than a long wait for medical treatment" as his injury under the dental claims. (Brief in Support of Dental Motion, p. 11). This is simply not true. Hill did experience an absurd wait for dental care as a result of the defendants' intentional and complete indifference to his repeated requests. As a result of that wait, he experienced severe pain and was left with only one treatment option, the removal of his tooth. This is a serious injury that is obvious to anyone that might observe Hill's jaw. Accepting the defendants' mischaracterization of Hill's claim would be the equivalent of treating a plaintiff whose infection in his leg went untreated and resulted in an amputation as alleging only a *de minimis* injury of a delay in the eventual treatment option.

Hill had part his body extracted, a part that, prior to the defendants' indifference to his complaints, was salvageable. It is that removal of his tooth that is his physical injury and there can be no question that such an injury is not *de minimis*.

11

D.  **The rights of Hill violated by the defendants were "clearly established," and no defendant is entitled to qualified immunity.**

Qualified immunity shields government officials performing discretionary functions only if their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court further clarified the standard for qualified immunity, stating: "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action,... assessed in light of the legal rules that were "clearly established" at the time it was taken." Id. at 639 (citation omitted).

In the present case, the defendants cannot seriously contend that the constitutional rights of Hill at issue was not clearly established at all times relevant to this action. The contours of the Eighth Amendment right of inmates to receive care for serious medical conditions were clearly defined since at least 1974, when the Supreme Court decided Estelle v. Gamble, 429 U.S. 97, 104 (1976). While it is true that government officials are not expected to be legal scholars like law professors, Ward v. San Diego County, 791 F.2d 1329, 1332 (9th Cir.), cert, denied sub nom., Duffy v. Ward, 483 U.S. 1020 (1987), any reasonable official in the position of the Defendants in this case would have recognized the illegality of the refusing to treat an inmate with a serious medical need. That is what happened to Hill and, therefore, none of the defendants are entitled to qualified immunity.

E.  **Hill's FTCA claim relating to the defendants' negligent dental care is well supported.**

Defendants assert that Count Four of Hill's Amended Complaint should be dismissed, or that they are entitled to summary judgment on this claim. They premise this

12

assertion on their argument that Hill has failed to show any negligence on the part of BOP staff at FCI-McKean with respect to the extraction of tooth # 13.[2]  Hill brought this claim pursuant to the FTCA, which provides a cause of action against the United States for common law torts.  28 U.S.C. § 2674; U.S. v. Muniz, 374 U.S. 150, 153 (1963).  The FTCA establishes that the United States, except in limited circumstances, can be held liable for negligence to the same extent as a private individual.  Id.

       Under the FTCA, the substantive law of the state in which the act or omission occurred normally should be applied.  28 U.S.C. § 1346(b)(1); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987); Hossic v. United States, 682 F. Supp 23, 24 (M.D. Pa. 1987).  In Pennsylvania, the standard for negligence is: 1) there must be a legally recognizable duty; 2) the defendant must have failed to conform to this duty; 3) there must be a causal connection between the legally recognized duty and the plaintiffs damages; and 4) there must be actual damages. Dean v. Commonwealth Department of Transportation, 1998 WL 650070, p. 2 (Pa. Cmwlth. Ct. 1998); The Mason & Dixon Lines v. Mognet, 645 A.2d 1370, 1373, n.3 (Pa. Cmwlth. Ct. 1994).

       While the FTCA would normally look to state law to establish the government's duty of care, Congress has established a statutory duty of care to be applied when federal prisoners sue the United States for monetary damages.  Title 18 U.S.C. § 4042 requires only "the exercise of ordinary diligence" to keep inmates safe from and free from harm.  This duty requires BOP to provide for the care of all inmates in its custody.  Included in this statutory duty is the duty to provide adequate medical care to all inmates.  Yosuf v. U.S., 642 F. Supp. 415, 427 (M.D. Pa. 1986).  In the medical context, the relationship between BOP and an inmate is not that

---

[2]    The defendants have previously acknowledged that Hill properly exhausted his administrative tort claim with respect to his dental care at FCI McKean.

of jailor-jailee, but of a physician to a patient. Id. A doctor within BOP is held to the same standard of care as any doctor practicing at the same time in the same relative location. Yosuf, 642 F. Supp. at 427.

In the present case, the facts established through discovery support a finding that the care provided to Hill for his dental condition fell far below the applicable standard of care. In Hill's case the facts establish that the defendants provided Hill with no care. This conclusion necessarily follows from a simple, two-step analysis. First, Hill repeatedly requested care for his decaying tooth that was causing him increasing pain and that, prior to his arrival at FCI-McKean was "salvageable." Second, despite these several requests for care for a serious medical need, defendants Collins and Lamanna refused to provide any care until the tooth had decayed to the point where it required extraction. The defendants simply ignore these facts, seeking to rely on their own version of the facts. This is improper and, viewing the facts in the light favorable to Hill, the defendants did not only provide negligent treatment regarding Hill's dental problem, they provided no treatment. The refusal to treat a serious medical need is an obvious deviation from the standard of care such that it does not even require expert testimony. The failure of care is sufficient to preclude the entry of summary judgment on Hill FTCA claim.

## IV. CONCLUSION

For the reasons stated above, Hill respectfully requests that the Court deny Defendants' Motion to for Summary Judgment, or, in the Alternative, Motion to Dismiss.

        Respectfully submitted,

        KNOX McLAUGHLIN GORNALL &
        SENNETT, P.C.

        BY: /s/ Richard A. Lanzillo, Esq.
            Richard A. Lanzillo, Esquire
            PA53811
            Neal R. Devlin
            PA89223
            Bryan G. Baumann
            PA95046
            120 West Tenth Street
            Erie, PA  16501
            Telephone (814) 459-2800
            Facsimile (814) 453-4530
            Email rlanzillo@kmgslaw.com

# 714550