IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| MICHAEL HILL | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-323 Erie |
| | ) | District Judge McLaughlin |
| JOHN LAMANNA, et al., | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss, or in the alternative, for summary judgment **as to the dental claims** [Document # 102] be granted in part and denied in part, as follows: summary judgment should be granted in favor of Defendants Lamanna and Collins on the Bivens claim, while summary judgment should be denied as to the negligence claim against the United States.


**II.   REPORT**

    **A.   Relevant Procedural History**

On October 7, 2003, Plaintiff Michael Hill, a federal inmate formerly incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed a *pro se* action, raising civil rights claims pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), as well as negligence claims under the Federal Tort Claims Act. Former Warden John Lamanna; William Collins, Chief Dental Officer; Marty Sapko, UNICOR/Industry Factory Manager; Stephen Housler, Safety Manager; Robert Klark, Camp Administrator and Legal

1

Liaison; Robert Reome, Unit Manager; Beth Fantaskey, Education Department Chief; and Deborah Forsyth, Chairperson of the Safety and Health Committee, were originally named as Defendants. Document # 5.

In response to the original and first amended complaints, Defendants filed motions to dismiss, or in the alternative, for summary judgment. Documents # 29 and 43.

This Court issued a Report and Recommendation on February 15, 2005, recommending the dismissal of several of Plaintiff's claims, but also recommending that both of Plaintiff's Eighth Amendment claims be allowed to proceed. Plaintiff was directed to file an amended complaint naming the United States of America as a Defendant with regard to the claims under the Federal Tort Claims Act. Document # 50. By Order dated March 31, 2005, District Judge Sean J. McLaughlin adopted this Court's Report and Recommendation. Document # 57.

On April 22, 2005, Plaintiff filed a motion for appointment of counsel, which was granted and Plaintiff's newly-appointed counsel then filed the Fifth Amended Complaint on January 20, 2006. Document # 81. In his Fifth Amended Complaint, Plaintiff restated his Eighth Amendment claims (involving inadequate dental treatment and exposure to silica dust in his UNICOR job) against the individual Defendants, and reasserted both of his negligence claims against the United States under the FTCA. On July 31, 2006, this Court issued a Report and Recommendation concluding that the decision to extract Plaintiff Hill's tooth in November of 2002 did not rise to the level of either a constitutional violation or negligence, and recommended dismissal as to that part of the claims. This Court did however, recommend that both the *Bivens* and the FTCA claims concerning the period of delay from October 18, 2001 through November of 2002 be allowed to go forward. Document # 89. The District Court adopted the Report and Recommendation in full on August 18, 2006. Document # 92.

There are two claims presently remaining before this Court regarding Plaintiff's dental

care[1]: first, whether Plaintiff Hill's constitutional rights under the Eighth Amendment were violated by Defendants Lamanna and Collins in the delay in dental care, and second, whether government employees acted negligently under the FTCA in providing dental treatment. The Eighth Amendment claim involves only the actions of Defendants Lamanna and Collins, while the FTCA claim is against the United States. Document # 81, Fifth Amended Complaint, Counts III and IV. These dental claims are now ripe for disposition by this Court.

### B. Relevant Factual History

According to the Fifth Amended Complaint, Plaintiff Hill transferred into FCI-McKean on October 18, 2001 at which time he already had a temporary medicated filling in tooth # 13 which had been applied in January 2001 at USP-Lompoc. Document # 81, Fifth Amended Complaint at ¶¶ 13, 15; Document # 83, Declaration of Defendant Collins, Exhibit 3, ¶ 5. According to Defendant Collins, a dentist, "medicated fillings are not used to repair ordinary decay of tooth enamel. They are only used when the decay is so extensive, it has already compromised the pulp of the tooth, exposing the nerves, and resulting in damage which may not be repairable with an ordinary permanent filling. The purpose of a medicated filling, therefore, is generally to test the tooth and determine whether the tooth is salvageable." Document # 83, Declaration of Defendant Collins, Exhibit 3, ¶ 5.

