IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL HILL, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 03-323E |
| | ) | |
| v. | ) | JUDGE McLAUGHLIN |
| | ) | MAGISTRATE JUDGE BAXTER |
| JOHN LAMANNA, et al., | ) | |
| | ) | (Electronic Filing) |
| Defendants. | ) | |

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION**

AND NOW, comes the United States, by and through its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, Michael C. Colville, Assistant United States Attorney for said district, and Douglas S. Goldring, Assistant General Counsel for Federal Prison Industries., Inc, and respectfully files the following Objections to Magistrate Baxter's Report and Recommendation relating to Plaintiff's dental claim, dated February 23, 2007 ("R&R") (Dkt. No. 115).[1]

In its R&R, the Court relied upon the fact the Plaintiff's expert and Defendant's expert disagreed as to the relevant community standard of care. Dkt. No. 115, pages 18-19. While Defendants do not disagree that these expert reports created a genuine issue of fact as to the duty of care owed by the United States to Plaintiff, and whether that duty was breached, that alone is not enough to continue a negligence claim.

---

[1] The individually named Defendants submit no objections to the R&R. Likewise, Defendants submit no objections to the Courts R&R relating to the air quality claims (Dkt. No. 116).

The mere occurrence of an injury does not prove negligence. In fact, in Pennsylvania, even an admittedly negligent act does not necessarily entail liability. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. Sct. 1978). In order for liability to be imposed, there must be a **direct causal link** between the doctor's negligence and the harm suffered by the Plaintiff. Id. A causal connection only exists if the alleged conduct is **a substantial factor** in bringing about the harm. Barrett v. U.S., 845 F. Supp. 774, 778 (D.Kan. 1994). Furthermore, in order for liability to be imposed, it must appear "more likely than not that the defendant was the cause." A mere speculation or possibility that the medical staff at FCI McKean provided inadequate dental care is not enough. Barrett, 845 F. Supp. at 778. Additionally, the doctor's alleged negligent act cannot have been a substantial factor in causing the plaintiff's injuries if the plaintiff would have suffered the same harm regardless of the doctor's involvement. Hamil, 392 A.2d at 1284.

Here, Plaintiff suffered from irreversible pulpitis of tooth # 13, which had been previously treated with a medicated filling. Medicated fillings are not used to repair ordinary decay to the tooth enamel. They are used to repair damage which is so extensive that it has compromised the pulp and exposed the nerves of the tooth to damage. Such decay typically occurs as the result of years of neglect and poor oral hygiene. If the pulp of the tooth does not accept the medicated filling, then the damage is not reversible, and the tooth must be extracted or treated with endodontic therapy.[2] See Declaration of William Collins, D.D.S. ¶ 29.

---

[2] There is no disagreement with respect to the inappropriateness of endodontic therapy. As noted by Dr. Collins, both endodontic therapy and extraction are considered appropriate treatments for the diagnosis of irreversible pulpitis. See Declaration of William Collins ¶ 29; Deposition of William Collins, D.D.S. page 33, line 16 thru page 35, line 21. The relevant standard of care, however, indicates that endodontic therapy cannot be performed on a posterior tooth unless a full coverage restoration is placed to prevent fracture. See Report of Richard Brozewicz, D.D.S.; Report of John R. Bush, D.M.D.; Deposition of William Collins, D.D.S.,

In the present case, we can assume for the sake of argument that the Plaintiff's expert accurately stated that "reasonable dental practice and the standard of care dictate that care following the placement of a temporary filling occur within a reasonable period of time, generally within 90 days." Report of Richard Brozewicz, D.D.S.[3]

There is simply no evidence to suggest that the outcome would have been any different if, as Plaintiff suggests, he had been examined by a dentist earlier than November 27, 2002.[4] Plaintiff alleges that his chief injury was the extraction of his tooth. See Dkt. No. 110, page 11. Because the passage of time had no effect on this outcome, Plaintiff cannot show that the alleged negligence (failure to examine Plaintiff within 90 days) was a substantial factor in bringing about the harm in question (the extraction of his tooth).[5]

---

page 33, line 16 thru page 35 line 21. In this case, however, such a full coverage restoration or crown, was specifically not allowed pursuant to BOP policy as it was considered cosmetic in nature. See Declaration of Willaim Collins, D.D.S., ¶¶ 24-25, and Attachments D and I. Plaintiffs do not dispute that BOP policy generally does not allow the use of accessory treatment such as crowns. As such, with no viable option to crown the tooth, it is undisputed that endodontic therapy would not have been an appropriate course of treatment.

[3] Defendants note that Dr. Brozewicz' report was not introduced into evidence in opposition to Defendants' Motion to Dismiss, or in the Alternative For Summary Judgment. Instead, it was attached only to the Pretrial Statement which has questionable evidentiary value. See. Dkt. No 112.

[4] It is relevant to note that the medicated filling was inserted by Dr. Rose in January 2001, while Plaintiff was housed in USP Lompoc. See Declaration of William Collins, D.D.S. ¶ 5. Plaintiff was not transferred to FCI McKean until October 2001, ten months later. Id. Presumably, if any follow up care had been necessary as a result of the fillings, Dr. Rose could have and would have been available to handle it in that ten month period.

