## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL W. HILL, | ) | Docket No. 03-323E |
| | ) | (Judge Susan Paradise Baxter) |
| Plaintiff, | ) | |
| | ) | ELECTRONICALLY FILED PLEADING |
| vs. | ) | |
| | ) | PLAINTIFFS' OBJECTIONS TO |
| UNITED STATES OF AMERICA, | ) | MAGISTRATE JUDGE'S REPORT AND |
| JOHN J. LAMANNA, | ) | RECOMMENDATION |
| WILLIAM K. COLLINS, | ) | |
| MARTY SAPKO, | ) | Filed on behalf of: Plaintiff Michael W. Hill |
| STEPHEN HOUSLER, | ) | |
| ROBERT KLARK, | ) | Counsel of record for this party: |
| ROBERT REOME, | ) | Richard A. Lanzillo, Esq. |
| BETH FANTASKEY, and | ) | Knox McLaughlin Gornall |
| DEBORAH FORSYTH, | ) | & Sennett, P.C. |
| | ) | 120 West 10th Street |
| Defendants | ) | Erie, PA 16501 |
| | ) | Telephone (814) 459-2800 |
| | ) | Facsimile (814) 453-4530 |
| | ) | Email rlanzillo@kmgslaw.com |
| | ) | PA53811 |
| | ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -    - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| LESLIE R. KELLY, | ) | Civil Action No. 03-368E |
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| JOHN J. LAMANNA, MARTY SAPKO, | ) | |
| DEBORAH FORSYTH, and STEPHEN | ) | |
| HOUSLER | ) | |
| | ) | |
| Defendants | ) | |

| | | |
|---|---|---|
| KEVIN SIGGERS, | ) | Civil Action No. 03-355 E |
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, JOHN LAMANNA, DEBORAH FORSYTH, MARTY SAPKO, and STEPHEN HOUSLER, | ) ) ) ) ) | |
| Defendants | ) | |

-------------------------------------------------------------------

| | | |
|---|---|---|
| MYRON WARD, | ) | Docket No. 04-11 |
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, JOHN LAMANNA, DEBORAH FORSYTH, MARTY SAPKO, STEPHEN HOUSLER, and NED WATSON, | ) ) ) ) ) ) | |
| Defendants | | |

-------------------------------------------------------------------

| | | |
|---|---|---|
| KENNY HILL, | ) | Docket No. 05-160E |
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| JOHN J. LAMANNA, DEBORAH FORSYTH, MARTY SAPKO, and STEPHEN HOUSLER | ) ) ) ) | |
| Defendants | ) | |

## PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION

Plaintiffs, Kenny Hill, Michael Hill, Leslie Kelly, Kevin Siggers, and Myron Ward, through their counsel, Knox McLaughlin Gornall & Sennett, P.C., file the following Objections to the U.S. Magistrate Judge's Report and Recommendation dated February 23, 2007:

1. The Report and Recommendation (pp. 7-19) holds that the plaintiffs have failed to produce evidence sufficient to support claims under the Eighth Amendment. Plaintiffs object to this holding on the following bases:

a. Plaintiffs are entitled to an inference that excessive levels of silica dust existed at the UNICOR facility based upon defendants' spoliation of evidence. While this case was pending, but before discovery had opened, and without notice to Plaintiffs, Defendants discontinued manufacturing furniture and related products at the facility and dismantled the facility as a furniture manufacturing facility. As of January, 2006, the facility was converted to a plastics manufacturing plant. As a result, Plaintiffs' industrial hygienist could not conduct an evaluation of the site and the adequacy of its ventilation system. Plaintiffs' expert stated "I have been informed . . . that the UNICOR facility is no longer in operation and that the processing equipment has been transferred to other locations. Thus, I am unable to render an opinion regarding the precise concentrations of airborne contaminants of concern during normal operating conditions." (Report of David R. Williams, p. 2). Because the Defendants did not maintain any systematic testing of air quality at the facility, it was impossible to quantify the level of exposure of any plaintiff.

