IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL HILL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 03-323E<br><br>JUDGE McLAUGHLIN<br>MAGISTRATE JUDGE BAXTER<br><br>(Electronic Filing) |

**DEFENDANT'S PRETRIAL STATEMENT**

AND NOW, come the Defendant, United States of America, by and through its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, Michael C. Colville, Assistant United States Attorney for said district, and Douglas S. Goldring, Assistant General Counsel for Federal Prison Industries, Inc., and files the following Pretrial Statement.

**I.     INTRODUCTION**

Plaintiff, Michael Hill, a Federal inmate, has brought a claim pursuant to the Federal Tort Claims Act (hereinafter "FTCA") 28 U.S.C. §2671 et seq.  In this regard, Plaintiff claims that medical staff at FCI McKean failed to timely treat a medicated filling in his mouth.  In his FTCA claim, Plaintiff has sought a sum certain of $10,000.00 in damages.

**II.    FACTUAL BACKGROUND**

Plaintiff is Michael Hill, Register Number 40428-133, a Federal inmate currently in the custody of the United States Marshals Service pursuant to a Write of Habeas Corpus Ad Testificandum.  To the best of the Defendant's knowledge, Plaintiff is currently being housed in the Erie County Jail awaiting trial in this case.  He was convicted in the District of Columbia Superior

Court of Manslaughter While Armed, and sentenced to 21 years in prison on May 1, 1994. His projected release date is January 16, 2014, via Mandatory Parole.

When inmate Hill arrived at FCI McKean on approximately October 18, 2001, he had a medicated (temporary) filing in tooth # 13, which had been applied in January 2001 at the United States Penitentiary in Lompoc, California ("USP Lompoc"). Upon arrival at FCI McKean, all inmates – including Plaintiff – are required to participate in an Admission and Orientation Seminar regarding the policies and practices of the institution. Part of this orientation is conducted by representatives of the Health Services Department, and includes procedures for obtaining dental care. As part of the presentation, inmates are informed about the difference between routine and emergency medical treatment, and the procedures for obtaining each type of care. Additionally, each inmate receives an Inmate Information Handbook, which further explains the procedures for seeking medical care. Specifically, the Handbook explains that if an inmate has an immediate medical problem that requires urgent care, he <u>must</u> report to the Health Services Unit and indicate that he requires urgent care. At his deposition, Plaintiff clearly articulated his knowledge of the emergency care procedures, both now, and at all times relevant to this action.

Plaintiff did not report any dental concerns to staff upon his arrival at FCI McKean. Nothing in his dental chart, and nothing communicated by inmate Hill orally, indicated that the tooth was causing any discomfort, or otherwise required immediate attention.

The first indication that he required dental care at all was on December 3, 2001, several months after his arrival at FCI McKean. At that time, Plaintiff, for the first time, submitted a request to staff, noting that he had two cavities which would need to be filled, one of which already had a medicated filling which he wished to have replaced. He also requested a prophylactic cleaning at

that time.  At that time, he did <u>not</u> indicate to Dr. Collins that he was experiencing any pain or discomfort.  Plaintiff was placed on the waiting list for routine dental care on December 4, 2001.

Plaintiff did not mention any concerns relating to his cavities again for four months.  Not until April 8, 2002 did Plaintiff submit a second request for treatment.  At that time, he noted that he had two cavities which would need to be filled, one of which already had a medicated filling which he wished to have replaced.  He also noted his belief that the cavities were getting worse.  Again, he did not indicate that the cavities were causing him any pain or discomfort, or that he otherwise required an immediate evaluation

In response to his April 8 request, Plaintiff was told that he was number 184 on the dental care waiting list. However, he was also instructed to "come right to sick call" if he developed "any pain problems."  Plaintiff did not come to dental sick call at any time prior to November 27, 2002.  Specifically, at that deposition of Dr. Collins, the following exchange took place:

> Q: Did Mr. Hill ever come to you prior to November 27, 2002 and tell you that he was having pain with Tooth No. 13?
>
> A: No, he did not.
>
> Q: Did you ever see Mr. Hill in a sick call visit or open house prior to November 27, 2002?
>
> A: I did not see him in a sick call visit at all, and at that time, we had not really quite started open house – the institution open house.  So, I did not see him at all.

If he had done so, and complained of increased pain associated with his cavities, then his tooth pain would have been treated as urgent, and appropriate treatment would have been provided.

Plaintiff next raised his dental concerns to staff in connection with the administrative remedy process.  At that time, he was again told that if the medicated filling came out, or if he was in pain,

3

to "please complete a sick call request." However, Plaintiff did not contact anyone in Health Services to complain about any pain in his tooth, or otherwise seek to be seen at dental sick call.

The first time Plaintiff attempted to be seen as a result of any pain in his tooth was on November 27, 2002, when Dr. Collins examined his tooth at dental sick call. At that time, Plaintiff reported that his pain level was a "4" on the pain index, a scale of 1-10; 10 being the worst. A pain level of 4 would indicate "mild to moderate discomfort, not a situation for emergency care." Based upon that examination, Dr. Collins assessed Plaintiff with irreversible pulpitis of tooth #13, secondary to former deep caries. Dr. Collins advised Plaintiff that because the condition was painful and irreversible (the tooth could not be salvaged), the tooth should be extracted.

Upon Plaintiff's consent, Dr. Collins immediately conducted a successful extraction tooth #13. Although he may have asked questions about the extraction, Plaintiff did not voice any objections to the procedure.

**III.   WITNESSES (Liability/Damages)**

    1. Dr. William K. Collins

    2. Dr. John Bush (report attached)

    3. Denise Tanner

    4. Tina Pertuzzi

    5. Defendant reserves the right to call witnesses listed in Plaintiff's Pretrial Statement

**IV.  EXHIBITS**

    a. Michael Hill's medical and dental records

    b. Michael Hill's dental x-rays

    c. Bureau of Prisons Dental Policy

    d. Defendant reserves the right to use the exhibits listed in Plaintiff's Pretrial Statement.

Respectfully Submitted,

MARY BETH BUCHANAN
United States Attorney


/s/ Michael C. Colville
MICHAEL C. COLVILLE
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7337
PA ID No. 56668

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2007, a copy of the within **Defendant's Pretrial Statement** was served either electronically or by first-class United States mail, upon the following:

Richard A. Lanzillo, Esquire
Knox McLaughlin Gornall & Sennett, P.C.
120 West Tenth Street
Erie, PA 16501-1461


/s/ Michael C. Colville
MICHAEL C. COLVILLE
Assistant U.S. Attorney