IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL HILL, et al.,            )
                Plaintiffs       )    CIVIL ACTION NO. 03-323 ERIE
                                 )    CIVIL ACTION NO. 03-355 ERIE
        v.                       )    CIVIL ACTION NO. 03-368 ERIE
                                 )    CIVIL ACTION NO. 04-11  ERIE
JOHN LAMANNA, et al.,            )    CIVIL ACTION NO. 05-160 ERIE
                Defendants       )


<u>HEARING ON MOTION TO MODIFY CASE MANAGEMENT ORDER</u>


Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge, and

the HONORABLE SUSAN PARADISE BAXTER, Chief

U.S. Magistrate Judge, in Judge's Chambers,

U.S. Courthouse, Erie, Pennsylvania, on

Tuesday, November 14, 2006.


<u>APPEARANCES</u>:

RICHARD A. LANZILLO, Esquire, and NEAL DEVLIN, Esquire, (via Phone), appearing on behalf of the Plaintiffs.

MICHAEL COLVILLE, Assistant United States Attorney; PHILIP O'CONNOR, Assitant United States Attorney; and DOUGLAS GOLDRING, Assistant General BOP Counsel, (via Phone), appearing on behalf of the Defendants.


Ronald J. Bench, RMR - Official Court Reporter

P R O C E E D I N G S

        (Whereupon, the proceedings began at 11:30 a.m., on
Tuesday, November 14, 2006, in Judge's Chambers.)


        JUDGE BAXTER:  Good morning.
        MR. COLVILLE:  Good morning, your Honor.
        MR. LANZILLO:  Good morning, your Honor.
        JUDGE BAXTER:  I'm going to call the cases.  We have
Civil Action No. 03-323 Erie.  No. 03-355 Erie.  No. 03-368
Erie.  No. 04-11 Erie, and No. 05-160 Erie.  It is a series of
cases that we refer in the office to as Hill v. Lamanna, et
al., in regards to the silica dust issue at FCI McKean.  On the
phone we have Mr. Lanzillo, are you there?
        MR. LANZILLO:  I am, your Honor.
        JUDGE BAXTER:  Mr. Colville, are you there?
        MR. COLVILLE:  Yes, your Honor.
        JUDGE BAXTER:  And we have others as well?
        MR. COLVILLE:  Yes, Phil O'Conner from our office.
        MR. LANZILLO:  Your Honor, we have Neal Devlin in my
office, as well as our paralegal, Lori Watson, who helps us
with the scheduling here at the law firm.
        JUDGE BAXTER:  All right.  I know that the way
usually it works is you do a consented motion for an extension
of time and the judge signs it, it pops up on your e-mail and

1   everything is right with the world.  But in this case we really

2   have a problem with time.  And you all know about that.  I also

3   know that you're busy trying to get all this done.  I went and

4   I talked to Judge McLaughlin this morning.  And we tried to

5   come up with a plan that will work for everybody.  However, as

6   you know, it's my job to make sure the plan works for him

7   first.  And here we are.  We are going to allow discovery to

8   continue until January 3rd.  The news that might be most

9   discomforting to you is that dispositive motions will be due

10  that day as well.  And we're only going to give you until

11  January 17th to respond to dispositive motions.  The problem is

12  we have to get together, with the way the juries are planned,

13  if these were only FTCA cases, that wouldn't be a big issue,

14  but we have to go with the trial terms.  Then the cases, if

15  they survive or what survives, however, that works, will be

16  part of the March 12th trial term.  And I fear Judge McLaughlin

17  was adamant about that.  So I could rule differently, but once

18  it was in front of him, that judge change.  It just as easily

19  could have gone to him to work this out as best we could.  All

20  right.  As far as the dental issue on Michael Hill, the judge

21  wants to carve that out separately.  And here's how that will

22  work.  Discovery will close on the 1st of December, that will

23  not change as to the dental issue.  The trial will be scheduled

24  in this case, if it survives summary judgment, and the trial

25  has already been set on his schedule for February 5th and 6th.

1   So don't have summary judgment changes in that case, we'll keep

2   those the same dates that they were.  Since the discovery

3   closes the same.  Now, I wanted to get that all out of the way,

4   now you can start talking for a minute and start telling me why

5   I'm killing you and we'll see what we can do.  Then, again, if

6   it's okay with you, I'm a happy person and we'll just adjourn.

7            MR. LANZILLO:  I don't know whether to go first or

8   not, this is Rich Lanzillo, judge.  Obviously, we will live

9   with whatever schedule the court issues.  That will be an

10  exceptionally challenging schedule to make work, as far as on

11  our end.  We are in the process of scheduling the depositions

12  of Mr. Lamanna, Mr. Housler, Mr. Collins, Rob Bevevino, Marty

13  Sapko, Deborah Forsyth and David English.  And there may be

14  some additional discovery that falls away from those

15  depositions or rises out of those depositions.  I know that Mr.

16  Colville intends to obtain independent medical examinations or

17  seek IMEs for various defendants as well.  I guess the only

18  concern is on the dental claim -- is that we would have to ask

19  Mr. Colville's indulgence in helping us to arrange the Collins

20  deposition very promptly, and there would be at least one other

21  one we would have to schedule on an expedited basis.