According to Defendants, all inmates are required to participate in an Orientation Seminar upon their arrival at FCI-McKean. This orientation is conducted by employees of the Health Services Department and inmates learn the difference between routine and emergency medical treatment and the procedures for obtaining each type of care. Each inmate receives an Inmate Information Handbook which further explains that if an inmate has an immediate

---

[1] Plaintiff's Eighth Amendment claim involving exposure to silica dust remains pending before this Court and will be addressed in a separate Report and Recommendation.

medical problem that requires urgent care, he must report to the Health Services Unit requesting urgent care.  Document # 83, Declaration of Defendant Collins, Exhibit 3, at ¶¶ 6-9, and Attachments A and B.  At his deposition, Plaintiff Hill acknowledged that he understood these emergency care procedures. Document # 104, Exhibit A5, Deposition of Plaintiff Michael Hill, pages 11-12.

Upon intake at FCI-McKean, Plaintiff did not report any dental concerns.  Nothing in his chart indicated that his teeth were causing any discomfort or needed any kind of immediate attention. Document # 83, Declaration of Defendant Collins, Exhibit 3, at ¶ 10.  In his deposition testimony, Plaintiff avers that "shortly after" his arrival at FCI-McKean, he went to see Defendant Collins at open house and told him of his temporary filling.  Document # 104, Exhibit A5, page 12.  Allegedly, Defendant Collins instructed Plaintiff to submit a request to be put on the list.  Id.  Defendant Collins has no memory of meeting Plaintiff until over a year later, however.  Document # 104, Exhibit A2, Deposition of Defendant Collins, pages 5-6.

On December 3, 2001, Plaintiff submitted his first request to staff requesting dental care. Document # 83, Exhibit 3, Attachment C. The request indicated:

> I came here from U.S.P. Lompoc where earlier this year during a dental examine [sic] two cavities where [sic] found and one of those were subsequently temporarily filled.  Before I could come up on there [sic] list to get both of these permanently filled I was transferred here.  Therefore, I would like to have this taken care of - a temporary fill is coming loose.  Also if I could be placed on your list for cleaning I would gladly appreciate it.

Id.  The response to the request was issued by Denise Tanner, a health information technician, and indicated that Plaintiff's name would be put on a list and he should wait until called. Id.; Document # 104, Exhibit A3, Deposition of Denise Tanner, page 4.

On April 8, 2002, Plaintiff submitted another request in which he indicated:

> I have two cavities, one was temporarily filled and the other was left as is, this was approximately 14 months ago that had the temporary filling put in and the cavity diagnosed, both are degenerating "getting worse". I would like to be placed on schedule so as to have both cavities permanently and correctly filled in hope of saving both teeth. This is my forth (sic) request, please check records, I came from another federal facility over seven months ago.

Document # 83, Exhibit 3, Attachment F.  Amber Douglas, a certified Dental Assistant, responded, indicating that  Plaintiff was # 184 on the list to have permanent fillings, but that he should report to sick call if he had any pain. Id.

In his deposition testimony, Plaintiff claims that he began to experience pain associated with his tooth around April or May of 2002.  Document # 104, Exhibit A5, page 13.

On June 30, 2002, Plaintiff submitted an informal resolution to his counselor again requesting dental care:

> I have informed various medical staff members on various occasions that I have a temporary filling that has been in well over it's expected longevity and is slowly come out of my tooth on the daily basis-very soon I'll have a toothache that would be facilitated by lack of preventive medical/dental treatment. I have done everything necessary to obtain treatment so as to prevent the pain that is sure to come, I've even talked with the Warden about this and he advised Dr. Olson at Mainline two weeks ago to take care of this before the filling is completely out of the tooth. I would like to be treated as soon as possible.

Document # 83, Exhibit 3, Attachment G.  Ellen McInnich, Plaintiff's counselor, responded indicating that Plaintiff should contact the dentist "to see whether you are on the priority list. I assume you are on the waiting list with numerous other inmates." Id.  In his deposition testimony, Plaintiff avers that he reported to sick call complaining of pain in his tooth to an unnamed Physicians Assistant in June or July of 2002 and that he went back to dental open house and reported the pain to Collins.  Document # 104, Exhibit A5, pages 13-14.