[5] It is further relevant to note that Dr. Brozewicz alleges that the negligence occurred by not following up within 90 days of insertion of the medicated filling. The earliest Dr. Collins could possibly have examined Plaintiff's tooth, however, was fully ten months later. The 90-day follow up period had long since expired when Plaintiff was transferred to FCI McKean.

In fact, one wonders exactly what would have happened if Plaintiff had been examined earlier as Plaintiff suggests. Although Plaintiff has mistakenly argued his belief that his filling was dissolving and falling out, Dkt. No. 110, pages 3-4, there can be no doubt that this was simply not the case. At the time Plaintiff was examined, on November 27, 2002, Dr. Collins took a periapical x-ray of the tooth. See Deposition of William Collins, D.D.S. page 23. This x-ray revealed that, "the tooth was intact, the filling was intact, the filling was not cracked, the tooth was not cracked. There was no open border between the tooth and the filling." See Deposition of William Collins, D.D.S., page 24. This testimony was corroborated by Dr. Bush, and not disputed by Dr. Brozewicz. See Report of John R. Bush, D.M.D; Report of Richard Brozewicz, D.D.S.

Nonetheless, even if Dr. Collins had examined Plaintiff earlier, he would have found nothing more than a medicated filling which was presumably intact – it would certainly have been in no worse condition than on November 27, 2002, when the x-rays revealed an intact filling – and a patient who, by his own admission, was experiencing no pain. R&R, Dkt. No. 115, pages 14-15. See also Deposition of Michael Hill, pages 41-49. In other words, a patient with no medical problems. It is difficult to imagine any dentist who would suggest that Dr. Collins should have removed an intact filling which was causing no pain. To be sure, Dr. Bush indicates that due to the differences in material used in a temporary or medicated filling and a permanent filling, removal of the filling and replacement with a permanent filling could actually have caused considerably more damage to the tooth.[6] See Report of John R. Bush, D.M.D.

---

[6] Dr. Collins has previously testified that if Plaintiff had come to see him complaining of pain in his tooth at an earlier date, he likely would not have replaced the filling. Instead, he would have simply extracted the tooth at that time. Thus, the only change in the outcome would

As such, it is abundantly clear that the alleged negligence, failure to examine Plaintiff's tooth, had no bearing on the ultimate outcome – extraction of the tooth. To the contrary, any pain or other discomfort associated with the medicated filling in tooth # 13 can only have been the direct and proximate result of severe decay to the pulp of the tooth resulting from years of neglect and poor oral hygiene. This condition almost certainly existed at the time the medicated filling was inserted. Inmate Hill's tooth did not necessarily worsen over time, it was simply so severely damaged that the pulp of the tooth could not withstand eventually even the presence of a specialized (medicated) filling. As such, once it became clear that the medicated filling was no longer effective – November 27, 2002 – the only medically appropriate course of action was extraction. See Declaration of William Collins, D.D.S.¶¶ 30-31.

The damage to Plaintiff's tooth was clearly the direct and proximate result of years of neglect and poor oral hygiene, and nothing Dr. Collins did would have made any difference in the decision to extract the tooth. See Declaration of William Collins, D.D.S. ¶ 29. Nothing more than idle speculation links the alleged negligence to the extraction of Plaintiff's tooth. There is, therefore, no basis upon which to hold the United States liable for Plaintiff's dental treatment.[7]

---

have been an earlier extraction. See Declaration of William Collins, D.D.S. ¶ 30.

[7] It also bears noting that Pennsylvania law requires Plaintiff to show some injury or damages as a result of the alleged negligent medical care. Plaintiff has not done so. Specifically, he has alleged solely that the tooth was extracted. There is no indication, however, that the extraction caused additional pain, was improperly performed, or led to other medical complications. In fact, a careful reading of Plaintiff's complaint indicates that the extraction actually alleviated the pain caused by the decay in the tooth. As such, Plaintiff has alleged no facts indicating that the alleged negligence resulted in any damages or other physical injury, and this claim must be dismissed pursuant to 28 U.S.C. § 1346(b)(2).

WHEREFORE, for the foregoing reasons, Defendants respectfully object to the R&R and request that this Court dismiss Plaintiff's Complaint with prejudice or, in the alternative, grant summary judgment in favor of Defendants.

        Respectfully Submitted,

        MARY BETH BUCHANAN
        United States Attorney

        /s/ Michael C. Colville
        MICHAEL COLVILLE
        Assistant U. S. Attorney
        Western District of PA
        U.S. Post Office & Courthouse
        700 Grant Street, Suite 4000
        Pittsburgh, PA 15219
        (412) 894-7337
        PA ID No. 56668

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2007, a true copy of the within DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION was served by either electronic means and/or first-class mail to the following:

Richard A. Lanzillo, Esquire
Knox McLaughlin Gornall & Sennett, P.C.
120 West Tenth Street
Erie, PA 16501-1461


/s/ Michael C. Colville
MICHAEL C. COLVILLE
Assistant U.S. Attorney