Further, the only testing conducted regarding the air quality at the UNICOR facility was done by Micorbac, under engagement with the defendants, and by OSHA.

Throughout this case, the Defendants have sought to rely on the results of the OSHA testing to establish that there were no excessive levels of contaminants in the air at the UNICOR facility. While defendants spoliation of the UNICOR facility prevented Plaintiffs' expert from determining the precise concentrations of contaminants present during UNICOR's normal operation, it did not insulate the OSHA report and examination from critical review.  As stated in the report of David R. Williams, OSHA's report does not establish the absence of excessive levels of contaminants in the air at the UNICOR facility.  To the contrary, the OSHA report disclosed a ventilation system that was ill-equipped to prevent the accumulation of contaminants and testing procedures that would not disclose the presents of excessive contaminants.  Thus, the only examination conducted while the UNICOR facility still existed failed to address the key issue in this case.

Thus, Plaintiffs are left to suffer the prejudice of the defendants unilateral, and unannounced action of dismantling the UNICOR facility while this case was pending, but before plaintiffs could begin discovery.  In Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3d Cir. 1994), the Third Circuit explained the spoliation doctrine and its consequences:

> Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Jamie S. Gorelick, Steven Marzen and Lawrence Solum, Destruction of Evidence, § 2.1 (1989). Such evidence permitted an inference, the "spoliation inference," that the destroyed evidence would have been unfavorable to the position of the offending party. As Judge Breyer put it in Nation-wide Check Corp. v. Forest Hills Distributors, Inc., 692 F.2d 214, 218 (1st Cir.1982), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document." As Judge Breyer also noted, the

2

> spoliation inference is also seen as having "prophylactic and punitive effects." Id. The admissibility of spoliation evidence and the propriety of the spoliation inference is well established in most jurisdictions, including Pennsylvania. See e.g., Nation-wide Check Corp., 692 F.2d 214 (1st Cir.1982); Mensch v. Bic Corp., 1992 WL 236965 (E.D.Pa.1992) (citing Pennsylvania cases).

13 F.3d at 78. Defendants should not be able to avail themselves of their own failure to preserve critical evidence as a means to attack the Plaintiffs' case. The Magistrate Judge's failure to grant the Plaintiffs the benefit of the spoliation inference to which they are entitled was error.

Plaintiffs were also unwillingly exposed the significant risks associated with the hazardous levels of contaminants at the UNICOR facility. There is no evidence that Plaintiffs voluntarily accepted these risks. Rather, Plaintiffs took a job in UNICOR and reasonably assumed that the working conditions would not expose them to the risk of severe injury. To argue that Plaintiffs voluntarily accepted these risks is tantamount to arguing that a prisoner who chooses to walk down one of two hallways voluntarily accepts the risk that the hallway he chose may be filled with hazardous contaminants. Choosing to work in a furniture factory is not an expression of one's willingness to expose oneself to high levels of hazardous materials; and the case law on this point is not contrary to this logical conclusion.

In Wooten v. Goord, 2004 WL 816919 (W.D.N.Y. March 25, 2004) aff'd. 2005 WL 387971, 2d Cir. Feb. 17, 2005) (emphasis supplied), which the Magistrate Judge relied upon, the Second Circuit held as follows:

> We need not and do not hold that the voluntary nature of a prison work program necessarily precludes an Eighth Amendment claim based on work conditions. See Bagola v. Kindt, 131 F.3d 632, 645 n. 18 (7th Cir.1997). However, there is no basis for finding "cruel and unusual punishment" in the instant case, where the plaintiffs who challenge their work conditions **are fully aware of the**

3

> **potential health risks stemming from their work conditions, and choose of their own free will to continue working under those conditions, even during litigation.**

Consistent with this holding, other circuit courts have held that "voluntariness" does not preclude an Eighth Amendment claim. See e.g., Bagola, 131 F.3d at 645 n.18 (7th Cir. 1997). The Magistrate Judge's conclusion that the Plaintiffs voluntarily accepted the unknown risks associated with working at the UNICOR facility was error.

      b.      The Defendants were deliberately indifferent to the substantial risk caused by the excessive levels of contaminants in the UNICOR facility. Defendants do not dispute that silica dust is a known carcinogen and a cause of serious respiratory ailments and conditions and other health problems. The ventilation system at FCI McKean's UNICOR facility did not prevent silica dust in significant amounts to become airborne. (See Housler deposition p. 18). As stated above, based on the Defendants actions in destroying the UNICOR facility, Plaintiffs are entitled to an inference that excess of levels of contaminants, including silica dust, existed in the UNICOR facility.