22            JUDGE BAXTER:  Is it my recollection that is only a

23  Bivens claim and not a FTCA claim?

24            MR. LANZILLO:  That would be an FTCA claim as well.

25            JUDGE BAXTER:  So it's both, all right.

1    MR. LANZILLO:  Judge, we do have some discovery

2  outstanding where we're asking, requesting identification of a

3  couple of the additional employees of the prison system

4  regarding the dental claims.  We have yet to receive a

5  response, answer responses regarding the identity of those

6  individuals, and then promptly schedule their depositions as

7  well.  I would have to work with defense counsel to try to

8  conduct and include that discovery, also, on a very expedited

9  basis.

10   JUDGE BAXTER:  I understand.  But it's also three

11  years past, and it has taken a long time, I know it took a long

12  time, Mr. Lanzillo, for you get on board.  But a lot of this

13  stuff could have been going before.  Also, I wanted to remind

14  both sides that summary judgment here has to be prudent.  Don't

15  give me stuff that is a factual issue or that you know is in

16  dispute.  I mean we took care of motions for summary judgment

17  ahead of our typical schedule.  We moved that along quickly.

18  And I know you're all busy as well.  We need to get this

19  discovery done.  And I thought I was very clear about that when

20  we set the schedule.  Realizing that it's difficult, realizing

21  these people are all over the place in federal prisons

22  elsewhere, we are trying to give you some more time.  But I

23  don't even think the circuit will be that giving, as it's been

24  three years.

25   MR. LANZILLO:  We will make it work, judge.

1          JUDGE BAXTER:  Mr. Colville, you're very quiet

2   over there?

3          MR. COLVILLE:  I don't know where to begin, your

4   Honor.  With regard to the three-year period, let me start by

5   saying Kelly and Siggers, I think it took them a year to serve

6   us.  We were prompt in filing our motion for summary judgment.

7   I don't think there's anything that the government could have

8   done in the case to make us to get to where we are now any

9   faster.  That said, and I appreciate that the court doesn't

10  want this three-year case to be lingering for policy reasons

11  that I think are now in existence with the court in the Western

12  District, but I think given the magnitude of the facts, these

13  individuals are being, these people are being sued in their

14  individual capacities, they aren't suing the United States

15  government or a representative, they're suing individuals.

16         JUDGE BAXTER:  On the Bivens?

17         MR. COLVILLE:  That's all this case is except for

18  one claim regarding the dental, which has a Bivens aspect to it

19  as well.  While I certainly appreciate and understand and will

20  obviously abide by whatever the court orders about the timing

21  of this, given what I know about the case thus far and the

22  logistics involved with getting depositions of inmates, who are

23  scattered all over the country, getting copies of the medical

24  records and the dental records and miscellaneous workplace

25  records, and getting them to opposing counsel, then in turn

1   hiring an industrial hygienist and medical experts who need to
2   review them, in order that they may review the records so as to
3   tell me whether or not there is a legitimate issue for the
4   court to consider again, with regard to a motion for summary
5   judgment.  Let me stop here by saying I will not file a motion
6   for summary judgment on a trivial issue to make this thing any
7   longer.  I think I indicated that previously to the court at a
8   status conference.  But I believe that the key to our defense
9   and the key possibly to a motion for summary judgment, which
10  may resolve this case without trial, is testimony that the
11  court may be able to get from an industrial hygienist and a
12  medical expert, who will say one of two things or maybe both.
13  One, this was not a hazardous environment condition at the
14  UNICOR factory.  If that's the case, and if there is no
15  evidence to the contrary which overwhelms that testimony,
16  plaintiff can't meet their burden of proof and the case goes
17  away.  Similarly, if the medical experts, after having
18  conducted an independent medical examination of these patients,
19  which I believe is a requirement in the case, I don't think the
20  case can go forward without expert testimony from the
21  plaintiffs, suggesting or stating that there is a causal
22  relationship.  If my expert comes in and says there is no
23  medical injury which can in any way be related to the cutting
24  of the Micore board or Locweld, then likewise the plaintiffs'
25  case fails and it doesn't go to trial.  I have worked as fast

1    and furious as I can in getting all of this done, and had a

2    meeting yesterday with my pulmonologist, Dr. Gregory Fino.  I'm

3    sitting here looking at my computer screen, where I have

4    prepared a motion, which I intend to file today or soon

5    thereafter, asking the court to direct the Marshals to have

6    these individuals transported to St. Clair Hospital for an

7    independent medical examination.  I have dates which my doctor

8    is available to do that.  The dates are December 21st, January

9    2nd, January 3rd, January 8th and January 16th.  All of which

10   is laid out in my motion that the court will then be receiving.

11   The court may very well deny it and tell me I don't have enough

12   time to do that.

13          JUDGE BAXTER:  All right.  First of all, there's a

14   whole bunch of things you said.

15          MR. COLVILLE:  I still have some more.

16          JUDGE BAXTER:  Let me talk about these while they're

17   in my head.  First of all, a new summary judgment standard is

18   being proffered there, it's not whether or not there is

19   evidence that overwhelms your evidence on expert testimony,

20   it's whether or not there is evidence that makes it a question

21   of fact in dispute.

22          MR. COLVILLE:  That's correct.

23          JUDGE BAXTER:  Secondly --

24          MR. COLVILLE:  Pardon me for interrupting the court,

25   my point is with regard to medical evidence, if I proffer a

1  medical opinion, an expert medical opinion, I believe that the

2  standard requires then for the plaintiffs to proffer a medical

3  expert opinion saying this is an injury which was caused by the

4  Micore boards or Locweld.  If they're unable to do that, the

5  case goes away.  And I don't think they're going to be able to

6  get a medical expert to say that.  Now, I may be wrong or

7  proven wrong about that.  But in defending these individuals, I

8  have to do this.