In July of 2002 (on an unspecified date), Plaintiff alleges that he verbally informed Defendants Collins and Lamanna that his temporary filling was dissolving, causing him pain and discomfort and Defendants Collins and Lamanna informed him that he would have to wait his turn for dental treatment. Document # 81, at ¶¶ 16-18; Document # 104, Exhibit A5, Deposition of Plaintiff Michael Hill, pages 15-16.  Defendant Collins testified that he did not recall ever meeting Plaintiff prior to November of 2002. Document # 104, Exhibit A2, Deposition of Defendant Collins, pages 5-6.

Following his conversations with Defendants Lamanna and Collins, on July 3, 2002, Plaintiff submitted an administrative remedy request to Defendant Lamanna requesting dental treatment. Document # 81, ¶¶ 19-20; Document # 104, Exhibit A5, Deposition of Plaintiff Michael Hill, page 15 (indicating that he filed the administrative remedy request <u>after</u> speaking to Defendants Collins and Lamanna). The text of the request reads:

> I informed various medical staff and the Warden on various occasions that I have a temporary filing which was put in well over 15 months ago at USP Lompoc, the permanent filling should have been done by now, despite this knowledge I am being told to wait until my name comes up for appointment even though there is [illegible] one-hundred people in front of me with less serious dental needs. As a result of waiting thus far, the temporary filling is eroded badly and is nearly out of the tooth, therefore I am about to suffer great pain which at this point can be prevented. I requested that I be seen by the dentist before this filling comes completely out.

Document # 83, Exhibit 3, Attachment H. The Warden responded, indicating that "the placement of a permanent dental filling is considered as routine dental care and you are on the waiting list for treatment. When your turn comes, you will be examined for a permanent dental filling. If the temporary dental filling comes out or you are in pain, please complete a sick call request." <u>Id.</u>

In his deposition testimony, Plaintiff avers that sometime between his early July meeting with Defendant Collins and November 27, 2002, he reported to the medical department and "two [unnamed] office ladies" "chased me out of medical, threatening ... if I came back, that they were going to put me in the SHU." Document # 104, Exhibit A5, page 54. Further, Plaintiff avers that Defendant Collins acquiesced in this threat because he was in "close proximity" to the ladies "standing in the doorway" and he remained silent. <u>Id.</u> The two office ladies are presumably Denise Tanner and Tina Petruzzi who both deny any such incidents in their deposition testimony. Document #104, Exhibits A3 and A4.

Around August or September of 2002, Plaintiff's counselor, Ms. McInnich, talked to Defendant Collins about Plaintiff's "tooth problem". It is not clear whether they discussed any

6

pain that Plaintiff may have been experiencing. Defendant Collins indicated to Ms. McInnich that she should have Plaintiff report to sick call. Three weeks later during another conversation between Collins and McInnich, she asked whether Plaintiff had come to see Defendant and he indicated that Plaintiff had not done so. Document # 104, Exhibit A2, Deposition of Defendant Collins, page 5.

According to Plaintiff, he continued to experience pain and discomfort, until on November 22, 2002, the temporary filling became completely dislodged from the tooth causing a dramatic increase in the level of his pain. Document # 81, at ¶¶ 22-23. Plaintiff immediately reported to Health Services where he saw Dr. Menon, presumably a general practitioner, and he was prescribed Motrin. Id. at ¶ 24. Plaintiff's pain index level at this time was a 4 on a scale of 1 to 10. Document # 104, Exhibit A2, Deposition of Collins, page 6.

Five days later, on November 27, 2002, Plaintiff was seen by Defendant Collins, a dentist. Id. at ¶ 25. In his deposition testimony, Defendant Collins states that this was the first time he had ever seen or met Plaintiff. Document # 104, Exhibit A2, Deposition of Defendant Collins, page 5. Defendant Collins advised Plaintiff that he had irreversible pulpitis secondary to a former deep cavity in the tooth that had been temporarily filled and that his treatment options were either having the tooth extracted immediately or waiting until his name came up on the list for routine dental care. Defendant Collins advised Plaintiff that he was number 44 on the list. Document # 81, at ¶ 25. Plaintiff avers that he chose to have the tooth extracted rather than endure the pain for possibly several more months. Id. at ¶ 26.