      A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). Further, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling, 509 U.S. at 31. This includes environmental hazards that pose an unreasonable risk of serious damage to future health. Id. at 33-35.

      The Defendants were specifically on notice of such hazards by their personal observation of operations at the facility and by means of the Material Safety Data (MSDS) sheets for Micore Board that were provided to Defendants. Defendant Housler acknowledged that,

4

although the MSDS for Micore Board was available to him, he did not read it until OSHA became involved. (See Housler, pp. 16-17). Despite the content of the MSDS sheets, the only protection available to Plaintiff was a disposable "Do it Best" or "Breathe Easy" dust mask. The Plaintiffs were not required to wear such masks and was provided with no training or instruction regarding the use of the masks. (See Housler deposition p. 20, Ward deposition p. 11). Moreover, the masks were accompanied by the following warning:

> This mask is not suitable for use against toxic or hazardous air contaminants, such as, but not limited to paint spray mists, asbestos, **silica**, cotton or other toxic dusts, fumes, gases and vapors.

Throughout their employment at UNICOR, each Plaintiff was instructed to work in and around areas where Micore mineral fiber boards were being cut, sawed, sanded, machined and otherwise handled by the Plaintiffs and others. These processes produced silica dust as a byproduct. Defendants instructed Plaintiffs and other inmates to clean and clear dust from the floor and machines within the facility both by sweeping the dust with brooms and by mechanically blowing the dust with air hoses. (See Siggers deposition Attached to Defendant's Appendix to Motion for Summary Judgment at Exhibit 35 at pp. 13, 55, 66; and Ward deposition Attached to Defendant's Appendix to Motion for Summary Judgment at Exhibit 33 at p.12). These processes caused the dust to become airborne and ultimately to settle on the Plaintiffs' persons and clothing.

As further evidence of deliberate indifference, the record contains evidence that the Material Safety Data Sheet ("MSDS") maintained by the Defendants with regard to the Micore fiber board was altered by hand, such that, under the section devoted to personal protection, the word "respirator" was marked out and replaced with the word "mask" or "dust" in

5

order to falsely indicate to UNICOR workers that dust masks provided sufficient protection against inhalation of the airborne silica dust and other dangerous manufacturing byproducts that were present at in the UNICOR facility. Standing alone, this alteration of a key safety documents is evidence of the Defendants' knowledge of the dangers to which Plaintiffs were exposed and their deliberate acts of indifference to that danger.

Additionally, Defendants do not dispute that Plaintiffs worked in and around areas where the adhesive commonly knows has Locweld 860/861 was being used. Defendants were also on notice that the use of Locweld 860/861, a contact adhesive, in the UNICOR facility exposed plaintiff and other workers to serious risks and hazards including the risk of fire and health risks associated with the presence of fumes from Locweld 860/861. This fact was plainly apparent from the MSDS for Locweld, yet Defendants took no steps to protect Plaintiffs from these risks and hazards.