9       JUDGE BAXTER:  And you're giving me a causation

10  element in deliberate indifference.

11       MR. COLVILLE:  No, this is a serious medical injury

12  element --

13       JUDGE BAXTER:  But the causation is an interesting

14  comment.

15       MR. COLVILLE:  Maybe I misspoke, your Honor.  But

16  they need to show an injury.  Implicit in that or logically

17  from that is the Micore board or the Locweld is what caused the

18  injury.

19       JUDGE BAXTER:  All right.

20       MR. COLVILLE:  I guess my point is, your Honor --

21       JUDGE BAXTER:  Let me also ask am I missing

22  something, I thought these were FTCA cases, all of the cases?

23       MR. COLVILLE:  No, they're only Bivens claims.  The

24  only work claim that is out there presently is a dental claim.

25  As far as the FTCA claim, my understanding is the plaintiffs

1    are going to withdraw that with regard to three of the

2    defendants, I don't have their names in front of me.  Mr.

3    Lanzillo can talk to that.  And, again, I believe that's the

4    cases that have been filed in '05.

5        MR. LANZILLO:  There is a newer case, we had to do

6    our due diligence on exhaustion.

7        MR. COLVILLE:  Again, your Honor, these are

8    individuals being sued in their individual capacity.  If this

9    was just against the government, I'd take it and bite my

10   tongue.  But I have to tell you --

11       JUDGE BAXTER:  I understand.  If you guys had

12   consented on my jurisdiction, I don't give a hoot about the

13   three-year list.  That was your decision, but I have to go by

14   the district judge.

15       MR. COLVILLE:  Believe me, your Honor, I think we're

16   all sort of here -- does the court want to try a case that

17   hasn't been flushed out where proper defenses aren't given to

18   individuals being sued in their individual capacity.  Which if

19   we force this, just for forcing sake because it's three years,

20   that's what we will have done.

21       JUDGE BAXTER:  I know the judge also feels like

22   cases shouldn't be held in abeyance during summary judgment.

23       MR. COLVILLE:  Is the court suggesting we should of

24   in this case have had independent medical examinations of these

25   federal inmates, who are scattered throughout the FCI prison

1　system and have them examined, conducted discovery, when what

2　might have happened is that a motion for summary judgment would

3　resolve the issue, and not cost any more money to either the

4　plaintiffs or the defendants.

5　　　　　JUDGE BAXTER:　What did you do in September or

6　October?

7　　　　　MR. COLVILLE:　In September or October we took five

8　depositions via television.　I went to Erie for two days.　I

9　went to visit the prison to meet with my witnesses.　I had

10　copies of numerous medical records and prison factory records

11　copied and put on CDs and provided to opposing counsel.　And,

12　in addition, I've submitted my own discovery to plaintiffs'

13　counsel, which has yet to be responded to.　I'm not even sure

14　if it's out of time or not.　But the point being that -- by the

15　way, I have been in contact with OSHA, I have to get

16　authorization from them to get the records from OSHA.　I have

17　engaged a pulmonologist.　I have met with him, I have discussed

18　the matter.　I have copied all the documents and provided them

19　to him.　I met with him yesterday.　I'm in the process of

20　organizing the independent medical examinations, which I'm

21　hoping the court will help facilitate, because I can't get any

22　prisoners from South Carolina or Virginia or West Virginia, to

23　my doctor's office without two Marshals accompanying them.

24　First flying them to Pittsburgh, then accompanying them out to

25　St. Clair Hospital, after having an examination.　I don't think

1    there is anything wrong with these people, that is my position.

2    I have to confirm that. And that doesn't even take into

3    account that I have to have an industrial hygienist review all

4    the reports and be prepared to testify.

5         JUDGE BAXTER: All right, send me a motion, I'll get

6    these people there.

7         MR. COLVILLE: I prepared it this morning. I met

8    with the doctor yesterday, he gave me I think eight dates. And

9    what I've done is I pulled five of the earlier dates that he

10   gave me, and I've asked the court to order the Marshal to

11   coordinate with me and the Bureau of Prisons the transportation

12   of these inmates to Pittsburgh, in particular, St. Clair

13   Hospital, on five days to have them examined, X-rays taken and

14   pulmonary testing.

15        JUDGE BAXTER: That's such a problem, I know it

16   takes six weeks to get them anywhere in the federal system, to

17   get them to my court for a hearing.

18        MR. COLVILLE: Putting it that way again, we're not

19   dealing with the ordinary cases. And we're not dealing with an

20   ordinary case in the sense there are prisoners involved and two

21   individuals defendants who do not work for the federal

22   government.

23        JUDGE BAXTER: I understand that always the case in

24   Bivens cases, that's not what throws me, as much as it does, I

25   mean having them come into one place for medical examinations

13

1    is going to be a nightmare.  Can you hold for one second.

2            MR. COLVILLE:  Sure.

3            JUDGE BAXTER:  I'm going to put this on mute.

4            (Off the record.)

5            JUDGE BAXTER:  I just want you to know that I just

6    asked Judge McLaughlin to come over to my chambers now.  I gave

7    him a thumbnail of what you've asked, some of the problems that

8    you're encountering.  Is everyone still on?

9            MR. COLVILLE:  Yes.  In addition, I brought Doug

10   Goldring in, he's counsel for UNICOR.

11           JUDGE McLAUGHLIN:  Mr. Colville?

12           MR. COLVILLE:  Yes, your Honor, good morning.

13           JUDGE McLAUGHLIN:  Who else is on the line?

14           MR. COLVILLE:  Phil O'Connor is in the office as

15   well, your Honor.