Plaintiff claims that he has suffered from the unnecessary extraction of the tooth and continues to suffer complications from the extraction and will require additional dental treatment and a probably bridge or other dental prosthesis in the future. Id. at ¶ 27.

    **C.**    **Standards of Review**

7

### 1. Motion to dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.

### 2. Motion for summary judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has

failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Corrections Officer., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

  The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Corrections Officer. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

  A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Corrections Officer. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

9

### D. Physical Injury Requirement

Initially, Defendants argue that Plaintiff's Fifth Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Specifically, they argue that Plaintiff has failed to conclusively demonstrate any actual physical injuries and, therefore, he has failed to state a claim under the Federal Tort Claims Act and the Prison Litigation Reform Act. Defendants maintain that since Plaintiff has only alleged emotional injury without the accompanying allegation of physical injury, his FTCA claims are barred. This Court does not agree.

The Court of Appeals for the Third Circuit has indicated that the Prison Litigation Reform Act narrows the availability of relief under the Federal Tort Claims Act by prohibiting prisoners from bringing actions against the government for mental or emotional injury absent a showing of physical harm. Santana v. United States, 98 F.3d 752, 756 (3d Cir. 1996) citing 28 U.S.C. § 1346(b) ("Section 806 [of the PLRA] narrows the availability of relief under the Federal Tort Claims Act by prohibiting prisoners from bringing actions against the government for mental or emotional injury absent a showing of physical harm.").

Viewing the Fifth Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged the requisite physical harm to support both his *Bivens* and his FTCA claims. The complaint alleges pain as a result of the (negligent and inadequate) dental treatment he received. Plaintiff avers, for example, that a dissolving temporary filling caused him "pain, especially when exposed to cold air and drink." Document # 81, ¶ 17. Further, he alleges that after this temporary filling became dislodged, his pain "increased dramatically and to such an extent that he was unable to eat or drink." Id. at ¶ 23. Ultimately, when he was seen by a prison dentist, the only option available to Plaintiff was the complete extraction of the tooth — a physical injury in and of itself. Id. at ¶ 26. In addition to the pain he suffered, the Court views the ultimate extraction and loss of the tooth as a physical injury.

Finally, the Defendants make much of the Court of Appeals for the Third Circuit's decision in Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003). While the Mitchell decision is informative, it is not controlling. First, unlike the Plaintiff here, Mitchell brought an action against the government pursuant to 42 U.S.C. § 1983 only. Additionally, in Mitchell, the institution argued that Mitchell's allegations that he was deprived of food, drink, and sleep for four days were not physical injuries. Mitchell maintained that physical injury — including starvation, dehydration, unconsciousness, pain, and hypoglycemia — follow inevitably from the conditions he alleged. Id. at 534. Mitchell was given an opportunity to amend his complaint to allege actual physical injury. Here, however, the Plaintiff has indeed alleged a physical injury — the extraction of a tooth and the preceding and accompanying pain associated with that procedure. The Court finds that Plaintiff has alleged the requisite physical injury and recommends that the motion to dismiss be denied in this regard.

### E. *Bivens* Claim

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted because his allegation of inadequate dental care does not rise to the level of a constitutional violation. At issue here is the period of time from Plaintiff's arrival at FCI-McKean until the extraction of the tooth, or from October 18, 2001 through November 27, 2002.[2]

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West

---

[2] This Court has previously determined that there was no Eighth Amendment violation in relation to the actual extraction of the tooth on November 27, 2002.

v. Keve, 571 F.2d 158, 161 (3d Cir. 1978); see also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

This Court must determine whether Plaintiff has demonstrated a serious medical/dental need and, if so, whether Defendants Collins and Lamanna were deliberately indifference to that need. Defendants submit that they were not deliberately indifferent to Plaintiff's dental needs because they had no knowledge of his dental needs due to his failure to follow prison

12

procedures.[3]  This Court agrees.