Defendants' actions and omissions relative to the dangers and hazards associated with Micore board and Locweld 860/861 were part of an overall pattern of deliberate indifference by defendants to the safety and health of workers at the UNICOR facility, which pattern included *inter alia* (1) allowing the accumulation of flammable vapors in the work area in violation of 29 C.F.R. §1910.106(e)(6)(i); (2) failure to provide appropriate instructions and training regarding chemicals in use at the workplace in violation of 29 C.F.R. §1910.1200(h)(2)(ii) and 29 C.F.R. §1910.1200(h); (3) allowing obstruction of proper airflow and air filtration within certain work areas in violation 29 C.F.R. §1910.107(b)(1); (4) permitting installation of combustible materials within the spray booth of the UNICOR facility in violation of 29 C.F.R. §1910.107(b)(1); (5) failing to include appropriate sprinkler equipment in certain areas of the facility in violation of 29 C.F.R. §1910.107(b)(5)(iv); (6) allowing improper storage and obstructions around the

paint booth of the facility in violation of 29 C.F.R. §1910.107(b)(9); (7) allowing combustible residue from manufacturing to accumulate in work areas in violation of 29 C.F.R. §1910.107(g)(2); (8) failing to provide and/or require use of protective equipment where reasonably necessary for the protection and safety of workers in violation of 29 C.F.R. §1910.132(a); (9) failure to observe required "lock-out/tag-out" procedures for the protection and safety of workers in violation of 29 C.F.R. §1910.147(d)(4)(i); (10) allowing storage of materials in a manner and location that created an unreasonable risk of fire or combustion within the facility in violation of 29 C.F.R. §1910.176(b), 29 C.F.R. §1910.252(a)(2)(vii), and 29 C.F.R. §1910.303 (g)(1)(i); (11) requiring operation of machines and other equipment within the facility that lacked proper guarding or other safety devises reasonably necessary for the protection and safety of workers in violation of 29 C.F.R. §1910.212(a)(1), 29 C.F.R. §1910.212(a)(3)(ii), 29 C.F.R. §1910.213(r)(4), and 29 C.F.R. §1910.119(c)(2)(i); (12) allowing the existence of conditions that unreasonably exposed workers to cave-in hazards while conducting work operations in violation of 29 C.F.R. §1926.651(j)(2); (13) failure to install or place guarding necessary to protect workers from the hazard of impalement in violation of 29 C.F.R. §1926.701(b); (14) failure to install railings necessary to protect workers from fall hazards in violation of 29 C.F.R. §1910.23(c)(1); and (15) failure to provide instruction and training regarding the proper use of respirators in the workplace in violation of 29 C.F.R. §1910.134(k)(6).

    During their employment at the UNICOR facility, Plaintiffs were repeatedly and consistently exposed to silica dust, vitreous fiber, perlite, slag wool, mineral wool, acetone, Toluene, Hexane isomers, N-hexane and other dangerous materials through aspiration, inhalation and direct contact with Plaintiff's skin, lungs, sinuses and eyes. As a result of the dangerous

7

conditions that were permitted to exist at the UNICOR facility, Plaintiffs sustained personal injuries, including chronic respiratory problems, sinusitis, irritation and damage to their lungs, sinuses, eyes and skin and sensitization to materials.  In addition, Plaintiffs have been placed at an increased risk of developing future diseases and health problems, including, but not limited to, cancer, Silicosis, Pneumoconiosis, emphysema, asthma, mycobacterium tuberculosis, nervous system disturbances and peripheral neuropathy.   This risk, caused by the objectively serious levels of contaminants present in the UNICOR facility and the defendants deliberate indifference to the dangers associated with those contaminants, is sufficient to support Plaintiffs' Eight Amendment claim.  See Helling, 509 U.S. at 33 (holding that risk of serious damage to future health is sufficient to state a cause of action under the Eight Amendment).

   The Magistrate Judge's failure to find that Plaintiff's evidence was sufficient to show deliberate indifference was error.

WHEREFORE, for the reasons stated above, Plaintiffs respectfully request that the Court grant Plaintiff's objections to the Magistrate Judge's Report and Recommendation and deny Defendants' Motion.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

BY: /s/ Richard A. Lanzillo, Esq.
  Richard A. Lanzillo, Esquire
  PA53811
  Neal R. Devlin
  PA89223
  Bryan G. Baumann
  PA95046
  120 West Tenth Street
  Erie, PA  16501
  Telephone (814) 459-2800
  Facsimile (814) 453-4530
  Email rlanzillo@kmgslaw.com

# 716914