16           MR. LANZILLO:  Your Honor, Rich Lanzillo and Neal

17   Devlin.

18           MR. GOLDRING:  This is Doug Goldring, your Honor.

19           JUDGE McLAUGHLIN:  This is in no particular order of

20   importance but, first of all, I understand, I'm talking to Mr.

21   Colville, you have a physician who has to conduct a medical

22   examination on each of these plaintiffs, is that right?

23           MR. COLVILLE:  That's right, your Honor.

24           JUDGE McLAUGHLIN:  That would occur where, in

25   Pittsburgh?

1    MR. COLVILLE:  Yes, your Honor.

2    JUDGE McLAUGHLIN:  Has this fellow given you a date

3  or dates upon which these examinations are supposed to take

4  place?

5    MR. COLVILLE:  Yes, your Honor, he's given multiple

6  dates.  As I told Magistrate Baxter, I met with him, he gave us

7  dates that he's available.  Half a dozen or maybe eight dates.

8    JUDGE McLAUGHLIN:  In January, December?

9    MR. COLVILLE:  December 21st.  January 2nd, 3rd,

10  4th, 8th, 16th, 17th, 18th and 22nd.  I believe I picked the

11  earliest of all those dates.  I put them in this motion which I

12  prepared this morning after I met with him last night.  Where

13  I'm asking the court to direct the Marshals to coordinate with

14  the Bureau of Prisons and myself in transporting these inmates

15  that are scattered in various FCI facilities.

16    JUDGE McLAUGHLIN:  They're all in different prisons?

17    MR. COLVILLE:  Yes, your Honor.  I would have them

18  brought here on those individual dates, to be subjected to, to

19  submit to a physical examination, have chest X-rays done and

20  pulmonary function testing done.  Some of which I identify in

21  the motion.

22    JUDGE McLAUGHLIN:  Will each inmate be examined on a

23  separate day or will they do it on one day?

24    MR. COLVILLE:  What I've done is I've done them on

25  separate days, only because the physician indicated to me that

1   the hospital would need one guard with one prisoner.  I've done

2   some preliminary work on their end and in speaking to the

3   Marshal's wife, with all due candor, and she's informed me --

4             JUDGE McLAUGHLIN:  Speaking with who?

5             MR. COLVILLE:  The Marshal's wife works in our

6   office, I spoke to her.  Again, doing this with all candor,

7   your Honor.  She indicated to me the office policy is there

8   have to be two guards.  Having five inmates on one day at one

9   hospital, I don't think it would work.  I think it would work

10  just as smoothly having one a day.  Just to give you a heads

11  up.  Two of the individuals are at the same facility, I have

12  scheduled them on back to back days.  I presume they could be

13  housed here, one could go on one day and one could go the other

14  day, the following day or whatever the prison wants.

15            JUDGE McLAUGHLIN:  Here's my question.  Assuming you

16  get them all done in early to mid January, all right, and the

17  doctor expedites, turns around the reports, and it strikes me

18  he's either going to see something or he's not.  It would be

19  relatively a report on either development.  That having been

20  said, my further understanding is if you get the report that

21  you believe you're going to get, which you may get, which is

22  that the doctor doesn't see any injury, then that in part is

23  going to form the basis for a summary judgment motion, is that

24  right?

25            MR. COLVILLE:  I think so, your Honor.  I think it's

1 an essential element of the plaintiffs' case. Without an

2 injury, the case shouldn't be able to go forward.

3       JUDGE McLAUGHLIN: Here, without waying in on one

4 side or the other on that because I will get that briefed up

5 and we'll take a look at it. If that's accomplished, if you

6 can accomplish all that, why can't this case continue to move

7 on the same inexorable track toward a late March, maybe the

8 last week of March trial date with me?

9       MR. COLVILLE: We didn't discuss that, your Honor.

10 We were going with --

11       JUDGE McLAUGHLIN: I don't have a problem with you

12 getting these people in and that motion being granted.

13 Incidentally, have you checked, sometimes for reasons that are

14 beyond the Marshal's control, it's very time consuming, it

15 takes a lot of time to get prisoners in from the four-corners

16 of the earth. Have you talked to anybody about the anticipated

17 delay on this?

18       MR. COLVILLE: Your Honor, I have not. What I've

19 done -- without belaboring it, since we last met we have been

20 getting volumes of documents. I met with my expert for the

21 first time face-to-face yesterday go get the earliest dates he

22 could give independent examination dates. This morning I had

23 begun working on a motion to be the intermediary of the

24 Marshal. I don't know what to expect. I'm hoping for the

25 best, I'm crossing my fingers, quite frankly. Rather than just

1  going through the Marshal directly, I thought by having an

2  order of the court --

3          JUDGE McLAUGHLIN:  Instead of going through the

4  Marshal or the Marshal's wife?

5          MR. COLVILLE:  That was just in passing here in the

6  office.

7          JUDGE McLAUGHLIN:  Get the motion in so we can get

8  those people writted and moving.  Let me ask Mr. Lanzillo, are

9  you wrapping up your discovery?

10          MR. LANZILLO:  Your Honor, we have some personnel

11  from the prison system that are no longer employees.  Mr.

12  Colville and Mr. Goldring are cooperating in locating those

13  individuals and making them available.