Deliberate indifference must be accompanied by the requisite mental state: "the official must know of and disregard an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Further,

> An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.  The common law reflects such concerns when it imposes tort liability on a purely objective basis.  But an official's failure to alleviate a significant risk that he should have perceived by did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id.. at 838.  Either actual intent or recklessness may constitute deliberate indifference. Estelle, 429 U.S. at 105.  The denial of an inmate's request for medical care which ultimately causes "undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." Samuel v. First Correctional Medical, 463 F.Supp.2d 488, 495 (D. Del. Dec. 4, 2006) quoting Monmouth, 834 F.2d at 346.

---

[3] Defendants also argue that Plaintiff's situation was not such that it constituted a serious medical need because he never reported for emergency medical treatment until November of 2002, and when he did finally report for emergency medical treatment he described his pain index level as that of a 4 on a scale of 1 to 10.  However, this Court has already determined in its first Report and Recommendation that the pain caused by "Plaintiff's decaying tooth constituted a 'serious medical need' requiring prompt medical attention, as the need for a permanent filling was 'so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  Document # 50, page 23.  As such, there is no need to belabor this point.  See Fews v. Perez, 2007 WL 187828, at * 1 (9th Cir. January 23, 2007) ("undisputed statements in [Plaintiff's] declaration and his complaint that his decaying tooth caused him severe pain ... are sufficient to allege a serious medical need."); Board v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005) ("A number of other courts have also held that dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need. See Fields v. Gander, 734 F.2d 1313, 1314-15 (8th Cir.1984); see also Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir.1996) (recession or bleeding of the gums); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir.1995) (deterioration of teeth due to lack of treatment); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989) (an interference with the ability to eat)).

In order to "defeat summary judgment [...], [a plaintiff] must present enough evidence to support the inference that the defendant[s] knowingly and unreasonably disregarded an objectively intolerable risk of harm." Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir.2001). "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id. at 133 quoting Farmer, 511 U.S. at 937-38.

In Farmer, the Supreme Court held that finding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837 (1994). He must be "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference." Id. See also Nicini v. Morra, 212 F.3d 798, 815 n. 14 (3d Cir. 2000) (finding deliberate indifference in situations where there was "objective evidence that [a] plaintiff had serious need for medical care," and prison officials ignored that evidence); Monmouth, 834 F.2d at 347 citing Ancata v. Prison Health Servs., 769 F.2d 700, 704 (11th Cir.1985) (finding deliberate indifference in situations where "necessary medical treatment is delayed for non-medical reasons.").

Here, Plaintiff has failed to meet this burden as to Defendants Lamanna and Collins: the record reflects that Defendants Lamanna and Collins could not have had the requisite intent to demonstrate deliberate indifference.[4]   Plaintiff complained about his temporary filling and requested routine dental treatment numerous times throughout the time period at issue, including

---

[4] This Court notes that the medical records demonstrate that Plaintiff knew how to avail himself of emergent type medical care. The medical and dental clinics shared the same physical facilities (Document # 104, Exhibit A2, Deposition of Defendant Collins, pages 3-4; Id. at Exhibit A5, Deposition of Plaintiff Michael Hill, page 16) and during the time period at issue, Plaintiff was seen at Health Services repeatedly for other ailments, including shoulder injury, repeated sinusitis, hepatitis C treatments, cold sores, chest pain and rashes (Document # 83, Attachment C, part 4, pages 1-40).

in writings dated December 3, 2001; April 8, 2002; June 30, 2002. None of these writings indicates that Plaintiff was experiencing any pain: the June 30th request indicated that "very soon I'll have a toothache that would be facilitated by lack of preventive medical/dental treatment. I have done everything necessary to obtain treatment so as to prevent the pain that is sure to come" (Document # 83, Exhibit 3, Attachment G) and even as late as July 3rd, Plaintiff indicated "I am about to suffer great pain which at this point can be prevented," (id. at Attachment H). In his own deposition, Plaintiff indicates that he did not begin to experience pain associated with his tooth until June or July of 2002. Document # 104, Exhibit A5, pages 13-14. Given that Plaintiff is still mentioning future pain on June 30th and as late as July 3rd, this Court can infer that he was not experiencing pain until after those dates.[5] So then, even assuming that Plaintiff began to experience pain the very next day (July 4, 2002), he did nothing to put Defendants on notice after that date of the facts so that they could draw the appropriate inference of a substantial risk of serious harm.