14          JUDGE McLAUGHLIN:  Has everybody been doing what you

15  have been doing with the thought in the back of your head that

16  barring a resolution of this case by settlement or otherwise,

17  you're looking at a late March trial term, has that been on the

18  radar?

19          MR. COLVILLE:  It has been on my radar, your Honor.

20  I mean, I'm not happy about it, I mean I'm stuck.

21          JUDGE McLAUGHLIN:  Let's go off the record here for

22  a second.

23          (Discussion held off the record.)

24          JUDGE McLAUGHLIN:  Back on the record here.  So

25  that's the bottom line.  I will leave it to Judge Baxter here,

1   you can tinker with your motion for summary judgment dates, in

2   light of the anticipated medical exams.  One way or the other

3   this case is going to go then.  Now, I also understand, I want

4   to make sure this is correct, that the FTCA claims are being

5   abandoned, is that right?

6           MR. LANZILLO:  There's one remaining FTCA claim,

7   your Honor.  All others have fallen away.

8           JUDGE McLAUGHLIN:  What is the remaining FTCA claim?

9           MR. LANZILLO:  The dental claim.

10          MR. DEVLIN:  Your Honor, Neal Devlin.  I believe the

11  vast majority of the FTCA claims are gone for a failure to

12  exhaust administrative remedies.

13          JUDGE McLAUGHLIN:  Were they dismissed by the

14  magistrate judge or were they voluntary dismissed, what

15  happened?

16          MR. DEVLIN:  I believe most of them were dismissed

17  through a motion for summary judgment or motions for dismissal.

18  It may be three individuals, three individual defendants who

19  had retaliation claims that, I believe the court didn't dismiss

20  them, reserved judgment, said let's see what comes out of

21  discovery.  We're pursuing that in discovery, we've been in

22  contact obviously with -- we've indicated to them if nothing

23  comes of it, we will voluntary withdraw all claims against --

24          JUDGE BAXTER:  A retaliation claim is not part of

25  the amended complaint.

19

1           MR. DEVLIN:  Except for the dental claim, correct,

2  your Honor.

3           JUDGE BAXTER:  I believe that's right, they were

4  abandoned?

5           MR. DEVLIN:  They were, your Honor.  Yes, your

6  Honor.

7           JUDGE BAXTER:  They're not involved at all?

8           MR. DEVLIN:  Correct.

9           MR. COLVILLE:  We have three named defendants, three

10  named defendants are lingering out there.  It's more a matter

11  of housekeeping.

12           JUDGE McLAUGHLIN:  Let me just ask plaintiffs'

13  counsel, is there a remaining FTCA claim that you continue to

14  litigate?

15           MR. LANZILLO:  Yes, your Honor, that would the

16  dental claim only.

17           JUDGE McLAUGHLIN:  Is there a deliberate

18  indifference claim as part of that case?

19           MR. LANZILLO:  Yes, your Honor.

20           JUDGE McLAUGHLIN:  Let's talk a little bit about

21  that dental case then.

22           JUDGE BAXTER:  We have the dates scheduling that for

23  trial.  We scheduled that February 5th and 6th.

24           MR. COLVILLE:  Both on the _Bivens_ and the tort

25  claim?

1          JUDGE BAXTER:  Yes.

2          JUDGE McLAUGHLIN:  So what I have is a jury trial

3    and a non-jury trial at the same time?

4          MR. COLVILLE:  Correct, your Honor.

5          JUDGE McLAUGHLIN:  We'll talk more about that later.

6    But for present purposes I just wanted to pop in and get a

7    quick overview of where we're going here.

8          MR. COLVILLE:  Your Honor, pardon me for

9    interrupting, this is Mike Colville.  With regard to the dental

10   claim, we can talk about it later, that means we're still on

11   for trial February 5th and 6th -- because, as the court may

12   know, I'm involved in a couple other trials in your courtroom

13   as well right around there?

14         JUDGE McLAUGHLIN:  Do you mean to tell me, Mr.

15   Colville, this isn't the only case you're working on?

16         MR. COLVILLE:  I didn't mean to sound like I was

17   crying, your Honor.

18         JUDGE McLAUGHLIN:  I didn't take it that way.  I can

19   tell you this isn't the only case that I'm working on, either.

20   The dental case, what's the essence of that dental claim?

21         MR. LANZILLO:  Failure to treat, your Honor.  Just

22   to make sure we're all on the same page with respect to that

23   case, that is also a silica dust case.  So you would be looking

24   at essentially a deliberate indifference claim and the FTCA

25   claim on that.  You would be looking at essentially splitting

1    that case in two.

2           JUDGE McLAUGHLIN:  Isn't it anticipated that all of

3    the silica dust cases are going to be tried at the same time --

4    why couldn't I try this guy's silica dust case along with all

5    the other silica dust cases, and then keep the dental claim

6    right there as well?

7           MR. COLVILLE:  You could do that, your Honor.  If

8    you're asking my opinion, again, Mike Colville.  That would be

9    my preference.  Obviously, to the extent it is a separate

10   claim, we will look at it separately on the merits to see if

11   it's worthy of settlement or otherwise.

12          JUDGE McLAUGHLIN:  I don't see any point in making

13   people try more cases than they have to.  And so you know, the

14   February 5th and 6th dates, forget about it.

15          MR. COLIVLLE:  Thank you, that's sort of where I was

16   going.

17          JUDGE McLAUGHLIN:  We're going to try all these

18   cases at the end of March.  Now, how long is it going to take

19   on all of these cases to get them all done?