It is Plaintiff's burden to show that during the time period of July 4 through November 27, 2002, Defendants knew facts from which they could infer that Plaintiff was in pain. There are two bits of evidence relating to Defendant Collins (and no evidence regarding Defendant Lamanna) during this time period. First, Plaintiff's counselor contacted Defendant Collins around September (after the date on which Plaintiff began to experience pain) about a "tooth problem," and Defendant Collins instructed her to have Plaintiff report to dental. Plaintiff did not report to dental until November 22nd at which time he was examined by Dr. Menon, a general practitioner who provided pain medication, and five days later, he was examined by Defendant Collins. No facts were provided by this evidence that would have led Defendant Collins to infer Plaintiff's tooth was in pain before Plaintiff actually reported to dental, especially in light of the fact that Plaintiff never appeared at dental despite the invitation to do

---

[5] Plaintiff's deposition testimony that his pain began around April or May of 2002 (Document # 104, Exhibit A5, page 13) is not credible as his own written requests reflect that he was attempting to avoid future pain as late as July 3, 2002.

15

so.

Second, Plaintiff testified during his deposition that (1) he went to dental call during this time period (but he does not remember when), (2) the "office ladies" told him to leave or he would end up in the SHU for bothering them, and (3) Defendant Collins was standing in the doorway to his office when the women made their alleged threats.  Plaintiff, of course, draws the inference that not only did Defendant Collins know Plaintiff was in pain by his position in the doorway, but that he must have orchestrated the women's outburst.  Plaintiff's inferences are not material facts sufficient to defeat summary judgment, however.  In order to "present enough evidence to support the inference" that Defendant Collins "knowingly and unreasonably disregarded an objectively intolerable risk of harm" [Beers-Capitol, 256 F.3d at 132], more than a scintilla of evidence must be in the record.  "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 quoting Improvement Company v. Munson, 14 Wall 442, 448, 20 l.Ed. 867 (1872).  See also Mosca v. Cole, 2007 WL 470505 (3d Cir. February 14, 2007); Meridien Mutual Insurance Corrections Officer. v. Continental Business Center, 174 Fed.Appx. 104 (3d Cir. 2006).  In this record, there is nothing else but Plaintiff's testimony that Dr. Collins was standing in the doorway when the office ladies threatened to have Plaintiff sent to the SHU.  This is not enough for many reasons.

It is unclear from Plaintiff's testimony whether or not he told the women in the office that he was in pain such that Dr. Collins could have heard and processed that information. Plaintiff's mere presence at dental call does not make that point as he could have been there arguing to be seen to avoid the "future pain" he was so often complaining of.  Plaintiff could have been continuing his argument for the replacement of the temporary filling because months had elapsed since it had been put in place.  The women and Dr. Collins may not have inferred that he was in pain, but simply that he wanted the permanent filling.  Other inferences may be

16

drawn by Dr. Collins' position in the doorway; for example, Plaintiff's complaining could have become so loud that Dr. Collins was forced to come to the doorway to find the source of the commotion, and arrived in time only to hear that the women were handling the prisoner's complaints by insisting that he leave.  In fact, if any inference should be imposed on Dr. Collins from the alleged incident, it is the opposite one: That Plaintiff was once again arguing to have his temporary filling replaced in order to avoid the future pain that he kept insisting was sure to come.

It is not the fact that Dr. Collins and the two women in the front office all testified in their depositions that this event never happened that makes Plaintiff's testimony in this regard insufficient to defeat summary judgment, but that Plaintiff's testimony is not enough to support the genuine issue of material fact that he is attempting to make -- that Dr. Collins knew facts from which he could draw the inference that Plaintiff was in sufficiently serious pain and that Dr. Collins actually drew that inference.  From Plaintiff's testimony about this incident, no reasonable jury could rule in Plaintiff's favor on this flimsy of a "disputed" fact.  Anderson, 477 U.S. at 251(more than a scintilla of evidence is needed to defeat summary judgment).