20          MR. COLVILLE:  Mike Colville again.  I would tell

21   you what I would anticipate as far as who has to be called.  My

22   medical expert, my industrial hygienist.  My dental expert.

23          JUDGE McLAUGHLIN:  This is assuming the cases are

24   still around, obviously, but go ahead.

25          MR. COLVILLE:  Correct.  I intend on calling the

1   OSHA representatives who did the inspection.  Obviously, the

2   plaintiffs.  All of the defendants.  And there's probably about

3   three or four witnesses who are either foremen or supervisors

4   of the plaintiffs.  That in a nutshell is the essence of the

5   defense.  That's not to rule out there might be one or two

6   others.

7           JUDGE McLAUGHLIN:  What about the plaintiffs?

8           MR. LANZILLO:  Your Honor, largely a duplication of

9   what you just heard from Mr. Colville.  We will have our own

10  medical expert.  Our own industrial hygienist.  The plaintiffs,

11  perhaps some of the other prisoners as witnesses as well.

12          JUDGE McLAUGHLIN:  I know you don't have a crystal

13  ball, between the two of you, how many trials days do I need to

14  set aside for this trial?

15          MR. COLVILLE:  Sounds like two weeks to me.

16          MR. LANZILLO:  Yes.

17          JUDGE McLAUGHLIN:  Does to me, too.

18          JUDGE McLAUGHLIN:  Well, I'm before I leave, has my

19  Deputy Clerk given you a specific trial date for the silica

20  cases yet?

21          MR. COLVILLE:  No, your Honor.

22          JUDGE McLAUGHLIN:  It will be sometime around March

23  12th or thereabouts.  Let's go off the record here.

24          (Off the record.)

25          (Whereupon, Judge McLaughlin leaves Chambers.)

1          JUDGE BAXTER:  How many prisoners do you need to

2    bring up?

3          MR. COLVILLE:  Five, your Honor.

4          JUDGE BAXTER:  Are you planning to do their

5    depositions when they get here?

6          MR. COLVILLE:  We've already done their depositions.

7          JUDGE BAXTER:  Have we found Mr. Lamanna?

8          MR. LANZILLO:  Yes, your Honor.

9          JUDGE BAXTER:  Have you done Dr. Collins yet?

10          MR. LANZILLO:  Not yet, your Honor, we have

11    requested dates, I think we proposed some for all of the

12    remaining defendants, remaining defendant depositions.  We have

13    received all the medical records and other information we

14    requested pursuant to our written discovery.  Which I think is

15    what we needed to get our medical review done.  And I don't

16    know what defense counsel's availability is like in the next

17    few weeks here, as far as getting the rest of these depositions

18    completed.  I think we have an agreement that we will conduct

19    them all by video link depositions.

20          MR. COLVILLE:  I'll do them any way you want.

21          JUDGE BAXTER:  Mr. Lanzillo, do I understand you

22    haven't responded to some written discovery?

23          MR. LANZILLO:  I heard that comment, that took me by

24    surprise, too.  If we have written discovery that's owing, I

25    apologize, but --

24

MR. COLVILLE:  I was not bringing it up to point any fingers, just to note that we had some discovery out.  I think merely it's a request for documents.  What comes to mind, what I remember is asking for medical records that pre-exists prior to these plaintiffs going to prison, to see what their prior medical histories were.

MR. LANZILLO:  Mike, I don't have any recollection of that.  When did you send that?

MR. COLVILLE:  I'll talk to you afterwards.

JUDGE BAXTER:  All right.  Now, did I understand you right, Mr. Colville -- if the medical examinations do not go the way you expect them to go, there would be no dispositive motion forthcoming?

MR. COLVILLE:  On that issue.  We would not file anything on that issue.  But you know we're also having the case looked at by an industrial hygienist, to provide expert testimony with regard on whether or not this was a hazardous condition which could have been known, had been deliberately indifferent to.  We're in process of engaging somebody at this point.  We don't yet have somebody, I don't think we will be quick in doing that.  We'll be quick in getting them the documents.  That's on my radar, as well as an expert review of the medical case, which is a pretty simple record, I think a pretty simple matter for us to get to the bottom of one way or the other.

1      JUDGE BAXTER:  All right.  I'm just trying to think

2  how quickly I can do a summary judgment motion, that's what I'm

3  trying to do here.  Let's go with February 2nd for dispositive

4  motions.  February 16th for a response.  And that will give us

5  a week plus to try to get that done.  Will you have to do a

6  reply?

7      MR. COLVILLE:  Unless there's something that is

8  crazy, I don't anticipate that.

9      JUDGE BAXTER:  I will not give a discovery deadline,

10  you just get in dispositive motions at that point.  That is

11  basically your deadline.

12      MR. COLVILLE:  Again, your Honor, I appreciate all

13  of this.  I think Mr. Lanzillo does, of course, as well.  My

14  only comments would be, I do think a court order will go a long

15  way in getting the Marshals to facilitate this as quickly as

16  possible.  At the risk of stating the obvious, we are at their

17  will.  And if they drag this out or cause further delay with

18  regard to the IMEs -- I'm going to do my best on that.

19      JUDGE BAXTER:  We have dates certain for your

20  physician?