Summary judgment should be granted in favor of Defendants Lamanna and Collins on the Eighth Amendment claim.

### F.   The Federal Tort Claims Act Claim

The Federal Tort Claims Act (FTCA) does not create a substantive cause of action against the United States, but provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court. Hence, in a FTCA action, the district court applies the law of the state in which the act occurred. See 28 U.S.C. § 1346(b); Castillo v. U.S., 2002 WL 1752235, at *3 (7th Cir.2002).

In order to establish a cause of action in negligence under Pennsylvania law, plaintiffs

bear the burden of demonstrating that there was (1) a duty or obligation recognized by law, (2) breach of that duty by the defendants, (3) a causal connection between the defendants' breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant. Corrigan v. Methodist Hosp., 2002 WL 31492261, at *7 (E.D.Pa. Nov 07, 2002). All of the elements must be met in order for a plaintiff to recover in tort.

As an initial matter, "where there is no duty of care, there can be no negligence." Maxwell v. Keas, 639 A.2d 1215, 1217 (Pa.Super.1994). "Whether a defendant owes a duty of care to a plaintiff is a question of law" (Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir.1993)) and revolves around the relationship between the two parties. In this case, Congress has established a statutory duty of care to be applied when federal prisoners sue the United States for negligence. Title 18 U.S.C. § 4042 requires "the exercise of ordinary diligence" to keep inmates safe from harm. Id. Defendants acknowledge that the federal courts have construed this statute to include the duty to provide adequate medical care to all federal inmates.

Because the actions of a physician encompass matters not within the ordinary knowledge and experience of layperson, Pennsylvania law requires that allegations of medical malpractice may not be proven without the testimony of "an expert witness who will testify, to a reasonable degree of medical certainty, that the act of a physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." Flannigan v. Labe, 666 A.2d 333, 335 (Pa. Super. 1995). To be admissible, the expert's opinion must be rendered within a reasonable degree of medical certainty. Montgomery v. South Philadelphia Medical Group, 656 A.2d 1385, 1390 (Pa. Super. 1995).

In support of its motion for summary judgment, the government has provided a medical expert report which concludes that the delay in dental treatment was not negligent and in opposition to the pending motion for summary judgment, Plaintiff has provided a medical expert report which opines to the contrary. See Documents # 104, Exhibit A1, Report of John R. Bush,

18

D.M.D., (opining that the "these types of restorations [in other words, the temporary filling] although not as permanent as some harder materials, may last in serviceable condition for many years" and the "symptoms of tooth 13 would not have improved, in my opinion, if the medicated [temporary] restoration had been changed to an amalgam or composite [permanent] filling") and # 112, Exhibit 1, Report of Richard Brozewicz, D.D.S. (opining that "reasonable dental practice and the standard of care dictate that care following the placement of a temporary filling occur within a reasonable period of time, generally within 90 days."). These conflicting expert reports create a genuine issue of material fact thereby precluding summary judgment on the negligence claim. See Goldman v. Standard Insurance Comp., 341 F.3d 1023, 1036 (9th Cir. 2003)("Who is correct in this battle of experts is not for us to decide. We do conclude, however, that Goldman's expert evidence is sufficient to deny standard summary judgment."); Viterbo v. Dow Chemical Company, 826 F.2d 420, 422 (5th Cir.1987) ("As a general rule, questions regarding the scientific bases of an expert's opinion "affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss, or in the alternative, for summary judgment **as to the dental claims** [Document # 102] be granted in part and denied in part, as follows: summary judgment should be granted in favor of Defendants Lamanna and Collins on the Bivens claim, while summary judgment should be denied as to the negligence claim against the United States.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. No extensions of time will be permitted. Failure to file timely objections may constitute a waiver of

any appellate rights.

S/ Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief U.S. Magistrate Judge

Dated: February 23, 2007