21      MR. COLVILLE:  That's correct, your Honor.

22  Essentially, what I'm saying in the order is they coordinate

23  with me and the Bureau of Prisons to make specific inmates

24  available on specific dates at St. Clair Hospital, and I give

25  the address.  I think I can work with the Marshal's office,

1   from my end it's really getting the Marshal's offices in South

2   Carolina, West Virginia, Virginia --

3           JUDGE BAXTER:  The other problem is where they're

4   going to be housed when they're here.  Because typically they

5   house them in the Erie contract facility.  Which is either the

6   Erie County Prison or FCI McKean until they come to the Erie

7   County Prison.  That is under contract with the U.S. Marshals.

8           MR. COLVILLE:  I thought they could hold them here

9   in the holding cells in the federal courthouse in Pittsburgh.

10          JUDGE BAXTER:  Are the holding cells available over

11  night?

12          MR. COLVILLE:  I think so.

13          JUDGE BAXTER:  Our holding cells are simply holding

14  cells.

15          MR. COLVILLE:  I don't know, I've not had to do

16  this.

17          JUDGE BAXTER:  I don't think they are.  The reason I

18  say that is because when the renovations were done according to

19  new C.F.R. regulations, they don't require them to be overnight

20  facilities.  I think the contract in Pittsburgh is at the

21  Allegheny County Prison.

22          MR. COLVILLE:  Okay.

23          JUDGE BAXTER:  And then we'd have to writ them out

24  of there to bring them to Erie.  So unless the plan is to take

25  them to FCI McKean and then drive them to Pittsburgh that day,

1  which would be a difficult way to do it.  They fly into Grove

2  City, that is where the U.S. Marshals fly into for this

3  district.

4          MR. COLVILLE:  With a March 12th trial date, is that

5  a date that you are referencing based upon you reviewing a

6  calendar?

7          JUDGE BAXTER:  In working with the Deputy Clerk in

8  Judge McLaughlin's office, obviously, he was not aware of the

9  dates that we had worked out together.

10         MR. COLVILLE:  Your Honor, it will begin on the 12th

11 and then go the next two weeks.

12         JUDGE BAXTER:  I thought they wanted some leeway to

13 take care of the speedy trial problems with the criminal cases.

14         MR. COLVILLE:  Then we'd be the first civil case

15 after all the criminal cases?

16         JUDGE BAXTER:  That's correct.

17         MR. COLVILLE:  The 12th would be the earliest, we

18 could be bumped back depending on what the criminal docket is?

19         JUDGE BAXTER:  That's correct.  Since it's a jury

20 trial.

21         MR. LANZILLO:  It might be helpful if we could talk

22 to our clients about waiving a jury trial demand.

23         JUDGE BAXTER:  I got to tell you, Judge McLaughlin

24 would consider that helpful.

25         MR. COLVILLE:  I think it might facilitate --

1          JUDGE BAXTER:  That's something to work on.

2          MR. LANZILLO:  Mike, you and I can talk about it, we

3     can talk about that if it's appropriate and approach the court.

4          JUDGE BAXTER:  Rich, when did you come on the case?

5          MR. LANZILLO:  My goodness, judge, I don't even

6     remember.  Initially in November --

7          JUDGE BAXTER:  Is it a year?

8          MR. LANZILLO:  It may be, judge.

9          JUDGE BAXTER:  All right.  And, Mr. Colville, I

10    understand we have totally different views on the OSHA reports.

11    That caused the second group of dispositive motions, I'm just

12    trying to think when this got out of hand?

13         MR. COLVILLE:  I don't remember.  Doug would

14    remember the chronology, Doug was involved with all the

15    briefing up to a point.  My recollection, I thought my

16    recollection was it took a while to get these things served.

17    They didn't know who to serve, you gave them time for that to

18    happen.  The Marshals were a little slow in doing that.  I

19    believe the Siggers and Kelly cases were my two cases.  I

20    didn't have any other case until I got home from the pretrial

21    conference, then I got three cases.  After that we filed a

22    motion for summary judgment or motion to dismiss and they may

23    have filed an amended complaint at that point.  Which then

24    caused us to file additional motions.

25         MR. GOLDRING:  There were actually I think three

 1  rounds of briefing.  The first resulted in a partial dismissal.

 2  And then we did a second round in the middle of that second

 3  round, I think is when Rich Lanzillo was appointed as counsel,

 4  and then filed an amended complaint in all of the cases.  As

 5  result of the amended complaints in all the cases, our second

 6  round of briefing was mooted out.  And then when Rich filed an

 7  amended complaint, then we filed a third round of dispositive

 8  motions based on the amended complaints.

 9          JUDGE BAXTER:  Which were quite, they were

10  different?

11          MR. GOLDRING:  Right.  And then that's where we are

12  now.  That third round was decided and that's what led to the

13  status conference earlier this year.

14          MR. LANZILLO:  Judge, one of the problems when we

15  tried to marshal all of these cases, get them on the same

16  track, once that was accomplished while the motions were still

17  pending, we were not permitted to take any discovery.  While we

18  had an extended period of motion practice, in reality we were

19  working --

20          JUDGE BAXTER:  You didn't sign a protective order?

21          MR. LANZILLO:  No, judge.  Under the rules, not

22  until the initial case management conference and prior to the

23  answer.

24          JUDGE BAXTER:  He didn't have to answer at that

25  point.

1      MR. LANZILLO: In terms of the approach taken by Mr.
2 Goldring --
3      JUDGE BAXTER: Also, during that time, as I recall,
4 the plaintiffs were being scattered --
5      MR. LANZILLO: Yes, they were. In lieu of the
6 motion, straight motion to dismiss, we had multiple motions to
7 dismiss, motions for summary judgment, which still tolled the
8 answer period. So I think we only got answers to the complaint
9 in September. Which Judge McLaughlin, I know he's looking at
10 the case that's been --
11      JUDGE BAXTER: He was also looking at it to see how
12 it got out of hand, looking back at the docket. My
13 recollection is I was so thrilled to have an attorney marshal
14 these cases through the system on your part, Mr. Lanzillo, I
15 was giving you extensions time after time liberally.
16      MR. LANZILLO: You did, indeed, your Honor.
17      JUDGE BAXTER: But this would have been a very
18 difficult case with the plaintiffs on their own.
19      MR. LANZILLO: You were very accommodating.
20      JUDGE BAXTER: It was too hard to have the
21 plaintiffs continue on their own, it was just too difficult for
22 the courts. And for the defendants, it would have been
23 impossible to handle that volley.
24      JUDGE BAXTER: All right. Is the workshop still
25 working?

1    MR. LANZILLO:  It's not, your Honor.  It ceased --

2    MR. GOLDRING:  It's been almost a year, they

3  switched over to a plastics factory.

4    JUDGE BAXTER:  I can see that I'm going to be on the

5  phone with you guys very often in the next few weeks, and I'm

6  going to have the U.S. Marshals on the line with me, it's going

7  to be the most difficult time of the case.

8    MR. COLVILLE:  I'd agree, I think it will help

9  streamline the other issues, your Honor, it will be worthwhile.

10    JUDGE BAXTER:  Tick off for me where the plaintiffs

11  are right now?

12    MR. GOLDRING:  Kevin Siggers is still in McKean.

13    MR. COLVILLE:  He's set to be released in the

14  relatively near future.  I purposely had him scheduled first, I

15  have him scheduled December 21st of this year.  I'm hoping and

16  thinking that he is still there.

17    JUDGE BAXTER:  Mr. Lanzillo, the government won't

18  pay for him to come back if he's out of jail.

19    MR. COLVILLE:  I don't know where, but he's supposed

20  to go to a halfway house.

21    MR. GOLDRING:  Released to a halfway house.

22    JUDGE BAXTER:  Where from?

23    MR. GOLDRING:  Cleveland.

24    MR. COLVILLE:  If that's the case, I don't know you

25  need a marshal at that point, so much as you do an order by the

1    court to be here for the independent medical examination.

2    Which I'm sure he'll submit to.  Somebody within the BOP may

3    need something from the court saying he is allowed to leave the

4    halfway house for this event.  I say that without any prior

5    experience of knowing.

6            JUDGE BAXTER:  Halfway houses are even harder,

7    that's why I'm sitting here dumbfounded.  Then you're going to

8    have to take a doctor to him.

9            MR. COLVILLE:  I can subpoena him here.

10           JUDGE BAXTER:  All right.  Go ahead, so we have one

11   temporarily at McKean?

12           MR. GOLDRING:  McKean, and at Petersburg.  Michael

13   Hill is in West Virginia, FCI Gilmer in West Virginia.  And

14   Leslie Kelly is in South Carolina.

15           JUDGE BAXTER:  They're all south, okay.  They're not

16   in Colorado?

17           MR. GOLDRING:  Correct.  They're all pretty close,

18   at least within a day or two drive.

19           JUDGE BAXTER:  They'll fly them into Grove City, I'm

20   sure.  All right.  Have you hired your experts, Mr. Lanzillo?

21           MR. LANZILLO:  We have, your Honor.

22           JUDGE BAXTER:  Have you guys exchanged all that

23   information already?

24           MR. COLVILLE:  No, we don't know who they are.

25           JUDGE BAXTER:  You have one yet to hire, is that

1   correct, Mr. Colville?

2        MR. COLVILLE:  Yeah, as we speak, I'm trying to get

3   an industrial hygienist, I'm going to have a dental expert

4   brought on board.  We have a pulmonologist at this point

5   already.

6        JUDGE BAXTER:  You're not even going to mess with

7   now, which is my understanding, about deposing experts?

8        MR. COLVILLE:  No.  We don't anticipate deposing any

9   experts.

10       JUDGE BAXTER:  Thank you.  Mr. Lanzillo.

11       MR. LANZILLO:  Having not seen the report yet, your

12   Honor, I would need to -- just by way of example, exposure

13   experts, should the defense have one, there are a lot of

14   assumptions that can be made regarding the level of silica dust

15   that was in the air.  To the extent an expert is rendering an

16   opinion regarding exposure based upon an assumption that may or

17   may not be valid, I would hate to waive the right to pursue

18   depositions.  I will say this.  I have no desire to take

19   unnecessary depositions, I would hope that the next expert

20   deposition would be necessary.

21       JUDGE BAXTER:  Let me ask another question.  You

22   mentioned inmate witnesses.  Have you found, do you have names

23   and do you know where they are, that's going to be another

24   nightmare?

25       MR. GOLDRING:  We have names of those folks in terms

34

1   of --

2           MR. LANZILLO:  In terms of who would be appropriate.

3   We would want to avoid redundancy.  These would be other

4   inmates in who have worked in the original facility or had

5   direct contact with our folks.

6           JUDGE BAXTER:  All right.  Is there anything else?

7           MR. COLVILLE:  Not from the United States, your

8   Honor, at this point.

9           MR. LANZILLO:  Thank you, your Honor.

10          JUDGE BAXTER:  We're adjourned.

11

12          (Whereupon, at 12:45 p.m., the proceedings were

13   concluded.)

14

15                              - - -

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

    I, Ronald J. Bench, certify that the foregoing is a
correct transcript from the record of proceedings in the
above-entitled matter.


_____

Ronald J. Bench